**FILED**

**JUNE 24, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CHARLOTTE K., as parent and next friend of GILLIAN K., a minor and KIMBERLY K., as parent and next friend of MATTHEW K., a minor, | ) ) ) ) | **08 C 50115** |
| Plaintiffs, | ) | 08-C |
| | ) | |
| vs. | ) | |
| | ) | **JUDGE KAPALA** |
| ROCKFORD BOARD OF EDUCATION DISTRICT #205, | ) ) ) | **MAGISTRATE JUDGE MAHONEY** |
| | ) | |
| Defendant. | ) | |

<u>PETITION/COMPLAINT FOR AN EMERGENCY TEMPORARY</u>
<u>RESTRAINING ORDER AND/OR A PERMANENT RESTRAINING ORDER</u>

**NOW COMES** the Plaintiffs, CHARLOTTE K., as parent and next friend of GILLIAN K., a minor, and KIMBERLY K., as parent and next friend of MATTHEW K., a minor, by their attorneys, LAW OFFICES OF SHRIVER, O'NEILL & THOMPSON, and complains of the Defendants, ROCKFORD BOARD OF EDUCATION DISTRICT #205, as follows:

<u>**PARTIES**</u>

1.     At all times relevant herein, Plaintiffs CHARLOTTE K., GILLIAN K. and MATTHEW K. were residents of the City of Rockford, County of Winnebago and State of Illinois. KIMBERLY K. is a resident of the City of Naperville, State of Illinois.

2.     At all times relevant herein, ROCKFORD BOARD OF EDUCATION DISTRICT #205 (hereinafter referred to as DISTRICT) was a corporate body under the State of Illinois located within the boundaries of Winnebago County, State of Illinois.

3.      Defendant DISTRICT employs at its Rockford, Illinois, site certain schools, which include the DISTRICT administrative offices located at 201 S. Madison Street and Page Park School located at 5949 Safford Road and Wilson School located at 520 N. Pierpont Avenue, Rockford, Illinois, and has over 3,000 employees.

## JURISDICTION AND VENUE

4.      This is an action for violations of the Civil Rights Act of 1964 § 1983; I.D.E.A. 2004 20 U.S.C. §1400 et. seq.; Rehabilitation Act of 1973 §501 et. seq., 29 U.S.C. §791 et. seq.; Americans with Disabilities Act of 1990, §2 et. seq.; 42 U.S.C. §12101 et. seq. Equal Protection Clause and the Due Process Clause of the U.S. Constitution. Jurisdiction is founded upon a federal question of law, pursuant to 28 USC §1331.

5.      Venue is proper in this district and division pursuant to 28 USC §1391a.

## COMPLAINT

6.      The Plaintiffs are parents, guardians and next friends of children identified as having the need for special education as children with a disability as defined by I.D.E.A. 2004 20 U.S.C. §1412. Each of these children have Individualized Educational Programs ("I.E.P.") under 20 U.S.C. §1414(d) and have "individual appropriate accommodations". 20 U.S.C. §1414(d).

7.      These children have I.E.P.'s that demonstrate their disability is of such a nature or severity that they cannot be educated in regular classes or regular schools even with the use of supplementary aids and services. 20 U.S.C. § 1412 (a)(5).

8.      That in violation of all of the placement decisions made by the special education team, and without any meaningful notice to the parents who are a part of the

special education team, the Defendant DISTRICT have announced a plan to unilaterally move these children from their separate therapeutic day school located at Page Park, closing all of their therapeutic programs. Namely a therapeutic pool, a therapeutic garden, a therapeutic kitchen, and a therapeutic play ground (donated by musical artist Bob Dylan) all designed to meet their special needs. These unilateral actions prevent parents from "meaningful participation" in educational decision-making for their child. 20 U.S.C. §1414(e). See the attached generic letters from the DISTRICT of the only actual notice received. Exhibit 1.

9.      That the DISTRICT failed to notify any of the above parents and give prior notice of these changes to be made in the educational placement for their children as required under 20 U.S.C. §1415(b)(3), so as to allow them to have meaningful participation in these decisions.

10.      These unilateral changes being made by the DISTRICT would be denying the disabled children assistive technology services and equipment particularly designated for them. 20 U.S.C. §1401.

11.      That the Defendant DISTRICT has used federal funds under 20 U.S.C. §1404 to construct, alter and design Page park for these severely handicapped children.

12.      Upon information and belief the DISTRICT will be destroying the equipment, playground, pool, etc. within the next two to three days and not replacing it.

13.      That the Plaintiffs have authorized a filing of a Due Process Request to challenge the unilateral decision of the DISTRICT to transfer their children to a more restrictive environment where they will be unsafe and exposed to an environment harmful to their well being. See attached Exhibits 2 and 3.

14.     Under 34 CFR §300.518, 20 U.S.C. §1415(e)(2), a stay-put provision is in place during a Due Process Hearing and a child must remain in his or her current educational placement which would be the therapeutic program at Page Park school or a similar facility with the same therapeutic programs and adaptive equipment available to the children Plaintiffs.

15.     That the DISTRICT, by unilaterally closing Page Park School without making provisions for the health, safety and necessary therapeutic programming for the students, has violated their civil rights as a protected class under the Equal Protection Clause of the U.S. Constitution in that the DISTRICT is placing regular students without any special education needs there instead. See Exhibit 4.

16.     By failing to properly notify the parents/guardians of this unilateral move the DISTRICT has violated the Due Process Clause of the U.S. Constitution. I.D.E.A. 2004 20 U.S.C. §1400 et. al.  The DISTRICT even failed to provide adequate notice in its school board meeting agenda that it would be closing the Page Park program for the severely disabled and is in violation of the Open Meetings Act.

17.     In Honig v. Doe, 484 U.S. 305 (1988), "...a parent seeking review under §1415(e)(2) must exhaust time-consuming administrative remedies...[However] parents may by-pass the administrative process where exhaustion would be futile or inadequate."

18.     If the "stay-put provision" of 34 CFR §300.518, 20 U.S.C. §1415(e)(2) is not put in place, DISTRICT #205 will close Page Park School and destroy millions of dollars of therapeutic equipment that can never be replaced i.e. within one to two days they will be pouring concrete into the therapeutic pool or if it could be replaced it would not be able to be done prior to school starting in August, 2008.

19.     The DISTRICT has been systematically depriving the children at Page Park of the programming and the facilities available at Page Park because there are few remaining children with I.E.P.'s that required the pool in the 2007-2008 school year. Excuse after excuse was given for not using the pool. "We cannot find a teacher; the chemicals are not right; etc."  The DISTRICT eliminated or cut out adaptive physical education necessary for these children.

20.     This systematic discrimination began approximately three years ago as they have gradually moved students from Page Park to new settings less accommodating to these children who have severe and profound needs both physically and mentally.

21.     This has been a systematic and consistent effort to gradually deprive these children of the necessary free and appropriate educational benefits so that they can become more independent and progress in their educational programming and not regress. All of the children need a form of adaptive physical education that can be best accommodated at Page Park with the multiple therapeutic equipment and facilities that they will have no access to at the new facilities. There is no present adequate substitute for these facilities that could be available for these children by August, 2008, when school will start in the fall.

22.     The facilities at the "new" location proposed by the DISTRICT are entirely inadequate for the severe and profoundly disabled children all of whom have sensory integration issues and who have physical difficulties as well: a) The drop off place for the buses has no protection from the rain and elements and the children have to walk hundreds of yards or be pushed in their wheelchairs to the entrance; b) No play ground at all or outside activities available; c) No classroom bathrooms-adult children

have to be changed and cleaned in classrooms. Two handicapped stalls for 30 students-no handicapped showers; d) The only way out of the building is by a key in a dead bolt which could be a serious hazard; e) No access or very poor access to a gymnasium; f) no cafeteria-the children have to stay in their classrooms; and g) No access to a therapeutic pool-the proposed pool at Auburn is a regular pool too deep and too cold for the handicapped. This in not a school especially designed for the handicapped-it is only adapted with an elevator that presently is not working.

23.    The children Plaintiffs either wear depends, wet their pants or touch unhealthy and/or inappropriate things. Therefore, Page Park has a bathroom or a sink in nearly every classroom in order to clean the children up quickly and often and to control the spread of disease. The "new" facility does not have bathrooms in the classrooms. Upon information and belief, there will be liquid hand sanitizer used instead of soap and water. The children will have to be escorted down the hall instead taking them away from their activity and nessitating additional aides to assist in this process because the remaining children cannot be left without constant supervision. Presently the plan is that certain adult children will have their depends changed in front of classmates in their classrooms. Even the life skills of proper bathroom behavior is going to be impossible to teach in those circumstances.

24.    All that the DISTRICT has said is the law mandates that these children be educated in the least restrictive environment so they have to be moved. This is totally incorrect. Board of Educ. of Tp. High School Dist. No. 211 v. Ross, 486 F.3d 267 C.A. 7 (Ill.) 2007. In fact, the intent of the DISTRICT is to move much less handicapped children, some without I.E.P.s' at all, in fact, regular education students to Page Park

School. Those children have no need of the therapeutic pool, playground or special bathrooms in each classroom and which are not a part of their program. Upon information and belief, the therapeutic pool will be closed and be filled in with concrete at the end of June in the next one to two days, so no one can ever reopen or use it again. See attached Affidavits of Kimberly K. and Charlotte K.

25.    To obtain a temporary restraining order (TRO) the movant must show that 1.) It is reasonably likely to succeed on the merits; 2.) No adequate remedy at law exists; 3.) It will suffer irreparable harm which absent injunctive relief outweighs the irreparable harm the respondent will suffer if the injunction is granted; and 4.) The injunction will not harm the public interest. <u>International Profit Associates, Inc. V. Paisola</u>, 461 F.Supp.2d 672 ND.Ill.2006.

26.    It is reasonably likely that the Plaintiffs shall succeed in that the stay-put provision of I.D.E.A. allows them to remain in the same school and classes they have been if the parents have filed a Due Process Request objecting to the move of their child from Page Park School. This has been done. See attached Affidavits from Kimberly K. and Charlotte K. It is also likely that they will succeed in that the children's past I.E.P.'s mandate the use of the therapeutic pool and the outdoor activities at Page Park.

27.    There had been no change in the children's need for such programming and without it they will not receive the educational benefit it is designed to give them, to relieve their stress, sensory integration issues and provide use of therapeutic equipment to reinforce the occupational and physical therapy necessary for their physical and mental handicaps. For example, the Plaintiffs continue to need constant monitoring of their bathroom needs. Just because the DISTRICT has systematically changed the Plaintiffs'

I.E.P.'s over the last three years to remove some of the accommodations listed and because they are only available at Page Park School, does not mean that those accommodations are not necessary to provide an educational benefit to the child. One Plaintiff's behavior in particular has gotten much worse as a result of the restrictions in movement and physical activity that the DISTRICT has imposed on him at Page Park School this last year depriving him of the pool and other appropriate activities. This will only get worse at the "new" facility. See attached Affidavit of Kimberly K.

28.     No adequate remedy at law exists in that even if the DISTRICT added on to the "new" facility, it would cost millions to replicate the setting and facility at Page Park School even to add multiple bathrooms. All of these items were accumulated over 35 years which would be impossible to rebuild prior to school starting this fall.

29.     Most of these children have limited time left to learn as much as possible regarding their own safety and life skills and would most likely regress substantially without the accommodations and the facility and programming available to them at Page Park School. See attached Affidavits from Kimberly K. and Charlotte K.

30.     If the program at Page Park School closes for the severe and profound children and there is no bathrooms available to them in their classroom or at least a sink; there is no therapeutic pool; no therapeutic playground ($20,000 was donated by Bob Dylan for the playground and he helped build it many years ago), these children will be irreparably harmed. Even if this court finds there is good sound and educational reasons to move the children to a new facility, there is no earthly reason to fill the pool in with concrete. It is as if the DISTRICT is deliberately destroying it so that no one in the future could resurrect it so that it could be used on a daily/weekly field trip by the children who

need it most. It is specially designed to be extra warm and shallow and it has a special lift for wheelchair children to have access. See attached documentation of the lack of necessary facilities at the "new" location and Affidavit of Charlotte K.

31.     There appears to be no irreparable harm to the DISTRICT in that money appears to be no object in that they are not closing the school, they are just taking the necessary educational benefits and accommodations away from the handicapped children who need it most. They are discriminating against the most handicapped by restricting their access and confining them to a locked facility where they will have no ability to have outside contacts. Page Park School has a playground and walking trails onsite, the "new" facility does not. They are putting them more at risk for the spread of disease by not making bathroom facilities readily available. They are putting them in regular classroom facilities without any of the amenities and accommodations expected for the severe and profound population. The Page Park School is still in a condition that it can reopen in the fall for these children provided a TRO is granted not to further destroy the facility and stop the pool from being concreted in.

32.     An injunction that prevents the DISTRICT from further altering the facilities at Page Park School so that they are so irreparably altered and no longer usable for the severe and profoundly disabled children Plaintiffs and that prevents the DISTRICT from causing the therapeutic pool at Page Park School to be utterly destroyed by filling it in with concrete will not harm the public interest. In fact, the public interest would be best served by providing the best programming available to maximize the educational benefit to this severe population so that they can be as independent as

possible and not regress into adverse behaviors and the adverse consequences of keeping

them in lock down institutions that they left over 35 years ago when Page Park opened.

33.     If any more notice than what has been given will put the Page Park pool at

further risk because the plans are to fill/destroy the therapeutic pool and the issue would

be moot.

**WHEREFORE,** Plaintiffs request this Court grant the following relief:

A.     Issue a temporary restraining order and/or a permanent restraining order

against the Defendant, DISTRICT #205, to stop the tearing down of Page Park's

therapeutic equipment including but not limited to the pool, playground and other

facilities that were designed specifically for the disabled children Plaintiffs to use.

B.     Find that it is not necessary for Plaintiffs to exhaust administrative

remedies because any delay will irreparably harm the Plaintiffs and their children.

C.     Find that the DISTRICT has intentionally deprived the children Plaintiffs

of their civil rights under the Americans with Disability Act.

D.     Award Plaintiffs their reasonable attorney's fees and costs in this action.

E.     And for such other and further relief as this Court deems proper and just**.**

CHARLOTTE K., as parent and next
friend of GILLIAN K.**,** a minor and
KIMBERLY K., as parent and next
friend of MATTHEW K., a minor,
Plaintiffs.

BY:    _____/s/ Joyce O'Neill Austin_____
                    Joyce O'Neill Austin,
                    Attorney for Plaintiffs

Prepared by:
THE LAW OFFICES OF
SHRIVER, O'NEILL & THOMPSON
Joyce O'Neill Austin, #959
515 N. Court Street
Rockford, IL 61103
Phone:   (815) 963-4896
Fax:      (815) 963-4904
joneillaustin@sotlaw.net

**AFFIDAVIT OF SERVICE**

The undersigned certifies that on June 24, 2008, a copy of the following was electronically served via the U.S. District Court CM/ECF E-Filing System upon the following:

**CHARLOTTE K., et al.  v. Rockford Board of Education, District No. 205**

For Defendant:

Lori L. Hoadley

Hinshaw & Culbertson LLP

100 Park Avenue

P.O. Box 1389

Rockford, IL 61105-1389

Phone: (815) 490-4900

/s/ Michelle Kayser

Prepared by:
THE LAW OFFICES OF
SHRIVER, O'NEILL & THOMPSON
Joyce O'Neill Austin
515 N. Court Street
Rockford, IL 61103
Phone: (815) 963-4896
Fax:    (815) 963-4904



ROCKFORD
PUBLIC
SCHOOLS

April 2, 2008

Page Park School
5949 Stafford Road
Rockford, Illinois 61101-2276
815 / 966-3770
FAX 815 / 966-5297

Dear Parents, Guardians, Family Members, and Friends,

Over the last several years there has been much discussion regarding the future of Page
Park School. Many of our students have successfully transitioned into special education
classrooms located in regular education buildings across the district. Therefore, the
number of students here at Page has continually declined. At this time we only have an
enrollment of 42 students for this school year. We are anticipating a few students
graduating at the end of this school year, which will result in even fewer students
attending this center.   The expenses of operating an entire building for less than 40
students are significant. Therefore, we will be relocating to another site at the end of this
school year. We are scheduled to move into a separate wing of the Auburn Freshman
Campus at Wilson immediately after the last day of school. This campus is located at
520 N. Pierpont Ave., very near our current location. We are projected to open our doors
to students on June 23rd for the Extended School Year Session. Our wing will be totally
separate from the rest of the Wilson campus. We will continue to carry out and
implement our high quality program for students.

We will be busy planning and packing in the next several weeks. Of course, part of our
plans includes a huge party on the grounds to celebrate the many years of memories made
here. We will also celebrate and welcome in the excitement of the new chapter in Page
Park History. You will receive more details about the move as they are finalized.

Please stop by or give us a call with any questions you may have.

Sincerely,

Deb Johnson,
Principal

/lg

Doc: word: Page Park move 4/08



PLAINTIFF'S
EXHIBIT
1

Wilson
(Page Park Program)
Extended Summer School
June 23 – July 31, 2008
Monday -- Thursday
8:00 -- 12:00

Dear Parents/Guardians,

WELCOME to the first ever summer program at our new location at Wilson, 520 North Pierpont Avenue. We have been busy moving, setting up, and getting everything ready to go. Our classrooms look great and teachers are ready. The staff has been incredible and has worked very hard to insure everything is ready for the students. They all deserve a round of applause!! We would not be ready if it were not for their dedicated efforts.

We will be working on IEP goals and objectives this summer as we assist the students in becoming comfortable in the new building. Our first priority will be to make sure all students feel safe and learn where everything is located. We will also continue our annual summer activities, i.e., July 4th parade, car wash, cook-out, etc. Staff and students will also be doing gardening and planting flowers at our entrance.

Construction continues on our new kitchen area and nursing office. Our bathrooms and new shower are installed. Our house area with bedroom, living room, and dining area is done. Our sensory motor room is set up with equipment for students but will require further organization as we go along. Throughout the summer we will work on unpacking and organizing the music/library room, the PE room, and the art/vocational room.
— PE + motor Room are one & the same

This is an exciting time as we move forward. Please stop by!! As before, my door is always open. Attached you will find a list of information you may find useful. Here's wishing that you all have a fun relaxing and safe summer.

Sincerely,

Debbie Johnson

Deb Johnson
Wilson Principal



- ➢ The Wilson phone number is 815-720-4764 (we are hoping to get our 815-966-3770 back).
- ➢ We are located in the southwest wing of the Wilson building. Enter the south entrance off Pierpont (nearest to School St.) and follow the Fresh Start signs to the back. There will be a small parking lot with our front door to the right.
- ➢ Summer school is Monday through Thursdays *except* school will be held on Friday, June 27th but not on Thursday, July 3rd.
- ➢ Lunch will be provided.

June 20, 2008

| | |
|---|---|
| Illinois State Board of Education<br>Attn: Due Process Coordinator<br>100 North First Street<br>Springfield, IL 62777-0001 | Via Fax:    217-782-0372<br>and U.S. Mail |
| Rockford School District #205<br>District Superintendent<br>Linda Hernandez<br>201 S. Madison St.<br>Rockford, IL 61101 | Via Fax:    815-966-3193<br>and U.S. Mail |
| Attorney Steve Katz<br>201 S. Madison St.<br>Rockford, IL 61101 | Via Fax:    815-966-3905<br>and U.S. Mail |
| Indian Prairie District #204<br>District Superintendent<br>Stephen Daeschner<br>Crouse Education Center<br>780 Shoreline Drive<br>Aurora, IL 60504 | Via U.S. Mail |

RE:    Due Process Request for
        Matthew ———————

Dear Ms. Hernandez:

This letter is to inform you that Kimberly ———————, as guardian, is requesting a Due Process Hearing for her son, Matthew ———————, D.O.B. 10/26/89, who is attending Page Park School. Her address is ————————————, Naperville, IL 60564. Her telephone number is (630) ———————. Their language is English.

Matthew is severely and profoundly disabled due to P.D.D., M.I., Autism and A.D.H.D.


PLAINTIFF'S EXHIBIT

Page Two
RE:    Matthew ————————
June 20, 2008

## COMPLAINT AGAINST ROCKFORD SCHOOL DISTRICT #205 and INDIAN PRAIRIE DISTRICT #204

1.)     For 2008-2009 school year, Matthew ——————— will be transferred from a full time special education self contained school namely Page Park unilaterally with out notice and agreement by his guardian.

2.)     The guardian disagrees that Matthew will be able to receive a free and appropriate public education at a regular middle/high school in a self contained program.

3.)     Educational services that Matthew needs that he has not received since 2006-2007 school year to present because of the District's reduction of all services due to their plans to close the Page Park School and which is a violation of his I.E.P.'s.

   a)     movement in the community with a one-on-one aide;

   b)     therapeutic swimming and hydrotherapy in a pool designed for special needs;

   c)     picture chart PEC program;

   d)     life skills training, particularly with eating/use of kitchen;

   e)     teeth brushing;

   f)     use of outside activities to reduce aggression, namely walking, riding bike, throwing balls.

4.)     As a result of the reduction of services to Matthew and the failure to follow Matthew's I.E.P.'s, his behavior and aggression has increased significantly over the last school year and his medication has had to increase which is a chemical restraint.

5.)     That without the proper structure and programming available at Page Park School or a similarly designed therapeutic school Matthew will continue to regress. He will be in a more restrictive environment in a locked down wing of a regular middle/high school. He needs a school that has:

   a)     a program of outside walking trails, a garden, and outside physical activity available;

   b)     a swimming, hydrotherapy program;

Page Three
RE:    Matthew ⸺⸺⸺
June 20, 2008

      c)     a life skill programming in a kitchen-home atmosphere;

      .d)     a safe environment far from a busy street.

## REMEDIES REQUESTED

A.     Provide and follow I.E.P. as previously prepared.

B.     Placement in a least restrictive environment namely a school where Matthew will not be locked down.

C.     Retention of the program at Page Park School or a similar self contained school with a therapeutic pool, therapeutic play ground, walking trails, a therapeutic garden and a therapeutic kitchen.

Very truly yours,

JOYCE O'NEILL AUSTIN,
JOA/mk

c:     Kimberly ⸺⸺⸺⸺

June 24, 2008

Illinois State Board of Education      Via Fax:     **217-782-0372**
Attn: Due Process Coordinator      and U.S. Mail
100 North First Street
Springfield, IL 62777-0001

Rockford School District #205
District Superintendent
Linda Hernandez               Via Fax:     **815-966-3193**
201 S. Madison St.              and U.S. Mail
Rockford, IL 61101

Attorney Steve Katz          Via Fax:     **815-966-3905**
201 S. Madison St.              and U.S. Mail
Rockford, IL 61101

RE:     Due Process Request for
        Gillian _____

Dear Ms. Hernandez:

This letter is to inform you that Charlotte _____ is requesting a Due Process Hearing
for her daughter, Gillian _____, D.O.B. 7/08/90, who is attending Page Park
School. Her address is _____, Rockford, Illinois 61102 . Her telephone
number is (815)_____. Their language is English.

Gillian _____ is severely and profoundly disabled due to Landau-Kleffner
Syndrome (a seizure disorder), with profound Pervasive developmental Delays, and
Sensory Integration Disorders.

## COMPLAINT AGAINST ROCKFORD SCHOOL DISTRICT #205

1.)      For 2008-2009 school year, Gillian _____ will be transferred from a
        full-time, special education, self-contained school namely Page Park, unilaterally
        with out notice and agreement by her parent. The parent was not allowed to
        participate at all in this decision and in fact only received a generic notice.


PLAINTIFF'S EXHIBIT 3

Page Two
RE:   Gillian _____
June 24, 2008

2.)   The parent disagrees that Gillian will be able to receive a free and appropriate
      public education at a regular middle/high school in a self contained program.

3.)   Educational services that Gillian needs that she has not received since 2006-2007
      school year to present because of the District's reduction of all services due to
      their plans to close the Page Park School and which is a violation of her I.E.P.'s.

      a)    adaptive physical therapy restricted to 60 minutes a month-this is of no use
            what so ever. Regular education children must have P.E. at least 2 to 3
            times a week;

      b)    therapeutic swimming and hydrotherapy in a pool designed for special
            needs;

      c)    life skills training, particularly with eating/use of kitchen;

      d)    teeth brushing; and

      e)    use of outside activities to reduce aggression, and to reduce muscle
            atrophy, namely walking, riding adaptive bike, throwing balls.

4.)   All of the above were a part of Gillian's I.E.P.'s but were gradually removed by
      District #205 within the last two school years, without the parents agreement or
      knowledge.

5.)   That without the proper structure and programming available at Page Park School
      or a similarly designed therapeutic school Gillian will continue to regress and/or
      not make the progress she is able to do. She will be in a more restrictive
      environment in a locked down wing of a regular middle/high school. She needs a
      school that has:

      a)    a program of outside walking trails, an adaptive, therapeutic garden, and
            outside physical activity available;

      b)    a swimming, hydrotherapy program;

      c)    a life-skills program in a kitchen-home atmosphere; and

      d)    a safe environment far from a busy street in that she has a tendency to run
            away.

Page Three
RE:    Gillian _____
June 24, 2008

## REMEDIES REQUESTED

A.    Provide and follow I.E.P. as previously prepared for the 2005-2006 school year.

B.    Placement in a least restrictive environment namely a school where Gillian will
      not be locked down in an unsafe situation.

C.    Stay-put for Gillian in the program at Page Park School or a similar self contained
      school with a therapeutic pool, therapeutic play ground, walking trails, a
      therapeutic garden, a therapeutic kitchen, appropriate bathroom facilities and a
      full time nurse because of her life threatening seizures.

Very truly yours,

JOYCE O'NEILL AUSTIN,.
JOA/mk

c:    Charlotte _____

## Rockford Board of Education Meeting

June 10, 2000

Information:        Page Park/Skyview/Fresh Start Programs

Submitted By:      Colleen Cyrus
                   Assistant Superintendent of Student Support

### A.   BACKGROUND ANALYSIS

In response to continuing concerns and questions about the movement of the Page Park/Skyview/Fresh Start programs, please see the attached documents which will elaborate on each program and each of their numerous related issues.

### B.   EDUCATIONAL IMPACT STATEMENT

Each program is unique and essential to the students of this district and without question have an enormous impact on their educational and life-long success.

### C.   STRATEGIC PLAN COMPATIBILITY STATEMENT

The recommendation is consistent with:
Strategy 1: Curriculum - *Effectively implement curriculum standards and assessments throughout the district and increase accountability throughout the system for improving student achievement.*
Strategy 2: Finance – *Create a sound financial plan that will balance the budget and focus our financial resources on educational priorities.*
Strategy 3: Partnerships – *Expand partnerships with all aspects of our diverse community, including business, education, service agencies, religious organizations and families.*
Strategy 5: Staffing – *Attract, retain and develop the staff necessary to achieve our strategic objectives.*

### D.   STATUTE, BOARD POLICY OR RULE STATEMENT

The recommendation is consistent with Board Policy 3.10 – General School Administration – Goals and Objectives.

### E.   FISCAL IMPACT STATEMENT

N/A

— Despite Numerous requests !



PLAINTIFF'S
EXHIBIT
4

**F.**    **SUPERINTENDENT GOAL**

      N/A


**G.**    **IMPLEMENTATION AND ASSESSMENT PLAN**

      Implementation will take place at the onset of the 2008-2009 school year.


**ADMINISTRATION'S RECOMMENDATION**

      N/A

2

## Frequently Asked Questions
## Movement of Special Needs Program
## Page Park to Wilson

**Q: Who Attends this Special Needs Program?**
A: Students whose IEP requires a separate facility have had their services previously delivered at Page Park School, will now have the services delivered in the renovated wing of the school at 520 North Pierpont.

**Q: What academic services will be provided at Wilson?**
A: All appropriate general and special curriculum areas will continue to be addressed. Illinois Learning Standards and IEP goals drive all instructional decisions. A wide range of support services will continue to be available for the student's unique educational needs. These will include but are not limited to:

*current P.E. levels are inadequate & have been reduced over 2½ yrs.*

- A Library containing books and educational games appropriate for cognitive levels of the special needs population. (The entire library from Page Park will be moved to Wilson)
- Music, Art, and PE: Students will receive specials at the same level as are currently provided at Page Park. PE will be taught in the auxiliary gym, which is available to Wilson students all day every school day.
- Daily Living Skills: All daily living skills taught in the apartment area will continue to be taught at the new location in specially designated areas.
- There will be a designated area established at Wilson to work on vocational education skill sets.

*(see notes entitled " New Page Park Facility")*

**Q: How will the therapy needs of students be met in the new location?**
A: All required therapy services will continue to be delivered at the new location. These services are driven by each student's IEP and may change from year to year. The administration will adjust the therapy services as students IEPs change. All current age appropriate equipment and services are moving to Wilson. Current and next year services will include Speech, Occupational and Physical Therapies. *→ see notes entitled "New Page Park Facility"*

**Q: What nursing services will be available at Wilson?**
A: There will be a full time nurse on the premises of Wilson/Auburn Freshman Campus. *→ shared*

**Q: How will the student's social and recreational needs be met?**
A: The District is paving an additional area for Wilson students, a 1250 meter long nature trail is available, fields are adjacent to Wilson, a park is located across the street, and the auxiliary gym is continually available to Wilson for Cheerleading, Basketball games, sporting events, parties and Prom. A High School size gym will be available on a limited basis to the students at Wilson. *See notes*

**Q: What is the interaction between Auburn Freshman Campus and Wilson School?**
A: Wilson, while sharing a roof with Auburn Freshman Campus, will be a separate facility. It will have its own principal, secretary, faculty, staff, entrance, parking lot, phone service, network server, classrooms, schedule, and calendar of social, family, and community events.

*This negates the purpose of "least restrictive environment".*

# Page Park Program aka Freshstart. Skyview ck

The Page Park Program consists of two separate programs housed under one umbrella. Each program is designed to serve the needs of the students assigned to it. One will continue to serve the needs of student's with disabilities and/or students that require a more long term program. The other will serve at-risk students needing a new direction in their academic career.

## The First Program

The first program, will serve the needs of students with disabilities and may also admit students without disabilities that require a more structured, long term learning environment. The program will consist of a disciplined approach to ensure appropriate services for the exigent needs of each student. It will follow a modified middle/high school schedule that allows for individual needs while encouraging student participation within expected behavioral limits. Students, in this program, will use a Student Success Record to analyze and understand personal actions that detract from their ability to succeed in their home school. Classes taken will be in line with expected graduation requirements, but the limited scope of elective possibilities and non-existent extra-curricular programming detracts from the student's overall educational growth. Consequently, the desired outcome is for each student to attain personal growth within the program to achieve a return to his or her home school and engage in a more encompassing learning environment.

Students in the first program will be divided in groups by grade level. Teachers will be assigned to teach students based on appropriate certification and meeting highly qualified status for the content area. The following chart is an abbreviated example of the first program:

|  | Period One | Period 2 | Period 3 | Period 4 | Period 5 |
|---|---|---|---|---|---|
| Teacher 1 - Math | 6th grade | 7th grade | 8th grade | 9th grade | 10th grade |
| Teacher 2 - Science | 10th grade | 6th grade | 7th grade | 8th grade | 9th grade |
| Teacher 3 - SS | 9th grade | 10th grade | 6th grade | 7th grade | 8th grade |
| Teacher 4 – LA/Reading | 8th grade | 9th grade | 10th grade | 6th grade | 7th grade |

## The Second Program

The second program, will serve the needs of at-risk students, envelopes a nurturing and disciplined approach toward a more responsible attitude and successful education. It consists of two strands that provide opportunities for student growth and acceptance of personal decision-making. One strand is a demanding and structured program that

encapsulates the necessary steps for student academic success. It covers nine weeks of a school year and involves multiple layers of student guidance to enhance the probability of future success. The other strand is demanding and structured but could cover eighteen weeks of a school year. The following is a summary of each strand.

First strand:

The first strand, encompassing nine weeks of the school year, will continue to use the Student Success Records to document and analyze student progress. Students will make a count day or not depending on their daily point total. If a student earns a no count day, he/she will repeat the missed day. Their goal is to achieve 30 count days in the quarter and remain under 100 accumulated Page Park discipline violation points. If the student achieves this result, they will be returned to their home school at the end of the quarter. If 100+ Page Park discipline violation points are reached, the student will be moved to the 18-week strand at the end of the nine-week strand. A successful completion (minimum of 30 positive count days and 99 or less Page Park discipline violation points) of this nine week strand will also provide the student with re-entry to this strand should they find themselves in discipline difficulty at their home school later.

Second Strand:

,The second strand, encompassing 18 weeks of the school year, will also use the Student Success Record to document and analyze student progress. It will also maintain the current system of count days, which include drops. Students earn placement in this strand for two distinct reasons: 1) non –successful completion of the first strand and 2) a student who has been returned to the home school and earned enough discipline violation points to return to Page Park and they had been unsuccessful in their first attempt at the first strand. A student's continued disruptive behaviors will be further intervened upon by various guidance and counseling elements that will be available to serve those needs not fully addressed in the shorter strand. To successfully complete this strand, the student must have made a minimum of 30 count days and earned less than 200 accumulated Page Park discipline violation points. There are two positive incentives built into this strand. First, for each count day the student has been able to amass beyond the 30 count day minimum, they will have 5 discipline violation points removed from their home school point total. Second, the student can elect to return to their home school upon achieving the 30 count day minimum if it is achieved before the end of the 18 weeks. Should the student be returned to the home school upon an unsuccessful venture of this strand, it will ensure that they will return to this strand and not be eligible for the nine week strand if the student finds his/herself in discipline difficulty at their home school.

The total days at Page Park for these students could be a maximum of approximately 135 total school days. Students return to their home schools with either a Stamp of Program Completion or Incompletion on their disciplinary point record. If any student reaches 200+ Page Park discipline violation points, they will be recommended for expulsion.

## Program Dynamics

Each of the strands in this program will run simultaneously in three teams. The daily Student Success Record sheet will indicate which strand the student is enrolled. This is designed to continue appropriate grade level teams and provide the best possible curriculum delivery.

Classes taught will include mathematics, English and/or language arts, social science, PE, and Character Building.

The following community agencies have relayed verbal commitments to provide various group and individual services throughout the school year: MELD, Rosecrance, and the Winnebago County Juvenile Probation Department. Groups and individual services could include grief management, anger management, self-esteem/personal health issues, and drug/alcohol awareness and intervention.

A pre-program will continue to be used for those students who persist in their disruptive behavior and earn no-count days during the 18 week strand and as a short term/day intervention for students on the nine-week program. The pre-program will be implemented when their disruptive behaviors are so severe and chronic that another intervention is necessary to provide a safer environment for the remaining students of either the nine week or eighteen week programs. Those students placed in the pre-program will need to earn five (5) consecutive days to return to the 18 week strand and move toward a return to their home school.

Students who continue to be disruptive in the 18 week strand and have earned 200 or more discipline violation points while at Page Park, will be recommended for expulsion. They will be placed in the pre-program if their disruptive behaviors continue to create an unsafe learning environment for themselves or the other students attending Page Park.

Page
Park
Program



2ⁿᵈ Program
--1ˢᵗ Strand

## AFFIDAVIT

I, KIMBERLY K., being first duly sworn on oath, states as follows:

1.  My son, MATTHEW K. is 18 years old, DOB: 10/26/89.

2.  He is eligible for special educational services and special accommodations
    because of his eligibility. He is severely and profoundly disabled and diagnosis is
    P.D.D., M.I., Autism and A.D.H.D.

3.  He cannot be educated in regular classes of a regular school even with the uses of
    supplementary aides and services because his condition is so severe and profound
    he would disturb greatly regular students and they would agitate him and cause
    him severe anxiety and he would not be able to learn. He is claustrophobic and
    must be outdoors as much as possible using the walking trails at Page Park and/or
    the playground.

4.  The goals and I.E.P. for my child is to teach him essential life skills so that he
    would be more independent in an adult facility for the severe and profoundly
    mentally handicapped.

5.  In order to qualify for a good adult facility, he must be toilet trained, able to
    communicate in some fashion his needs and to be comfortable with others like
    himself and adults who will care for him, plus show little aggression towards
    others.

6.  Page Park School has been an ideal facility to meet his educational needs as
    demonstrated by his I.E.P.'s, but the District #205 has systematically been
    eroding the specific educational requirements for him since they made the
    unilateral decision to move the children into a locked down wing of Wilson
    Middle School and/or placed others at Auburn, where there are limited facilities
    to move about and he is restricted to a more restrictive environment.

7.  A restrictive environment where they have no contact with other children nor do
    they have a therapeutic pool, a therapeutic garden, walking trails, or a therapeutic
    adult playground. There are no private bathrooms. Children are changed in the
    classroom. There is no privacy or private showers. My son has frequent accidents
    and it is highly in appropriate for adult children to have their pants changed in
    public in their classroom and their private pars wiped down with baby wipes
    instead of soap and water and/or a shower.

8.  This planned discrimination by District #205 has been occurring since at least
    2006-2007 school year and even before that in that my son was to have access to
    the pool at Page Park this past school year and he was denied.

9.    I object to the move of my child, but District #205 will not listen. As a result I have filed a Due Process Request and I am invoking the stay-put provisions that allows my child to stay at the same placement as last year. See attached Exhibit A.

10.    Since District #205's denial of the special educational services he was to receive he has gotten more aggressive and his behavior has deteriorated.

11.    He is to have adaptive physical education, but the elevator does not work in the "new" facility and it is a long way to the gym.

12.    Upon information and belief there will be one nurse for all of the regular students and for the special medical needs children who will need tube-feeding.

13.    Upon information and belief, this move will not save District #205 any money. It will actually cost them money to adapt the new facilities for these children when they have had a good program and special facility at Page Park for over 35 years.

14.    Without a therapeutic pool, a therapeutic garden, a therapeutic playground and walking trails, the new facility will be more restrictive and harm the educational progress of my child.

15.    If District #205 is allowed to close Page Park School for my son, he will be irreparably harmed in that he will not be able to have the necessary accommodations listed in his I.E.P. and educational regression will occur.

16.    Further Affiant saith not.

SUBSCRIBED AND SWORN to before me this
24th day of June, A.D., 2008.

Notary Public

THERESA SCHELSTRAETE
NOTARY PUBLIC, Ottawa County, MI.
My Commission Expires Dec. 13, 2013

June 20, 2008

| | |
|---|---|
| Illinois State Board of Education | Via Fax:      217-782-0372 |
| Attn: Due Process Coordinator | and U.S. Mail |
| 100 North First Street | |
| Springfield, IL 62777-0001 | |

| | |
|---|---|
| Rockford School District #205 | |
| District Superintendent | Via Fax:      815-966-3193 |
| Linda Hernandez | and U.S. Mail |
| 201 S. Madison St. | |
| Rockford, IL 61101 | |

| | |
|---|---|
| Attorney Steve Katz | Via Fax:      815-966-3905 |
| 201 S. Madison St. | and U.S. Mail |
| Rockford, IL 61101 | |

| | |
|---|---|
| Indian Prairie District #204 | Via U.S. Mail |
| District Superintendent | |
| Stephen Daeschner | |
| Crouse Education Center | |
| 780 Shoreline Drive | |
| Aurora, IL 60504 | |

RE:     Due Process Request for
        Matthew ⸺⸺⸺

Dear Ms. Hernandez:

This letter is to inform you that Kimberly ⸺⸺⸺, as guardian, is requesting a Due Process
Hearing for her son, Matthew ⸺⸺⸺, D.O.B. 10/26/89, who is attending Page Park School.
Her address is ⸺⸺⸺⸺⸺, Naperville, IL 60564. Her telephone number is (630) ⸺⸺⸺.
Their language is English.

Matthew is severely and profoundly disabled due to P.D.D., M.I., Autism and A.D.H.D.



PLAINTIFF'S
EXHIBIT
A

Page Two
RE: Matthew ⸻
June 20, 2008

## COMPLAINT AGAINST ROCKFORD SCHOOL DISTRICT #205 and INDIAN PRAIRIE DISTRICT #204

1.) For 2008-2009 school year, Matthew ⸻ will be transferred from a full time special education self contained school namely Page Park unilaterally with out notice and agreement by his guardian.

2.) The guardian disagrees that Matthew will be able to receive a free and appropriate public education at a regular middle/high school in a self contained program.

3.) Educational services that Matthew needs that he has not received since 2006-2007 school year to present because of the District's reduction of all services due to their plans to close the Page Park School and which is a violation of his I.E.P.'s.

    a) movement in the community with a one-on-one aide;

    b) therapeutic swimming and hydrotherapy in a pool designed for special needs;

    c) picture chart PEC program;

    d) life skills training, particularly with eating/use of kitchen;

    e) teeth brushing;

    f) use of outside activities to reduce aggression, namely walking, riding bike, throwing balls.

4.) As a result of the reduction of services to Matthew and the failure to follow Matthew's I.E.P.'s, his behavior and aggression has increased significantly over the last school year and his medication has had to increase which is a chemical restraint.

5.) That without the proper structure and programming available at Page Park School or a similarly designed therapeutic school Matthew will continue to regress. He will be in a more restrictive environment in a locked down wing of a regular middle/high school. He needs a school that has:

    a) a program of outside walking trails, a garden, and outside physical activity available;

    b) a swimming, hydrotherapy program;

Page Three
RE:    Matthew ==========
June 20, 2008

      c)     a life skill programming in a kitchen-home atmosphere;

      d)     a safe environment far from a busy street.

## REMEDIES REQUESTED

A.     Provide and follow I.E.P. as previously prepared.

B.     Placement in a least restrictive environment namely a school where Matthew will not be locked down.

C.     Retention of the program at Page Park School or a similar self contained school with a therapeutic pool, therapeutic play ground, walking trails, a therapeutic garden and a therapeutic kitchen.

Very truly yours,

JOYCE O'NEILL AUSTIN,
JOA/mk

c:     Kimberly ==========

## AFFIDAVIT

I, CHARLOTTE K.,being first duly sworn on oath, states as follows:

1. My daughter, GILLIAN K. is 18 years old, DOB: 7/08/90.

2. She is eligible for special educational services and special accommodations because of her eligibility. She is severely mentally impaired and diagnosis is Landau-Kleffner Syndrome (a seizure disorder) with Pervasive Developmental Delays and Sensory Integration Disorder.

3. She cannot be educated in regular classes of a regular school, even with the use of supplementary aides and services, because her condition is so severe and profound that she would greatly disturb regular students. They would also agitate her, causing her severe anxiety, and she would not be able to learn. She is extremely sensitive to sounds and noises and activity of any kind.

4. The goals and I.E.P. for my child are to teach her essential life skills so that she would be more independent, making her able to live in an adult facility for the severe and profoundly mentally handicapped, and to teach her to work in a sheltered work shop.

5. In order to qualify for a good adult facility, she must be toilet trained. She must also be able to communicate her needs in some fashion and to be comfortable with others like herself, as well as with the adults who will care for her. She must also learn to show little aggression towards others.

6. Page Park School has been an ideal facility to meet her educational needs, as demonstrated by her I.E.P.'s, but the School District #205 has been systematically eroding the specific educational requirements for her since they made the unilateral decision to move the all of the disabled children from Page Park School into a locked-down wing of Wilson Middle School (also know as Auburn Freshman Campus) and/or placed other disabled children at Auburn and Jefferson High Schools, where there are limited facilities to move about. She will be locked in--in a more restrictive environment- - like the children who were previously moved from Page Park School last year.

7. She will be in a restrictive environment where she will have no contact with other children nor will she have a therapeutic pool, a therapeutic garden, walking trails, or a therapeutic, adaptive, adult playground. There are no private bathrooms. Children are undressed and changed in the classroom. There is no privacy or private shower. See attached observations I prepared on June 23, 2008 regarding the "new" placement.

8. This planned discrimination by District #205 has been occurring since at least 2006-2007 school-year, and even before that. Children who, upon information and belief, are not disabled, will be attending Page Park School instead of the disabled children for whom the school was designed. See attached Exhibit A.

9. I objected to the move of my child, but District #205 will not listen. As a result I have filed a Due Process Request and I am invoking the stay-put provisions that allow my child to stay at the same placement as last year. See attached Exhibit B.

10.     She specifically had in her I.E.P. (Individual Educational Program) that she was to have the therapy pool, walking path, adaptive playground and the "house" to learn Domestic, Independent Living Skills.

11.     She is to have adaptive physical education, but the elevator does not work in the "new" facility and the gym is down 2 flights of stairs. This would make the gym inaccessible to her since her disabilities prevent her from maneuvering down long flights of stairs.

12.     My daughter has seizure disorders and other significant medical problems. There will be one nurse for all of the regular students at Wilson, Auburn Freshman Campus, as well as for the special medical needs of the children who will need tube-feeding and/or emergency care. People still die from seizures—especially when immediate medical care is not available. I fear that this practice of a shared nurse could endanger my child as well as the other children in this new facility.

13.     Upon information and belief, this move will not save District #205 any money. It will actually cost them money to adapt the new facilities for these children when they have had a good program and special facility at Page Park for over 35 years. It will not give her access to a "mainstream" setting since they have designed it so there is no contact with regular education students.

14. ··  Upon information and belief, without a therapeutic pool, a therapeutic garden, a therapeutic, adaptive playground and walking trails, the new facility will be more restrictive and will harm the educational progress of my child. She will not be receiving a free and *appropriate* education.

15.     If District #205 is allowed to close Page Park School for my daughter, she will be irreparably harmed in that she will not be able to have the necessary accommodations listed in her I.E.P. and educational regression will occur.

16.     Upon information and belief, unless a TRO is entered, the therapeutic pool that was especially designed for these physically handicapped children will be destroyed within two to three days never to be able to be used again.

17.     Further Affiant saith not.

_Charlotte A. Kinnon_

SUBSCRIBED AND SWORN to before me this
___24th___ day of June, A.D., 2008.

_Michael L. Kay_
Notary Public

OFFICIAL SEAL
MICHELLE L KAYSER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/20/10

# NEW PAGE PARK SCHOOL FACILITY

The following are observations concerning inadequacies with regard to the
new Page Park School facility located at the Auburn Freshman Campus.
Charlotte Bader-Kennon

- **Entrance to Building**:
- **No protection from The Elements for loading and unloading Septran and
  Busses.** When the staff requested that a Pavilion be built for this purpose, the
  school board's response was, "Not Now". Rain and snow and ice will be
  treacherous for children who can barely walk or who are in wheelchairs.

- **Security/Safety:**
  **Locked doors require a Key to open.** Not all staffers have a key. I was
  escorted through the building by a staffer who did not have a key if we were to
  find ourselves locked in a hallway or in the Freshman Campus. If a
  developmentally disabled student gets on the wrong side a door, he/she will not be
  able to call for help.    **Fire**-The locks are supposed to disengage automatically in
  case of fire. This is not a certainty. And there are many emergency evacuation
  cases that do not involve fire.

- **Bathrooms:**
  **Insufficient and inadequate toileting and bathing facilities.** Most of these
  students wear adult diapers and/or wet or soil themselves and their clothing. They
  are also known to touch inappropriate or unsanitary places—thus spreading
  disease. The old Page Park School has toileting facilities with private, adult-sized
  changing tables in nearly every room—as well as 2-3 sinks in each classroom.
  Students' diapers and clothing must be changed publicly, in the classrooms, in the
  New Facility. The staff has been supplied with liquid hand sanitizer in lieu of
  soap and water. But these are hardly interchangeable items.
  **There is only 1 shower for the entire school.** It is in the boys' bathroom—
  which means that girls will be showered, naked, in the boys' bathroom. This
  shower does not have safety handrails or proper controls for water temperature.
  **There is only 1 handicapped toilet stall in the entire school for boys and one
  handicapped stall for girls.** There are only 3 "regular" stalls in the girls'
  bathroom and 2 "regular" stalls in the boys' bathroom—for the entire student
  population.

- **Physical Education:**
  **No schedule has been made available regarding the availability of the
  auxiliary gym.** These students have the right to expect the same amount of PE
  time as the rest of the student population.

**The auxiliary gym is currently inaccessible to these students because the elevator that takes them to the basement-level gym, is broken.**
**The Pool:** Before the school district started removing services w/o informing parents, all students received PE 2 days/week. This time was always broken up into *30 minutes of exercise in the pool and 60 minutes of exercise out of the pool.* The pool has been denied to the Page Park School students for the past school year—regardless of whether or not it is listed on IEPs. All PE has been denied to the former Page Park students who are currently "mainstreamed".
**There is no such thing as a PE room.** The "welcome" letter that was sent home with students today (June 23) refers to the Motor Room (physical therapy room) and to the PE Room as separate entities. These rooms are one and the same. There is also reference, in other papers, to the students riding **adapted tricycles**. The only place that they can ride these tricycles is up and down 2 short hallways, because there is not a safe, paved place available outside.

## Rockford Board of Education Meeting

June 10, 2000

Information:       Page Park/Skyview/Fresh Start Programs

Submitted By:    Colleen Cyrus
                 Assistant Superintendent of Student Support

### A.    BACKGROUND ANALYSIS

In response to continuing concerns and questions about the movement of the Page Park/Skyview/Fresh Start programs, please see the attached documents which will elaborate on each program and each of their numerous related issues.

### B.    EDUCATIONAL IMPACT STATEMENT

Each program is unique and essential to the students of this district and without question have an enormous impact on their educational and life-long success.

### C.    STRATEGIC PLAN COMPATIBILITY STATEMENT

The recommendation is consistent with:
Strategy 1:  Curriculum - *Effectively implement curriculum standards and assessments throughout the district and increase accountability throughout the system for improving student achievement.*
Strategy 2:  Finance – *Create a sound financial plan that will balance the budget and focus our financial resources on educational priorities.*
Strategy 3:  Partnerships – *Expand partnerships with all aspects of our diverse community, including business, education, service agencies, religious organizations and families.*
Strategy 5:  Staffing – *Attract, retain and develop the staff necessary to achieve our strategic objectives.*

### D.    STATUTE, BOARD POLICY OR RULE STATEMENT

The recommendation is consistent with Board Policy 3.10 – General School Administration – Goals and Objectives.

### E.    FISCAL IMPACT STATEMENT

N/A

— Despite numerous requests



PLAINTIFF'S EXHIBIT A

**F.    SUPERINTENDENT GOAL**

    N/A

**G.    IMPLEMENTATION AND ASSESSMENT PLAN**

    Implementation will take place at the onset of the 2008-2009 school year.

**ADMINISTRATION'S RECOMMENDATION**

    N/A

## Frequently Asked Questions
## Movement of Special Needs Program
## Page Park to Wilson

**Q: Who Attends this Special Needs Program?**

A: Students whose IEP requires a separate facility have had their services previously delivered at Page Park School, will now have the services delivered in the renovated wing of the school at 520 North Pierpont.

**Q: What academic services will be provided at Wilson?**

A: All appropriate general and special curriculum areas will continue to be addressed. Illinois Learning Standards and IEP goals drive all instructional decisions. A wide range of support services will continue to be available for the student's unique educational needs. These will include but are not limited to:

*[handwritten: current P.E. levels are inadequate & have been reduced over 2½ yrs.]*

* A Library containing books and educational games appropriate for cognitive levels of the special needs population. (The entire library from Page Park will be moved to Wilson)
* Music, Art, and PE: Students will receive specials at the same level as are currently provided at Page Park. PE will be taught in the auxiliary gym, which is available to Wilson students all day every school day.
* Daily Living Skills: All daily living skills taught in the apartment area will continue to be taught at the new location in specially designated areas.
* There will be a designated area established at Wilson to work on vocational education skill sets.

*[handwritten: (see notes entitled "New Page Park Facility")]*

**Q: How will the therapy needs of students be met in the new location?**

A: All required therapy services will continue to be delivered at the new location. These services are driven by each student's IEP and may change from year to year. The administration will adjust the therapy services as students IEPs change. All current age appropriate equipment and services are moving to Wilson. Current and next year services will include Speech, Occupational and Physical Therapies. *[handwritten: → see notes entitled "New Page Park Facility"]*

**Q: What nursing services will be available at Wilson?**

A: There will be a full time nurse on the premises of Wilson/Auburn Freshman Campus. *[handwritten: → shared]*

**Q: How will the student's social and recreational needs be met?**

A: The District is paving an additional area for Wilson students, a 1250 meter long nature trail is available, fields are adjacent to Wilson, a park is located across the street, and the auxiliary gym is continually available to Wilson for Cheerleading, Basketball games, sporting events, parties and Prom. A High School size gym will be available on a limited basis to the students at Wilson. *[handwritten: ↖ see notes]*

**Q: What is the interaction between Auburn Freshman Campus and Wilson School?**

A: Wilson, while sharing a roof with Auburn Freshman Campus, will be a separate facility. It will have its own principal, secretary, faculty, staff, entrance, parking lot, phone service, network server, classrooms, schedule, and calendar of social, family, and community events.
*[handwritten: This negates the purpose of "Least Restrictive environment."]*

# Page Park Program *aka Fresh Start* *Skyview* *CK*

The Page Park Program consists of two separate programs housed under one umbrella. Each program is designed to serve the needs of the students assigned to it. One will continue to serve the needs of student's with disabilities and/or students that require a more long term program. The other will serve at-risk students needing a new direction in their academic career.

## The First Program

The first program, will serve the needs of students with disabilities and may also admit students without disabilities that require a more structured, long term learning environment. The program will consist of a disciplined approach to ensure appropriate services for the exigent needs of each student. It will follow a modified middle/high school schedule that allows for individual needs while encouraging student participation within expected behavioral limits. Students, in this program, will use a Student Success Record to analyze and understand personal actions that detract from their ability to succeed in their home school. Classes taken will be in line with expected graduation requirements, but the limited scope of elective possibilities and non-existent extra-curricular programming detracts from the student's overall educational growth. Consequently, the desired outcome is for each student to attain personal growth within the program to achieve a return to his or her home school and engage in a more encompassing learning environment.

Students in the first program will be divided in groups by grade level. Teachers will be assigned to teach students based on appropriate certification and meeting highly qualified status for the content area. The following chart is an abbreviated example of the first program:

|  | Period One | Period 2 | Period 3 | Period 4 | Period 5 |
|---|---|---|---|---|---|
| Teacher 1 - Math | 6th grade | 7th grade | 8th grade | 9th grade | 10th grade |
| Teacher 2 - Science | 10th grade | 6th grade | 7th grade | 8th grade | 9th grade |
| Teacher 3 - SS | 9th grade | 10th grade | 6th grade | 7th grade | 8th grade |
| Teacher 4 – LA/Reading | 8th grade | 9th grade | 10th grade | 6th grade | 7th grade |

## The Second Program

The second program, will serve the needs of at-risk students, envelopes a nurturing and disciplined approach toward a more responsible attitude and successful education. It consists of two strands that provide opportunities for student growth and acceptance of personal decision-making. One strand is a demanding and structured program that

encapsulates the necessary steps for student academic success. It covers nine weeks of a school year and involves multiple layers of student guidance to enhance the probability of future success. The other strand is demanding and structured but could cover eighteen weeks of a school year. The following is a summary of each strand.

First strand:

The first strand, encompassing nine weeks of the school year, will continue to use the Student Success Records to document and analyze student progress. Students will make a count day or not depending on their daily point total. If a student earns a no count day, he/she will repeat the missed day. Their goal is to achieve 30 count days in the quarter and remain under 100 accumulated Page Park discipline violation points. If the student achieves this result, they will be returned to their home school at the end of the quarter. If 100+ Page Park discipline violation points are reached, the student will be moved to the 18-week strand at the end of the nine-week strand. A successful completion (minimum of 30 positive count days and 99 or less Page Park discipline violation points) of this nine week strand will also provide the student with re-entry to this strand should they find themselves in discipline difficulty at their home school later.

Second Strand:

The second strand, encompassing 18 weeks of the school year, will also use the Student Success Record to document and analyze student progress. It will also maintain the current system of count days, which include drops. Students earn placement in this strand for two distinct reasons: 1) non –successful completion of the first strand and 2) a student who has been returned to the home school and earned enough discipline violation points to return to Page Park and they had been unsuccessful in their first attempt at the first strand. A student's continued disruptive behaviors will be further intervened upon by various guidance and counseling elements that will be available to serve those needs not fully addressed in the shorter strand. To successfully complete this strand, the student must have made a minimum of 30 count days and earned less than 200 accumulated Page Park discipline violation points. There are two positive incentives built into this strand. First, for each count day the student has been able to amass beyond the 30 count day minimum, they will have 5 discipline violation points removed from their home school point total. Second, the student can elect to return to their home school upon achieving the 30 count day minimum if it is achieved before the end of the 18 weeks. Should the student be returned to the home school upon an unsuccessful venture of this strand, it will ensure that they will return to this strand and not be eligible for the nine week strand if the student finds his/herself in discipline difficulty at their home school.

The total days at Page Park for these students could be a maximum of approximately 135 total school days. Students return to their home schools with either a Stamp of Program Completion or Incompletion on their disciplinary point record. If any student reaches 200+ Page Park discipline violation points, they will be recommended for expulsion.

## Program Dynamics

Each of the strands in this program will run simultaneously in three teams. The daily Student Success Record sheet will indicate which strand the student is enrolled. This is designed to continue appropriate grade level teams and provide the best possible curriculum delivery.

Classes taught will include mathematics, English and/or language arts, social science, PE, and Character Building.

The following community agencies have relayed verbal commitments to provide various group and individual services throughout the school year: MELD, Rosecrance, and the Winnebago County Juvenile Probation Department. Groups and individual services could include grief management, anger management, self-esteem/personal health issues, and drug/alcohol awareness and intervention.

A pre-program will continue to be used for those students who persist in their disruptive behavior and earn no-count days during the 18 week strand and as a short term/day intervention for students on the nine-week program. The pre-program will be implemented when their disruptive behaviors are so severe and chronic that another intervention is necessary to provide a safer environment for the remaining students of either the nine week or eighteen week programs. Those students placed in the pre-program will need to earn five (5) consecutive days to return to the 18 week strand and move toward a return to their home school.

Students who continue to be disruptive in the 18 week strand and have earned 200 or more discipline violation points while at Page Park, will be recommended for expulsion. They will be placed in the pre-program if their disruptive behaviors continue to create an unsafe learning environment for themselves or the other students attending Page Park.



Page
Park
Program

1st Program

Nine Weeks
-30+ count days
-less than 100 DP
Return to home
school
- 30 or less count
days
-100 or more DP
Enter 1st week
strand

2nd Program
--1st Strand

2nd Program
--2nd Strand

June 24, 2008

Illinois State Board of Education          Via Fax:     217-782-0372
Attn: Due Process Coordinator              and U.S. Mail
100 North First Street
Springfield, IL 62777-0001

Rockford School District #205
District Superintendent                    Via Fax:     815-966-3193
Linda Hernandez                            and U.S. Mail
201 S. Madison St.
Rockford, IL 61101

Attorney Steve Katz                        Via Fax:     815-966-3905
201 S. Madison St.                         and U.S. Mail
Rockford, IL 61101

RE:    Due Process Request for
       Gillian ———————————

Dear Ms. Hernandez:

This letter is to inform you that Charlotte ——————— is requesting a Due Process Hearing
for her daughter, Gillian ——————, D.O.B. 7/08/90, who is attending Page Park
School. Her address is ————————————, Rockford, Illinois 61102 . Her telephone
number is (815)——————. Their language is English.

Gillian —————— is severely and profoundly disabled due to Landau-Kleffner
Syndrome (a seizure disorder), with profound Pervasive developmental Delays, and
Sensory Integration Disorders.

## COMPLAINT AGAINST ROCKFORD SCHOOL DISTRICT #205

1.)    For 2008-2009 school year, Gillian —————— will be transferred from a
       full-time, special education, self-contained school namely Page Park, unilaterally
       with out notice and agreement by her parent. The parent was not allowed to
       participate at all in this decision and in fact only received a generic notice.



Page Two
RE:    Gillian _____
June 24, 2008

2.)    The parent disagrees that Gillian will be able to receive a free and appropriate public education at a regular middle/high school in a self contained program.

3.)    Educational services that Gillian needs that she has not received since 2006-2007 school year to present because of the District's reduction of all services due to their plans to close the Page Park School and which is a violation of her I.E.P.'s.

    a)    adaptive physical therapy restricted to 60 minutes a month-this is of no use what so ever. Regular education children must have P.E. at least 2 to 3 times a week;

    b)    therapeutic swimming and hydrotherapy in a pool designed for special needs;

    c)    life skills training, particularly with eating/use of kitchen;

    d)    teeth brushing; and

    e)    use of outside activities to reduce aggression, and to reduce muscle atrophy, namely walking, riding adaptive bike, throwing balls.

4.)    All of the above were a part of Gillian's I.E.P.'s but were gradually removed by District #205 within the last two school years, without the parents agreement or knowledge.

5.)    That without the proper structure and programming available at Page Park School or a similarly designed therapeutic school Gillian will continue to regress and/or not make the progress she is able to do. She will be in a more restrictive environment in a locked down wing of a regular middle/high school. She needs a school that has:

    a)    a program of outside walking trails, an adaptive, therapeutic garden, and outside physical activity available;

    b)    a swimming, hydrotherapy program;

    c)    a life-skills program in a kitchen-home atmosphere; and

    d)    a safe environment far from a busy street in that she has a tendency to run away.

Page Three
RE:   Gillian _____
June 24, 2008

## REMEDIES REQUESTED

A.    Provide and follow I.E.P. as previously prepared for the 2005-2006 school year.

B.    Placement in a least restrictive environment namely a school where Gillian will
      not be locked down in an unsafe situation.

C.    Stay-put for Gillian in the program at Page Park School or a similar self contained
      school with a therapeutic pool, therapeutic play ground, walking trails, a
      therapeutic garden, a therapeutic kitchen, appropriate bathroom facilities and a
      full time nurse because of her life threatening seizures.

Very truly yours,

JOYCE O'NEILL AUSTIN,
JOA/mk

c:    Charlotte _____