**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CHARLOTTE K., as parent and next | ) | |
| friend of GILLIAN K., a minor, | ) | |
| KIMBERLY K., as parent and next | ) | |
| friend of MATTHEW K., a minor and | ) | |
| CAROL K., as parent and next friend of | ) | |
| WILLIAM K., a minor, | ) | |
| Plaintiffs, | ) | 08-C-50115 |
| | ) | |
| vs. | ) | |
| | ) | |
| ROCKFORD BOARD OF EDUCATION | ) | |
| SCHOOL DISTRICT #205, | ) | |
| | ) | |
| Defendant. | ) | |

# AMENDED COMPLAINT

## I.     JURISDICTION AND VENUE

1.      This is an action for declaratory and injunctive relief and violations of the Civil Rights Act of 1964 § 1983; I.D.E.A. 2004 20 U.S.C. §1400 et. seq.; Rehabilitation Act of 1973, Section 504, 29 U.S.C. §791 et. seq.; Americans with Disabilities Act of 1990, §2 et. seq.; 42 U.S.C. §12101 et. seq. Jurisdiction is founded upon a federal question of law, pursuant to 28 USC §1331.

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1342. Plaintiffs' claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§2201-02 and 42 U.S.C. §1983. At all times relevant to this action, Defendant has acted under color of state law.

3.      Venue is proper in the Northern District of Illinois under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims arose there.

II.    **PARTIES**

4.    CHARLOTTE K. is the mother and next friend of GILLIAN K., DOB: 7/08/90 who is severely and profoundly disabled due to Landau-Kleffner Syndrom, a seizure disorder on the autism spectrum, and anoxic brain injury. She has an awkward gait, difficulty with balance and falls often. She needs assistance with toileting in that she is marginally continent and soils herself often. She also needs assistance with using feminine hygiene products during her menstrual periods. She is non-verbal, but does understand some simple words. Her mother is currently working with her to try to learn how to hold a sandwich when eating. Her adaptive physical therapy has been restricted to 60 minutes a month per her I.E.P. Regular education children must have P.E. at least 2 to 3 times a week.

5.    KIMBERLY K. is the mother, next friend and legal guardian of MATTHEW K., DOB: 10/26/89, who resides in RocVale Children's Home at 4450 N. Rockton Avenue, Rockford, Illinois 61103. This is a group residential-only home administered by Milestones, Inc. MATTHEW K.  is severely and profoundly disabled due to Persuasive Developmental Disability, M.I., Autism and Attention Deficit Hyperactivity Disorder. His mental age is from 2.5 to 4.0 years old. As a result of the reduction of services to MATTHEW K. and the failure to follow MATTHEW'S I.E.P.'s, his behavior and aggression has increased significantly over the last school year and his medication has had to be increased which is a chemical restraint.

6.    CAROL K. is the mother and next friend of WILLIAM K., DOB: 6/07/91 who has severe and profound cognitive delays and severe seizures due to Tuberous Sclerosis. His I.E.P. states that mainstreaming is not an option for safety reasons which will require that he will have a full time individual assistant. There are inconsistent amount of services listed on his current I.E.P: 1740 minutes per week of special education instruction on page one of I.E.P.; 1770 minutes per week on page twenty of I.E.P. and only 60 minutes per month adaptive P.E. when regular education children receive at least 2-3 hours a week.

2

7.      At all times relevant herein, Plaintiffs CHARLOTTE K. and GILLIAN K. were residents of the City of Rockford, County of Winnebago and State of Illinois.

8.      At all times relevant herein, Plaintiff MATTHEW K. was a resident of the City of Rockford, County of Winnebago and State of Illinois. KIMBERLY K. is a resident of the City of Naperville, State of Illinois.

9.      At all times relevant herein, Plaintiffs CAROL K. and WILLIAM K. were residents of the City of Rockford, County of Winnebago and State of Illinois

10.     At all times relevant herein, ROCKFORD BOARD OF EDUCATION DISTRICT #205 (hereinafter referred to as DISTRICT) was a corporate body under the State of Illinois located within the boundaries of Winnebago County, State of Illinois.

11.     Defendant DISTRICT employs at its Rockford, Illinois location, certain school sites, which include the DISTRICT located at 201 S. Madison Street and Page Park School located at 5949 Safford Road and Wilson School located at 520 N. Pierpont Avenue, Rockford, Illinois, and has over 3,000 employees.

12.     All of the above minor children attended Page Park School, a therapeutic special education day school in School District #205 for the severely and profoundly disabled located at 5949 Safford Road, Rockford, Illinois, in the school years from 2005-2006, 2006-2007 and 2007-2008 to present.

13.     Page Park School was modified and adapted and made handicapped accessible over 35 years by the School District to accommodate children who were developmentally delayed with severe and profound physical and/or mental disabilities.

14.     Page Park School had among its specialty adapted modifications for the above population the following:

3

a)    an indoor heated therapeutic swimming pool with a chair lift;

b)    handicapped accessible bathroom facilities, showers and sinks practically in every classroom because most of the students were and are incontinent;

c)    a green house and garden plot;

d)    full laundry facilities;

e)    a fully equipped apartment with a complete kitchen, living room and bedroom;

f)    wide and long hallways carpeted for the use and protection of the children who were not stable on their feet;

g)    handicapped accessible walking trails and picnic facilities located in a park like setting; and

h)    a specifically designed handicapped accessible playground with, for example, swing sets to hold larger adult sized children who were/are disabled.

15.    The Plaintiffs are parents, guardians and next friends of children identified as having the need for special education as children with a disability as defined by I.D.E.A. 2004 20 U.S.C. §1412. Each of these children have Individualized Educational Programs ("I.E.P.") under 20 U.S.C. §1414(d) and have "individual appropriate accommodations". 20 U.S.C. §1414(d).

16.    These children have I.E.P.'s that demonstrate their disability is of such a nature or severity that they cannot be educated in regular classes or regular schools even with the use of supplementary aids and services. 20 U.S.C. § 1412 (a)(5).

17.    There are questions of law and fact common to all of these Plaintiffs that preclude the use of administrative remedies to provide them the necessary relief. These "complaint(s) of wrongdoing is inherent in the program itself and not directed at any individual child", J.S. vs. Attica Central Schools,

4

03 F2 7170 (2nd Cir. 2004). See Exhibit A.

### III.    <u>VIOLATIONS OF IDEA 2004</u>

18.     Plaintiffs re-allege and incorporate Paragraphs 1-17 as if fully set forth herein.

19.     That in violation of all of the placement decisions made by the special education team and without any meaningful notice to the parents who are a part of the special education team, the Defendant DISTRICT are unilaterally moving these children from their separate therapeutic day school located at Page Park, closing all of their therapeutic programs, namely a therapeutic pool, a therapeutic garden, a therapeutic kitchen, and a therapeutic play ground (donated by Bob Dylan) all designed to meet their special needs. These unilateral actions prevent parents from "meaningful participation" in educational decision-making for their child. 20 U.S.C. §1414(e). See the attached generic letters from the DISTRICT of the actual only notice received and the School Board Minutes of February 26, 2005 that failed to note the School Board voted to close Page Park School as it existed at the end of 2007-2008 school year modifying it for regular education students. See Exhibit 1 attached hereto.

20.     That the DISTRICT failed to notify any of the above parents and give prior notice of these changes to be made in the educational placement for their children as required under 20 U.S.C. §1415(b)(3), so as to allow them to have meaningful participation in these decisions.

21.     These unilateral changes being made by the DISTRICT would be denying the disabled children assistive technology services and equipment particularly designated for them. 20 U.S.C. §1401.

22.     That the Defendant DISTRICT has used federal funds under 20 U.S.C. §1404 to construct, alter and design Page park for these severely handicapped children.

23.     Upon information and belief the DISTRICT will be destroying the equipment, playground, pool, etc. shortly and not replacing it.

24.     That the Plaintiffs have authorized a filing of a Due Process Request to challenge the unilateral decision of the DISTRICT to transfer their children to a more restrictive environment where they will be unsafe and exposed to an environment harmful to their well being. See attached Exhibits 2 , 3 and 4.

25.     Under 34 CFR §300.518, 20 U.S.C. §1415(e)(2), a stay-put provision is in place during a Due Process Hearing and a child must remain in his or her current educational placement which would be the therapeutic program at Page Park school or a similar facility with the same therapeutic programs and adaptive equipment available to the children Plaintiffs.

26.     By failing to properly notify the parents/guardians of this unilateral move it has violated I.D.E.A. 2004 20 U.S.C. §1400 et. al. See Exhibit 1.

27.     Upon information and belief the DISTRICT failed to provide the minor Plaintiffs evaluation for assistive technology and augmentive devices pursuant to C.F.R. § 300.34.

28.     Upon information and belief the DISTRICT failed to provide the minor Plaintiffs sufficient occupational and physical therapy and "travel" training as defined by IDEA.

29.     Upon information and belief the DISTRICT failed to provide the minor Plaintiffs consistent physical education classes taught weekly by a certified physical education or adaptive P.E. teacher.

30.     Upon information and belief the DISTRICT failed to provide the minor Plaintiffs specific vocational evaluations and training.

31.     Upon information and belief the DISTRICT failed to provide the minor Plaintiffs a free and appropriate education based on mental age, not chronological age.

32.     Upon information and belief the DISTRICT failed to provide the minor Plaintiffs

therapeutic recreational services, including but not limited to aquatic, dance and sports pursuant to C.F.R. § 300.39(b)(2)(C).

33.    Upon information and belief, Rockford School District #205 has failed to provide the minor Plaintiffs vision and hearing screening as normally scheduled for regular education children.

## IV.    VIOLATION OF A.D.A.-AMERICANS WITH DISABILITIES ACT

34.    Plaintiffs re-allege and incorporate Paragraphs 1-33 as if fully set forth herein.

35.    Whether Defendant violated the A.D.A. for failure to provide the children Plaintiffs with the necessary handicapped accessible building facility to meet their unique needs, some of which are available to regular education children, but not available to the child Plaintiffs at the "new" location at Wilson School,  i.e.:

        i.    handicapped accessible private toileting/changing facilities;

        ii.    handicapped accessible shower;

        iii.    carpeting to prevent slippage and help with falls;

        iv.    shelter from elements while being unloaded from vehicles;

        v.    wheelchair ramps that meet building code and A.D.A.;

        vi.    handicapped accessible recreation facilities; and

        vii.    other building adaptions/modifications pursuant to Health and Safety Code for Schools in Illinois and A.D.A. See attached list of violations Exhibit B.

36.    Defendant's actions are in violation of the Americans with Disabilities Act in that it has denied the child Plaintiffs accessibility to a free and appropriate education required under A.D.A.

V.   **VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 §1983 AND SECTION 504 OF THE REHABILITATION ACT**

37.    Plaintiffs re-allege and incorporate Paragraphs 1-36 as if fully set forth herein.

38.    That the DISTRICT by unilaterally closing Page Park School without making provisions for the health, safety and necessary therapeutic programming for the students have violated their Civil Rights as a protected class under §1983 and Section 504 of the Rehabilitation Act in that the DISTRICT is placing regular students with no handicaps there instead

39.    Upon information and belief the DISTRICT has refused enrollment to eligible handicapped students at Page Park. Parents have been told since at least 2005 that "Page Park is not an option for your child". This was done systematically in order to reduce the enrollment numbers, thereby justifying the closing of Page Park School.

40.    Upon information and belief the DISTRICT has systematically reduced the special education programming and curriculum and classes available at Page Park since the 2005 school year by reducing recreational, vocational, adaptive physical education, life skills training and "travel" training that should be a part of the entire special education programming available at Page Park School or Aspire at Wilson School. None of the above would be expected to be a part of a handicapped child's I.E.P. Instead it is a part of mental age and physical handicapped appropriate programming and/or curriculum.

41.    Upon information and belief the DISTRICT has removed handicapped students from Page Park School against parents' wishes. These handicapped students were "mainstreamed" into dangerous, more restrictive classroom settings.

42.    Upon information and belief the services related to handicapped students' I.E.P.'s are being denied in these "mainstreamed" situations.

8

43.    Upon information and belief some of these handicapped students have been physically harmed and/or neglected in this "mainstream" setting.

44.    Upon information and belief the children Plaintiffs' I.E.P.'s and others have been changed without parent's knowledge or consent. It is possible this has been done systematically through the computers at the administration building or after an I.E.P. meeting unbeknownst to the parent who regularly does not receive a copy of the I.E.P. until days after the fact of the I.E.P. meeting. The signature of the parent on the DISTRICT'S form only connotes attendance and is attached after the I.E.P. is generated by the computer days later.

45.    Services that are specific to Page Park (therapeutic pool, walking paths, therapeutic adaptive playground, therapeutic garden...) upon information and belief were deliberately removed by DISTRICT personnel from the children Plaintiffs' I.E.P.'s and others because they cannot be made available at the new "Wilson Aspire" facility.

46.    The DISTRICT'S computerized I.E.P. program limits severely the choices a parent or even a teacher has to provide an individualized I.E.P. program in that additional and specific goals and objectives and or related services for example recreational goals are limited or non-existent. By doing so, the DISTRICT is systematically discouraging the hand writing/typing of additional individual educational programming needs of the children.

47.    Defendant's actions are in violation of the Civil Rights Act of 1964 § 1983 and the Americans with Disabilities Act by the systematic pattern of discrimination against the severely and profoundly handicapped children located at Page Park and denied them access to a free and appropriate public education.

## VI.    VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

48.    Plaintiffs re-allege and incorporate Paragraphs 1-47 as if fully set forth herein.

49.    Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified person with disabilities shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. §794(a).

50.    Each child Plaintiff is a "qualified person with disabilities" within the meaning of Section 504, because they have physical and/or mental impairments that substantially limit one or more major life activities. Each child Plaintiff meets the essential eligibility requirements for long term care under Illinois' Medicaid program and are thus "qualified".

51.    Regulations implementing Section 504 require that a public entity administer its services, programs and activities in "the most integrated setting appropriate" to the needs of qualified individuals with disabilities. 28 C.F.R. §41.51(d). These children have I.E.P.'s that demonstrate their disability is of such a nature or severity that they cannot be educated in regular classes or regular schools even with the use of supplementary aids and services. 20 U.S.C. § 1412 (a)(5).

52.    Section 504's regulations prohibit recipients of federal financial assistance from "utiliz[ing] criteria or methods of administration...(I) [t]hat have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap [or] (ii) that have the purpose of effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons." 45 C.F.R. §84.4(b)(4); 28 C.F.R. §41.51(b)(e)(I).

53.    Defendant's actions listed above are in violation of Section 504 of the Rehabilitation Act.

VII.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

54.    In <u>Honig v. Doe</u>, 484 U.S. 305 (1988), "...a parent seeking review under §1415(e)(2) must exhaust time-consuming administrative remedies...[However] parents may also by-pass the

10

administrative process where exhaustion would be futile or inadequate." See Exhibit A attached hereto.

55.     If the "stay-put provision" of 34 CFR §300.518, 20 U.S.C. §1415(e)(2) is not put in place as a statutory injunction preventing the DISTRICT from moving the children to Wilson School, the DISTRICT will close Page Park School and destroy millions of dollars of therapeutic equipment that can never be replaced.

56.     The DISTRICT has been systematically depriving the children at Page Park of the programming and the facilities formally available at Page Park because there are few remaining children with I.E.P.'s that required the pool in the 2007-2008 school year. Excuse after excuse was given for not using the pool. "We cannot find a teacher; the chemicals are not right; etc."

57.     This systematic discrimination began approximately three years ago as they have gradually moved students from Page Park to new settings less accommodating to these children who have severe and profound needs both physically and mentally. See Exhibit 5 attached hereto.

58.     This has been a systematic and consistent effort to gradually deprive these children of the necessary free and appropriate educational benefits so that they can become more independent and progress in their educational programming and not regress. All of the children need a form of adaptive P.E. that can be best accommodated at Page Park with the multiple therapeutic equipment and facilities that they had access to, but which are not available at the new facilities unless the DISTRICT spends the millions of dollars it has cost to create Page Park over all of these 35 years of development.

59.     The facilities at the "new" location are entirely inadequate for the severe and profoundly disabled children all of whom have sensory integration issues and who have physical difficulties as well: a) The drop off place for the buses has no protection from the rain and elements and the children have to walk hundreds of yards or be pushed in their wheelchairs to the entrance; b) No play ground at all or outside activities available; c) No classroom bathrooms-adult children have to be changed and cleaned in

classrooms. Two handicapped stalls for 30 students-no handicapped showers; d) The only way out of the building is by a key in a dead bolt which could be a serious hazard; e) No access or very poor access to a gymnasium; f) no cafeteria-the children have to stay in their classrooms; and g) No access to a therapeutic pool within a reasonable and accessible distance-the proposed pool at Auburn is a regular pool too deep and too cold for the handicapped. This is not a school facility especially designed for the handicapped-it is only adapted with an elevator that is not working.

60.      The Plaintiffs either wear depends, wet their pants or touch unhealthy and/or inappropriate things. Therefore, Page Park has a bathroom or a sink in nearly every classroom in order to clean the children up quickly and often and to control the spread of disease. The "new" facility does not have bathrooms in the classrooms. Upon information and belief, there will be liquid hand sanitizer used instead of soap and water. The children will have to be escorted down the hall instead taking them away from their activity and nessitating additional aides to assist in this process because the remaining children cannot be left without constant supervision. Even the life skills of proper bathroom behavior is going to be impossible to teach in those circumstances.

61.      All that the DISTRICT has said is the law mandates that these children be educated in the least restrictive environment so they have to be moved. This is totally incorrect. Board of Educ. of Tp. High School Dist. No. 211 v. Ross, 486 F.3d 267 C.A. 7 (Ill.) 2007. In fact, the intent of the DISTRICT is to move regular education children to Page Park. Those children have no need of the therapeutic pool, playground or special bathrooms in each classroom and which are not a part of their program. Upon information and belief, the therapeutic pool will be closed and be filled in with concrete so no one can ever reopen or use it again and the entire school deliberately modified by the DISTRICT for the non-handicapped children by the start of school. See attached affidavits. Exhaustion of administrative remedies is not necessary for this Complaint. See Exhibit A attached hereto.

12

## VIII.   TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

62.     To obtain a temporary restraining order (TRO) or preliminary injunction the movant

must show that 1.) It is reasonably likely to succeed on the merits; 2.) No adequate remedy at law exists;

3.) It will suffer irreparable harm which absent injunctive relief outweighs the irreparable harm the

respondent will suffer if the injunction is granted; and 4.) The injunction will not harm the public

interest. International Profit Associates, Inc. V. Paisola, 461 F.Supp.2d 672 ND.Ill.2006.

63.     It is reasonably likely that the Plaintiffs shall succeed in that the stay-put provision of

I.D.E.A. allows them to remain in the same school and classes they have been if the parents have filed a

Due Process Request objecting to the move of their child from Page Park School. This has been done.

See attached Affidavits and Amended Due Process Request-Exhibit 2, 3, and 4. It is also likely that they

will succeed in that certain Plaintiff's past I.E.P.'s mandate the use of the therapeutic pool, the outdoor

activities and special education programming available at Page Park.

64.     There has been no change in the children's need for such special education programming

and without it they will not receive the educational benefit it is designed to give them, to relieve their

stress, sensory integration issues and use of equipment to reinforce the occupational and physical therapy

necessary for their physical and mental handicaps to improve their life skills, vocational and travel. For

example, the Plaintiffs continue to need constant monitoring of their bathroom needs. Just because the

DISTRICT has systematically changed the Plaintiffs' I.E.P.'s over the last three years to remove some of

the accommodations listed because they are only available at Page Park School, does not mean that those

accommodations are not necessary to provided an educational benefit to the child.  One Plaintiff's

behavior in particular has gotten much worse as a result of the restrictions in movement and physical

activity that the DISTRICT has imposed on him at Page Park School this last year depriving him of the

pool and other appropriate activities that should have been a part of any special education

programming/curriculum for the severe and profoundly disabled. This will only get worse at the "new" facility.

65.     No adequate remedy at law exists in that even if the DISTRICT added on to the "new" facility, it would cost millions to replicate the setting and facility at Page Park School even to add multiple bathrooms. All of these items were accumulated over 35 years which would be impossible to rebuild prior to school starting this fall.

66.     Most of these children have limited time left to learn as much as possible regarding their own safety and life skills and would most likely regress substantially without the accommodations and the facility and programming available to them at Page Park School or a similarly equipped specially modified school pursuant to A.D.A. See attached Affidavits.

67.     If the program at Page Park School closes for the severe and profound children and there is no bathrooms available to them in their classroom or at least a sink; there is no therapeutic pool; no therapeutic playground ($20,000 was donated by Bob Dylan for the playground and he helped build it may years ago), these children will be irreparably harmed. Even if this court finds there is good sound and educational reasons to move the children to a new facility, there is no earthly reason to fill the pool in with concrete. It is as if the DISTRICT is deliberately destroying it so that no one in the future could resurrect it so that it could be used on a daily/weekly field trip by the children who need it most. It is specially designed to be extra warm and shallow and it has a special lift for wheelchair children to have access. See attached documentation of the lack of necessary facilities at the "new" location.

68.     There appears to be no irreparable harm to the DISTRICT  in that money appears to be no object in that they are not closing the school, they are just taking the necessary educational benefits away from the handicapped children who need it most. They are discriminating against the most handicapped by restricting their access and confining them to a locked facility where they will have no

ability to have outside contacts. Page Park School has a playground and walking trails onsite, the "new" facility does not. They are putting them more at risk for the spread of disease by not making bathroom facilities readily available. They are putting them in regular classroom facilities without any of the amenities and accommodations expected for the severe and profound population. The Page Park School is still in a condition that it can reopen in the fall for these children provided a TRO or preliminary injunction is granted not to further destroy the facility and stop the pool from being concreted in.

69.     An injunction that prevents the DISTRICT from further altering the facilities at Page Park School so that they are so irreparably altered and no longer usable for the severe and profoundly disabled children Plaintiffs and that prevents the DISTRICT from causing the therapeutic pool at Page Park School to be utterly destroyed by filling it in with concrete will not harm the public interest. In fact, the public interest would be best served by providing the best programming available to maximize the educational benefit to this severe population so that they can be as independent as possible and not regress into adverse behaviors and consequences of keeping them in a lock down institution that they left over 35 years ago.

70.     If any more notice than what has been given will put the Page Park facility at further risk and the issue would be moot.

**VII.    <u>PRAYER FOR RELIEF</u>**

    **WHEREFORE,** Plaintiffs request this Court grant the following relief:

    A.     Issue a temporary restraining order and/or a permanent injunction order against the Defendant, DISTRICT #205, to stop the tearing down of Page Park's therapeutic equipment including but not limited to the pool, playground and other facilities that were designed specifically for the disabled Plaintiffs to use and return Page Park building facility to the status quo as existed at the end of the 2007-2008 school year;

B.      That this Court enter a declaratory judgment as follows:

(1.)      That it is not necessary for Plaintiffs to exhaust administrative remedies because any delay will irreparably harm the Plaintiffs and their children;

(2.)      There are common issues of fact that do not avail themselves as administrative remedies;

(3.)      Defendant's actions of systematic reduction of related services and programming for special education for the minor Plaintiffs and the failure to provide a comparable physical facility as Page Park for the minor children Plaintiffs violates Section 1983 of the Civil Rights Act of 1964, Americans with Disabilities Act and IDEA; and/or

(4.)      Provide a building facility adapted and modified for the handicapped Plaintiffs, special education programming and physical needs equivalent to the Page Park facility "with all due deliberate speed";

C.      Award any compensatory damages as may be available;

D.      Award Plaintiffs their reasonable attorney's fees and costs in this action;

E.      And for such other and further relief as this Court deems proper and just.

CHARLOTTE K., as parent and next
friend of GILLIAN K., a minor,
KIMBERLY K., as parent and next
friend of MATTHEW K., a minor and
CAROL K., as parent and next friend of WILLIAM K., a
minor, Plaintiffs.

BY:      _____/s/ Joyce O'Neill Austin_____

Joyce O'Neill Austin, Attorney for Plaintiffs

Prepared by:
THE LAW OFFICES OF
SHRIVER, O'NEILL & THOMPSON
Joyce O'Neill Austin, #959
515 N. Court Street
Rockford, IL 61103

### AFFIDAVIT OF SERVICE

The undersigned, pursuant to the provisions of Section 1-109 of the Illinois Code of Civil Procedure, hereby under penalty of perjury under the laws of the United States of America,  certifies that on July 8, 2008, a copy of the following was electronically served via the U.S. District Court CM/ECF E-Filing System upon the following:

### CHARLOTTE K., et al.  v. Rockford Board of Education, District No. 205

For Defendant:

Lori L. Hoadley

Hinshaw & Culbertson LLP

100 Park Avenue

P.O. Box 1389

Rockford, IL 61105-1389

Phone: (815) 490-4900

Thomas Lester

Hinshaw & Culbertson LLP

100 Park Avenue

P.O. Box 1389

Rockford, IL 61105-1389

Phone: (815) 490-4900

 /s/ Michelle Kayser

Prepared by:
THE LAW OFFICES OF
SHRIVER, O'NEILL & THOMPSON
Joyce O'Neill Austin
515 N. Court Street
Rockford, IL 61103
Phone: (815) 963-4896
Fax:     (815) 963-4904

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2003

(Argued: December 3, 2003                Decided: October 6, 2004)

Docket No. 03-7170

------------------------------------

J.S., hereinafter "John", by his parent and natural
guardian; N.S., individually and on behalf of all others
similarly situated; S.H., hereinafter "Sally" by her parent
and natural guardian; C.H., Charles hereinafter by their
parent and natural guardian; J.H., individually and on
behalf of all others similarly situated; C.Z., hereinafter
"Caroline" by their parent and natural guardian; K.Z., "Ken"
hereinafter by their parent and natural guardian
individually and on behalf of all situated; (HEREINAFTER
"DENNIS"), BY HIS PARENT AND NATURAL GUARDIAN, S.E., ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs - Appellees,

- v -

ATTICA CENTRAL SCHOOLS,

Defendant - Appellant.

------------------------------------

Before:    CARDAMONE, SACK, and GIBSON,* Circuit Judges.

Appeal from a judgment of the United States District Court
for the Western District of New York (William M. Skretny, Judge),
denying defendant's motion to dismiss pursuant to Federal Rule of
Civil Procedure 12(b)(1) and (6), upon certification of the issue of

_____

        *    The Honorable John R. Gibson of the United States Court
of Appeals for the Eighth Circuit, sitting by designation.

1



subject matter jurisdiction for interlocutory appeal under 28 U.S.C.
§ 1292(b).

Affirmed and Remanded.

DANIEL J. MOORE, Law Firm of Harris
Beach LLP, Pittsford, NY, for
Defendant-Appellant.

BRUCE A. GOLDSTEIN, Law Firm of
Bouvier, O'Connor, LLP (Arthur H.
Ackerhalt, of counsel), Buffalo,
NY, for Plaintiffs-Appellees.

Ronald M. Hager, Neighborhood Legal
Services, Buffalo, NY; Jonathan
Feldman, Public Interest Law Office
Of Rochester, Rochester, NY, for
Amicus Curiae National Association
of Protection and Advocacy Systems
and Western New York Disability Law
Coalition

Jay Worona, New York State School
Boards Association, Inc., Latham,
NY, for Amicus Curiae New York
State School Boards Association,
Inc.

John R. Gibson, Judge:

Six students who attend school in the Attica Central
School District brought an action against the School District
primarily alleging that they have been denied the provision of a
free appropriate public education.  They included claims under the
Individuals with Disabilities Education Act (IDEA), Section 504 of
the Rehabilitation Act of 1973, Section 1983, and related New York
state education laws.  The students sought equitable relief, costs

2

and attorney's fees.[1]  The School District filed a motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  The district court (William M. Skretny, Judge) denied the motion in its entirety but, upon the School District's request, certified the issue of subject matter jurisdiction for interlocutory appeal.  On February 26, 2003, we agreed to hear it.

The School District argues on appeal that the students should have been required to exhaust their administrative remedies before bringing a federal court action.  In its order denying the motion to dismiss, the district court concluded that the complaint alleged facts sufficient to establish subject matter jurisdiction.  The district court reasoned that the School District's alleged systemic violations of the IDEA cannot be remedied through administrative proceedings, and therefore exhaustion would be futile.  The complaint was styled as a class action, and the district court described it as containing "complain[ts] of wrongdoing that is inherent in the program itself and not directed at any individual child."  The district court did not rule on the students' motion to certify the class, however, and they later withdrew that motion without prejudice pending this appeal.

On appeal of the district court's order on the motion to

---

[1] In their complaint, plaintiffs also asked for money damages, but they later struck that portion of their prayer.

3

dismiss, we must accept as true all material factual allegations in the complaint, but we are not to draw inferences from the complaint favorable to plaintiffs. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). We may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but we may not rely on conclusory or hearsay statements contained in the affidavits. Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). The district court declined to consider any of the materials outside of the pleadings that either party submitted. Accordingly, we limit our review to the allegations in the complaint.

THE COMPLAINT

The complaint describes each plaintiff's alleged special education deprivations. Plaintiff J.S., or John, attends Attica Middle School in a class with twelve students, one special education teacher, and one aide. Attica Middle School is the only middle school in the School District. According to the School District's Committee on Special Education, John is multiply disabled. He has cerebral palsy, is mentally retarded, and has perceptual/visual motor deficits. These conditions make him physically handicapped, mobility-impaired, and dependent upon a wheelchair.

John is able to get in and out of the middle school only through the shop class, and he does not have adequate access to the

4

school's computer room, nurse's office, weight room, home economics
room, or swimming pool.  He also does not have adequate or safe
toilet access.

The School District has not provided John with an appropriate
and adequate Individualized Education Program.  The document lacks
satisfactory goals and objectives, adaptive physical education,
mobility training, and means to deal with John's visual/perception
deficits.  The School District does not provide John with
appropriate transition services or sufficient progress reports, and
it has failed to evaluate him and provide assistive technology
services.  John has not been provided an education in the least
restrictive environment.

S.H., or Sally, attends Prospect Elementary School in a class
with twelve students, one special education teacher, and one aide.
She is also classified as multiply disabled.  She has cerebral palsy
with seizure disorder, is mentally retarded, visually impaired,
speech impaired, and is largely non-verbal.  She is physically
handicapped, mobility-impaired, and dependent upon a wheelchair.
She uses "Total Communication" sign language and is assisted with
equipment called a Dynavox.

Sally enters the elementary school through a ramped door that
someone else has to open for her.  She is able to reach only the
first floor of the three-story school.  She cannot go to the
basement where the cafeteria is located, so she and her classmates

5

eat lunch in their classroom.  She has no access to the music room, the computer lab, or the school playground.  Sally does not receive sufficient physical and occupational therapy, and her education is not in the least restrictive environment.

C.H., or Charles, attends Attica Senior High School in regular education classrooms.  He is classified as learning disabled, and he receives resource room services and poorly implemented testing modifications.  The School District has not developed an adequate transition plan for Charles or provided him with special education services that would allow him to benefit from his educational program.  School staff have not been informed of or trained in implementing Charles's Individualized Education Program.

C.Z., or Caroline, attends Prospect Elementary School in a pre-first grade program for at-risk students.  Although she receives special services from the School District, she is not classified under the IDEA.  Caroline was tested and denied special education because her scores were too high, but her parent was not given a copy of the test results.  Caroline has been denied services she should receive as a learning disabled child.

K.Z., or Ken, attends Sheldon Elementary School as a fifth grade student in a regular education classroom.  The School District's Committee on Special Education declassified him from his classification as speech impaired.

D.E., or Dennis, is enrolled at Attica Senior High School.  He

has a medical condition which defines him as a person with a disability under Section 504 of the Rehabilitation Act.  Following his request, a hearing was held which resolved his complaints with respect to his condition.

In addition to describing the circumstances of each individual plaintiff, the complaint alleges twenty-seven separate ways in which the School District has failed to comply with its obligations to students who are or may be disabled, and to those students' parents.  These allegations include failures to evaluate, to prepare or implement Individual Education Programs, to provide notice to parents, and to provide appropriate training.

I.

The Attica Central School District argues that the district court erred in failing to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  The district court determined that dismissal was unwarranted because the complaint falls within the "systemic violation" exemption from the exhaustion requirement.  In a motion to dismiss for lack of jurisdiction, we review <u>de novo</u> the district court's legal conclusions.  <u>APWU v. Potter</u>, 343 F.3d 619, 623-24 (2d Cir. 2003).

It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action

7

in federal or state court,[2] and the parties do not dispute the requirement.  The process includes review by an impartial due process hearing officer and an appeal from that hearing.  20 U.S.C. § 1415(f) and (g).  Parents may request a hearing to present complaints relating to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education."  20 U.S.C. § 1415(b)(6).  In New York, upon notice of request to the school district, the local board of education appoints an impartial hearing officer under a rotational selection process.  The hearing officer issues a written decision which can be appealed to a state review officer of the New York Education Department.  The state review officer's decision is final.  8 N.Y.C.R.R. § 200.5(i),(j).

The exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA.  20 U.S.C. § 1415(l); Hope v. Cortines, 872 F. Supp. 14, 19 (E.D.N.Y.), aff'd, 69 F.3d 687 (2d Cir. 1995).  As the district court correctly noted, the students asserted a section 504 Rehabilitation Act claim and a section 1983 claim that both seek to ensure a free appropriate public education, thus subjecting both to the IDEA exhaustion requirement.

The requirement is excused, however, when exhaustion would be

--------

[2]20 U.S.C. § 1415(i)(2) (2000); Heldman v. Sobol, 962 F.2d 148, 158 (2d Cir. 1992).

futile because the administrative procedures do not provide an adequate remedy. E.g., Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 788-91 (2d Cir. 2002). The students bear the burden of proof that exhaustion would be futile. Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 488 n.8 (2d Cir. 2002)(party asserting futility bears burden of proof).

Exhaustion of administrative remedies is required under the IDEA so that disputes related to the education of disabled children are first analyzed by administrators with expertise in the area who can promptly resolve grievances. Polera, 288 F.3d at 487.

> Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

Id. (quoting Hoeft v. Tucson Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir. 1992)). If the administrative process is not successful at resolving the dispute, it will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court. Riley v. Ambach, 668 F.2d 635, 640 (2d Cir. 1981). As we analyze whether plaintiffs have proven that their case should not be subject to the exhaustion requirement, we are to consider whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency. Hoeft,

9

967 F.2d at 1303.

In response to the motion to dismiss, the students asserted that they were excused from exhaustion because of a "class action exception." The district court concluded that case law did not support the students' assertion and that, even if the exception did exist, the students would not be entitled to it because no class had been certified. However, the district court observed that the futility exception has been applied in cases of alleged systemic violations, and that such cases are often class actions. The court concluded that, because the complaint is aimed at "wrongdoing that is inherent in the program itself and not directed at any individual child," the allegations of systemic violations entitled them to exemption from the exhaustion requirement.

The district court correctly observed that this Court has previously excused exhaustion of administrative remedies in cases that included allegations of systemic violations. Heldman v. Sobol, 962 F.2d 148 (2d Cir. 1992); Mrs. W. v. Tirozzi, 832 F.2d 748 (2d Cir. 1987); J.G. v. Bd. of Educ. of the Rochester City Sch. Dist., 830 F.2d 444 (2d Cir. 1987); Jose P. v. Ambach, 669 F.2d 865 (2d Cir. 1982). In each of these cases, this Court concluded it would be futile to complete the administrative review process because the hearing officer had no power to correct the violation. In Heldman, a father of a student with learning disabilities brought suit challenging the manner in which hearing officers are selected in New

York because he thought the system had denied his son an impartial
review of his Individualized Education Program.  962 F.2d at 151.
This Court concluded that exhaustion was futile because the
plaintiff was challenging a regulation implementing a state statute
that neither the hearing officer nor the Commissioner of Education
had the authority to alter.  Id. at 159.

Tirozzi involved complaints filed with the Connecticut State
Board of Education on behalf of groups of handicapped children who
were not receiving adequate services.  The plaintiffs believed the
state's treatment of their complaints to be inadequate, and they
filed suit in federal court seeking an injunction requiring the
agency to formulate and implement adequate complaint resolution
procedures.  832 F.2d at 752-53.  This Court concluded that the
alleged systemic violations could not be remedied by hearing
officers and were of a kind for which an administrative record would
not be of value to the district court.  The alleged deficiencies
were in the existing administrative scheme, and this Court held that
exhaustion was therefore futile.  Id. at 756-57.

A class action brought by a class of handicapped students
against a local school district was settled, and the district
appealed the district court's award of attorney's fees in J.G.  The
district argued that the class was statutorily precluded from
recovering its fees because it had not exhausted its administrative
remedies.  830 F.2d at 446.  This Court concluded that the

11

allegations were of wrongdoing inherent in the program, which included failure to evaluate and place students, failure to develop individualized education programs, and failure to inform parents of their rights. Id. at 446-47. Moreover, the settlement "went far beyond and accomplished much more than what could have been accomplished through administrative hearings." Id. at 447.

In Jose P., another class action, plaintiffs sought structural reform of the New York state and city educational systems to allow more timely evaluation and placement of handicapped children in appropriate programs. 669 F.2d at 867. The city's commissioner of education conceded that he could not foresee expeditious handling of the thousands of appeals at issue, and the state's bureaucratic system was not likely to lead to resolution. Accordingly, this Court held that resorting to administrative remedies would be futile. Id. at 869.

The common element among these four cases is that the plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process. If each plaintiff had been forced to take his or her claim before a hearing officer and appeal to another local or state official, there would have been a high probability of inconsistent results. Moreover, the

12

plaintiffs' claims were such that an administrative record would not have been of substantial benefit to the district court.

The School District argues that these cases are distinguishable and that instead we should be guided by the reasoning of Hope v. Cortines, 872 F. Supp. 14 (E.D.N.Y.), aff'd, 69 F.3d 687 (2d Cir. 1995). In Hope, parents of a child with a learning disability requested a hearing because they were dissatisfied with the Individualized Education Program that had been developed for her. The hearing was started but adjourned. Before its resumption, the parents filed suit in federal court alleging violations of the Americans with Disabilities Act, civil rights laws, and the New York Human Rights Law. They did not bring a claim under the IDEA. The district court conducted a hearing on the parents' preliminary injunction motion and dismissed the complaint for lack of subject matter jurisdiction. 872 F. Supp. at 16.

The district court in Hope concluded that all of plaintiffs' claims were subject to the IDEA's exhaustion requirement because each claim sought relief that is available under the IDEA. See 20 U.S.C. § 1415(f)(before filing suit seeking relief under any federal statute protecting the rights of children and youth with disability, if the relief sought is also available under the IDEA, plaintiff must exhaust administrative remedies). The district court examined the exceptions to the exhaustion requirement sua sponte, and it found that none applied. 872 F. Supp. at 22-23. This Court

13

affirmed the district court's "thorough, thoughtful opinion." 69

F.3d 687, 688 (2d Cir. 1995).

The district court in Hope also considered the purposes of

exhaustion.

> Plaintiffs in substance challenge the adequacy of the IEP
> created for [the student] and seek imposition of their own
> more expansive IEP.  This is precisely the type of remedy
> best fashioned by the educational experts skilled in
> developing such programs and provides a textbook example
> of the types of cases justifying administrative
> exhaustion.

872 F. Supp. at 21.  We acknowledge Hope's recognition of the

importance of exhaustion in "textbook" cases presenting issues

involving individual children where the remedy is best left to

educational experts operating within the framework of the local and

state review procedures.  However, the complaint in this case does

not allow us to conclude that this is such a "textbook" case -- at

least not at this stage of the proceedings.  The district court made

clear that the complaint does not challenge the content of

Individualized Education Programs, but rather the School District's

total failure to prepare and implement Individualized Education

Programs.  The district court also enumerated three more examples in

the complaint of allegations of systemic problems: the School

District's alleged failure to notify parents of meetings as required

by law; its alleged failure to provide parents with legally required

progress reports; and its alleged failure to provide appropriate

training to school staff.  Further, the complaint contains

14

additional allegations of systemic problems, including failure to perform timely evaluations and reevaluations of disabled children; failure to provide parents with required procedural safeguards regarding identification, evaluation, and accommodation of otherwise disabled children; and failure to perform legally required responsibilities in a timely manner, including providing and implementing transition plans, transitional support services, assistive technology services, and declassification services for children with disabilities.

As we consider the order denying the School District's motion to dismiss, we are mindful that we "must assume the truth of all facts pleaded by the party opposing the motion and read the record in a light most favorable to that party." <u>Tirozzi</u>, 832 F.2d at 757. We are persuaded that the district court correctly applied the law with respect to exhaustion to the allegations of the complaint, and we affirm the district court's denial of the Rule 12(b)(1) motion to dismiss the IDEA claim.

II.

The district court certified only the subject matter jurisdiction issue for interlocutory appeal and denied the School District's motion insofar as it sought certification of the district court's ruling on the sufficiency of plaintiffs' Section 504 and Section 1983 claims. We are not necessarily limited to the certified issue, as we have the discretion to consider any aspect of

15

the order from which the appeal is taken.  Morse/Diesel, Inc. v. Trinity Indus., Inc., 859 F.2d 242, 249 & n.6 (2d Cir. 1988); Moore v. Liberty Nat'l Life Ins. Co., 267 F.3d 1209, 1219-20 (11th Cir. 2001)("[T]he district court's order, not the certified question, is brought before the court on a § 1292(b) appeal, and this court's jurisdiction is not confined to the precise question certified by the district court.").

Plaintiffs' complaint includes four counts in addition to the IDEA count.  All five counts, however, are based on the same set of factual allegations.  Plaintiffs allege that the School District's failures concomitantly constitute violations of their rights to a free appropriate public education under the IDEA, Section 504 of the Rehabilitation Act, and provisions of the New York Education Law;[3] deprivation of physical access to school facilities under Section 504; and violations of due process and/or equal protection rights that are actionable under Section 1983.  Because the claims are so closely related, the most efficient resolution is for us to exercise our discretion in favor of considering all of them.

The School District argues that the Section 504 claims and the Section 1983 claim should be dismissed for failure to exhaust.  In the alternative, the School District argues that they should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

---

[3]The School District does not argue that the state law claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim.

We first consider whether the IDEA's exhaustion requirement also applies to these other counts.  The relevant portion of the statute gives some guidance:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act . . . , title V of the Rehabilitation Act . . . , or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  Thus, if plaintiffs' other claims seek relief that is also available under the IDEA, they too are subject to exhaustion analysis.

Plaintiffs acknowledge that our ruling on their IDEA claim will apply to their second Section 504 claim, which seeks relief for failure to provide a free appropriate public education.  Because their Section 1983 claim likewise seeks relief based on the same alleged failure, it too will be governed by the same ruling.  Accordingly, we affirm the district court's denial of the School District's Rule 12(b)(1) motion to dismiss the complaint's second Section 504 claim and its Section 1983 claim.

The district court applied the correct standard in its consideration of the School District's Rule 12(b)(6) motion to dismiss the Section 504 counts and the Section 1983 count.  On appeal, we too must assume the truth of the allegations of the

17

complaint, read the record in the light most favorable to plaintiffs, and draw all inferences in their favor. <u>Mrs. W. v. Tirozzi</u>, 832 F.2d 748, 757 (2d Cir. 1987). We have reviewed the district court's Rule 12(b)(6) ruling and, finding no error, we affirm.

CONCLUSION

The district court correctly ruled that the students' complaint is not subject to dismissal under Rules 12(b)(1) or (6). We affirm the judgment and remand for further proceedings.

# NEW PAGE PARK SCHOOL FACILITY AT WILSON

The following are observations concerning inadequacies with regard to the new Page Park School facility located at the Auburn Freshman Campus. If such things were discovered in a nursing home, the home would be shut down and those responsible would be arrested and charged with abuse.

Charlotte Bader-Kennon

- **Entrance to Building**:
- **No protection from The Elements for loading and unloading Septran and Busses.** When the staff requested that a Pavilion be built for this purpose, the school board's response was, "Not Now". Rain and snow and ice will be treacherous for children who can barely walk or who are in wheelchairs. They have already been exposed to wind and rain.

- **Security/Safety:**
  **Locked doors require a Key to open.** Most of the staff does not have a key to open the doors. A staffer and I had to tuck a piece of wood in the door jam to prevent us from getting trapped between two doorways. I, myself, got trapped when I was alone, passing between these same doorways. I pounded on the door for quite a while before someone sent a student to help me. There is not a single student attending "Aspire" who would know enough to bang on the door, hoping that someone would let them back into the building. If a developmentally disabled student gets on the wrong side a door, he/she will not be able to call for help.
  **Fire-**The locks are supposed to disengage automatically in case of fire. This is not a certainty. And there are many emergency evacuation cases that do not involve fire.
  **The windows do not have screens.** The ventilation system is poor and the rooms get very hot from the sun and the body heat. When the staff opens the windows (when a person with a seizure disorder gets too hot, they have seizures) students have jumped out and run off.
  **Outdoor Safety:** There is no fencing to prevent children from running into traffic in the parking lot. This school is filled with teenage drivers. There is not any kind of safe, paved area for students, with or without wheelchairs. Children will have to be kept inside—even during the entire summer months. *The wheelchair ramp is dangerous. The doors lock automatically behind you, leaving you stuck on a ramp that is 3-4 inches above the ground.*

- **Bathrooms:**
  **Insufficient and inadequate toileting and bathing facilities.** Most of these students wear adult diapers and/or wet or soil themselves and their clothing. They

PLAINTIFF'S EXHIBIT
3

are also known to touch inappropriate or unsanitary places—thus spreading disease. The old Page Park School has toileting facilities with private, adult-sized changing tables in nearly every room—as well as 2-3 sinks in each classroom. Students' diapers and clothing must be changed publicly, in the classrooms, in the New Facility. The staff has been supplied with liquid hand sanitizer in lieu of soap and water. But these are hardly interchangeable items. The children have been disrobed and changed in the classrooms, in front of other children, in front of open windows. (Although the school district claims that this does not occur—I have personally seen it) People can just walk into the classrooms at any time to observe this.

*(This practice may have ceased. I have not seen a child being changed in a classroom in the past several days. , nor have I seen the adaptive gurney in classrooms that is used to change Depends for several days. <u>But this brings up other questions: Where is the supposed "changing room" located? Is there more than one changing room? Does it have adequate square footage, privacy, access to soap and running water? How far is it from other classrooms?)</u>*
**There is only 1 shower for the entire school.** It is in the boys' bathroom—which means that girls will be showered, naked, in the boys' bathroom. This shower does not have safety handrails or proper controls for water temperature, off/on. It is also too high for most adults to reach. *And there is no hot water !* **There are no Laundry facilities.** The equipment is in the building, but it is not set up.

**\*\*\* *<u>There is also a tile ledge on the floor which makes it inaccessible to wheelchairs as well as to many students who cannot pick their foot up and step over the ledge.</u>* \*\*\***

**There is only 1 handicapped toilet stall in the entire school for boys and one handicapped stall for girls.** There are only 3 "regular" stalls in the girls' bathroom and 2 "regular" stalls in the boys' bathroom—for the entire student population. *The only bathrooms are approx. 180-200 feet from some of the classrooms.(I measured) This makes it difficult or nearly impossible for barely continent, physically disabled children to reach the toilet and disrobe before they lose control of their bladders or bowels.*

## <u>NO SERVICES, FOR ANY PROGRAMS, ARE BEING PROVIDED THROUGHOUT THE SUMMER , EVEN THOUGH CLASS IS IN SESSION.</u>

- **<u>Physical Education:</u>**
  **No services are being provided for the summer. There is no physical therapy (the room isn't even set up. There is no PE. There is no Vocational Therapy. They cannot safely go outside.**

  **No schedule has been made available regarding the availability of the auxiliary gym.** These students have the right to expect the same amount of PE

time as the rest of the student population. Most of the children cannot be brought outside because the only paved area is the driveway. They are only scheduled for 60 minutes of PE per *month* in the new IEPs.
**The auxiliary gym is currently inaccessible to these students because the elevator that takes them to the basement-level gym, is broken. And many of these children are afraid of elevators—even if it did work.**

**The Pool:** Before the school district started removing services w/o informing parents, all students received PE 2 days/week. This time was always broken up into *30 minutes of exercise in the pool and 60 minutes of exercise out of the pool. This was standard for PE. It was never mentioned that it would be discontinued. The pool has been denied to the Page Park School students for the past school year—regardless of whether or not it is listed on IEPs. All PE has been denied to the former Page Park students who are currently "mainstreamed", as well as to the students currently enrolled in "Aspire" summer school. A lack of services for 3 months will certainly cause regressions in many areas.*

**There is no such thing as a PE room—a feature that the school board claims exists.** The "welcome" letter that was sent home with students today (June 23) refers to the Motor Room (physical therapy room) and to the PE Room as separate entities. These rooms are one and the same. The square footage for this room is inadequate in relation to it's purpose.

There is also reference, in other papers, to the students riding **adapted tricycles.** The only place that they can ride these tricycles is up and down 2 short hallways, because there is not a safe, paved place available outside.

**Ventilation in the classrooms is so poor that the staff tries to open the windows. The windows do not have screens and several children have jumped out of the windows!** Since there is not a fence around the building, students could easily run into driveway and/or parking lot and be struck by any number of vehicles.

And, once again, the staff cannot take the children outside. (see PHYSICAL EDUCATION)

**General Safety: The floors are waxed tile on concrete. When a child falls due to seizure or physical disability, serious injury will be a certainty.**

**The intercom switch in high-risk rooms is not working.** No one can contact the office or the nurse's station in the event of an emergency. A telephone/intercom is necessary in every room.

**Fire extinguishers, etc?** This is just a question. I do not remember seeing any. And are the staff trained as to how they are used?

**Sound Dampening.** The rooms echo—which is tortuous for students who have autism.

**There is a moldy mat at the inside, SE entrance hall.**

**Square footage:** There is not enough space in many of the rooms for children who have aggressive tendencies. The other students are in danger when these students "go off". *Their aggressions could be prevented, because they melt down in stages, if the staff could bring them outside safely.*

**The District has "moved" the programs to the new facility. But they have not set anything up because it would become obvious that there is not enough square footage for the equipment.**

The make-up of the building is disjointed, poorly planned out, and does not lend itself to the programs that are tailored to these students.

**No Services—regardless of IEP:** There is not a single piece of equipment that is set up—including the Independent Living House, Motor Room, Art Therapy Room, Library, Occupational Therapy Room…

**There are no laundry facilities set up.**

**School Nurse:** National School Nurse Assoc. guidelines recommend 1 nurse per 125 students in a school where there is a large number of disabled students. There will be nurse for the entire Freshman Campus—including "Aspire". It has been timed, and it will take more than 5 minutes to get from the Freshman Campus Nurse's Office to the "Aspire" facility. My child stops breathing when she has seizures. I 5 minutes, I would be planning a funeral.



**ROCKFORD
PUBLIC
SCHOOLS**

April 2, 2008

Page Park School
5949 Stafford Road
Rockford, Illinois 61101-2276
815 / 966-3770
FAX 815 / 966-3297

Dear Parents, Guardians, Family Members, and Friends,

Over the last several years there has been much discussion regarding the future of Page
Park School. Many of our students have successfully transitioned into special education
classrooms located in regular education buildings across the district. Therefore, the
number of students here at Page has continually declined. At this time we only have an
enrollment of 42 students for this school year. We are anticipating a few students
graduating at the end of this school year, which will result in even fewer students
attending this center. The expenses of operating an entire building for less than 40
students are significant. Therefore, we will be relocating to another site at the end of this
school year. We are scheduled to move into a separate wing of the Auburn Freshman
Campus at Wilson immediately after the last day of school. This campus is located at
520 N. Pierpont Ave., very near our current location. We are projected to open our doors
to students on June 23rd for the Extended School Year Session. Our wing will be totally
separate from the rest of the Wilson campus. We will continue to carry out and
implement our high quality program for students.

We will be busy planning and packing in the next several weeks. Of course, part of our
plans includes a huge party on the grounds to celebrate the many years of memories made
here. We will also celebrate and welcome in the excitement of the new chapter in Page
Park History. You will receive more details about the move as they are finalized.

Please stop by or give us a call with any questions you may have.

Sincerely,

Deb Johnson,
Principal

/lg

Doc: word Page Park move 4/08



PLAINTIFF'S
EXHIBIT
1

Wilson
(Page Park Program)
Extended Summer School
June 23 – July 31, 2008
Monday – Thursday
8:00 – 12:00

Dear Parents/Guardians,

WELCOME to the first ever summer program at our new location at Wilson, 520 North Pierpont Avenue. We have been busy moving, setting up, and getting everything ready to go. Our classrooms look great and teachers are ready. The staff has been incredible and has worked very hard to insure everything is ready for the students. They all deserve a round of applause!! We would not be ready if it were not for their dedicated efforts.

We will be working on IEP goals and objectives this summer as we assist the students in becoming comfortable in the new building. Our first priority will be to make sure all students feel safe and learn where everything is located. We will also continue our annual summer activities, i.e., July 4th parade, car wash, cook-out, etc. Staff and students will also be doing gardening and planting flowers at our entrance.

Construction continues on our new kitchen area and nursing office. Our bathrooms and new shower are installed. Our house area with bedroom, living room, and dining area is done. Our sensory motor room is set up with equipment for students but will require further organization as we go along. Throughout the summer we will work on unpacking and organizing the music/library room, the PE room, and the art/vocational room.
*P.E. + motor Room are one & the same*

This is an exciting time as we move forward. Please stop by!! As before, my door is always open. Attached you will find a list of information you may find useful. Here's wishing that you all have a fun relaxing and safe summer.

Sincerely,

Debbie Johnson
Deb Johnson
Wilson Principal



> ➤ The Wilson phone number is 815-720-4764 (we are hoping
>   to get our 815-966-3770 back).
> ➤ We are located in the southwest wing of the Wilson
>   building. Enter the south entrance off Pierpont (nearest to
>   School St.) and follow the Fresh Start signs to the back.
>   There will be a small parking lot with our front door to the
>   right.
> ➤ Summer school is Monday through Thursdays *except* school
>   will be held on Friday, June 27th but not on Thursday, July
>   3rd.
> ➤ Lunch will be provided.

Page 13
Board of Education – February 26, 2008

**B.    Language Immersion Program Recommendations**
Hearing no objections, Mrs. Kalchbrenner suspended the rules to consider approval of the Language Immersion Program Recommendations to include testing of all students in this program.
Motion by Mrs. Westholder, seconded by Mr. Evans, to approve the Language Immersion Program Recommendations.
Mr. Evans stated that a large group of parents are in support of the 90/10 model of the language immersion program. It was also the intent of the committee to recommend testing of all students in this program.
*Mrs. Kalchbrenner agreed that the district does not promote this program as much as it should. It is a great program and a lot more can be done to expand it.*
Approved unanimously on roll call.

**C.    Skyview/Fresh Start Resource Utilization**
Mr. Evans noted that the Education Committee recommendation was to combine the Skyview and Fresh Start programs as well as to include additional resources to enhance services in this combined program.
*Mrs. Hernandez explained that administration has also determined that the cost for this recommendation would be between $85,000 to $90,000.*

Motion by Mr. Kelley, seconded by Mrs. Westholder, to suspend the rules to consider approval of the Skyview/Fresh Start Resource Utilization.
Approved unanimously on roll call.

Motion by Mr. Evans, seconded by Mr. Williams, to approve the Skyview/Fresh Start Resource Utilization.
*Mrs. Westholder was unsure that the district has done all that is needed and asked if the addition of one full-time psychologist was the answer.*
*Mrs. Cyrus explained that the proposal was to combine the two programs so children are not in crises throughout the day. There are seven staff members in the two buildings allocated to assist with the social and emotional support of these students. At present, a social worker is allocated three days a week to the Fresh Start program and two days a week to the Skyview program. When combined, these programs would have a full-time social worker and a full-time psychologist. These two individuals would work in conjunction with each other to provide group counseling as well as referrals to support services. The district has also begun to participate in an outreach program to Rosecrance and has a connection to Juvenile Probation Department and Janet Wattles. Most of the student support specialists throughout the district have had training in the field of counseling, etc.*
Mr. Evans stated that in addition to adding a full-time psychologist, the Committee requested the services be enhanced by referring students to resources available in the community. This motion is not to solve the problem but to move the district in the right direction.
Approved unanimously on roll call.

Exhibit ?

July 7, 2008

| | | |
|---|---|---|
| Illinois State Board of Education | Via Fax: | 217-782-0372 |
| Attn: Due Process Coordinator | and U.S. Mail | |
| 100 North First Street | | |
| Springfield, IL 62777-0001 | | |

Rockford School District #205
District Superintendent          Via Fax:       815-966-3193
Linda Hernandez                  and U.S. Mail
201 S. Madison St.
Rockford, IL 61101

Attorney Steve Katz              Via Fax:       815-966-3905
201 S. Madison St.               and U.S. Mail
Rockford, IL 61101

Indian Prairie District #204     Via Fax:       630-375-3009
District Superintendent          and U.S. Mail
Stephen Daeschner
Crouse Education Center
780 Shoreline Drive
Aurora, IL 60504

RE:    Request for leave to file an Amended Due Process Request for
       Matthew ————————

Dear Ms. Hernandez:

This letter is to inform you that Kimberly ——————, as guardian, is requesting a Due Process Hearing for her son, Matthew ————, D.O.B. 10/26/89, who is attending Page Park School. Her address is ——————, Naperville, IL 60564. Her telephone number is (630) ——————. Their language is English.

Matthew is severely and profoundly disabled due to P.D.D., M.I., Autism and A.D.H.D.

## COMPLAINT AGAINST ROCKFORD SCHOOL DISTRICT #205 and INDIAN PRAIRIE DISTRICT #204

1.)    For 2008-2009 school year, Matthew ———————— will be transferred from a full time special education self contained school namely Page Park unilaterally with out notice and agreement by his guardian.

PLAINTIFF'S
EXHIBIT
2

Page Two
RE:    Matthew _____
July 7, 2008

2.)    The guardian disagrees that Matthew will be able to receive a free and appropriate public
       education at a regular middle/high school in a self contained program.

3.)    Educational services that Matthew needs that he has not received since 2006-2007 school year to
       present because of the District's reduction of all services due to their plans to close the Page Park
       School and which is a violation of his I.E.P.'s.

       a)    movement in the community with a one-on-one aide;

       b)    therapeutic swimming and hydrotherapy in a pool designed for special needs;

       c)    picture chart PEC program;

       d)    life skills training, particularly with eating/use of kitchen;

       e)    teeth brushing;

       f)    use of outside activities to reduce aggression, namely walking, riding bike, throwing
             balls.

4.)    As a result of the reduction of services to Matthew and the failure to follow Matthew's I.E.P.'s,
       his behavior and aggression has increased significantly over the last school year and his
       medication has had to increase which is a chemical restraint.

5.)    That without the proper structure and programming available at Page Park School or a similarly
       designed therapeutic school Matthew will continue to regress. He will be in a more restrictive
       environment in a locked down wing of a regular middle/high school. He needs a school that has:

       a)    a program of outside walking trails, a garden, and outside physical activity available;

       b)    a swimming, hydrotherapy program;

       c)    a life skill programming in a kitchen-home atmosphere;

       d)    a safe environment far from a busy street.

6.)    Rockford School District #205 failed to provide evaluation for assistive technology and
       augmentive devices pursuant to C.F.R. § 300.34.

7.)    Rockford School District #205 failed to provide sufficient occupational and physical therapy.

8.)    Rockford School District #205 failed to provide consistent physical education classes taught
       weekly by a certified physical education or adaptive P.E. teacher.

Page Three
RE:    Matthew ══════
July 7, 2008

9.)    Rockford School District #205 failed to provide specific vocational evaluations and training.

10.)   Rockford School District #205 failed to provide a free and appropriate education based on
       mental age, not chronological age.

11.)   Rockford School District #205 failed to provide therapeutic recreational services, including but
       not limited to aquatic, dance and sports pursuant to C.F.R. § 300.39(b)(2)(C).

## REMEDIES REQUESTED

A.    Provide and follow I.E.P. as previously prepared.

B.    Placement in a least restrictive environment namely a school where Matthew will not be locked
      down.

C.    Retention of the program at Page Park School or a similar self contained school with a
      therapeutic pool, therapeutic play ground, walking trails, a therapeutic garden and a therapeutic
      kitchen.

D.    Modification of the school facilities the student attends so that it meets the standards of the
      Americans with Disabilities Act and his disabilities as well.

Very truly yours,

JOYCE O'NEILL AUSTIN,
JOA/mk

c:     Kimberly ══════

July 7, 2008

| | |
|---|---|
| Illinois State Board of Education | Via Fax:    217-782-0372 |
| Attn: Due Process Coordinator | and U.S. Mail |
| 100 North First Street | |
| Springfield, IL 62777-0001 | |

| | |
|---|---|
| Rockford School District #205 | |
| District Superintendent | Via Fax:    815-966-3193 |
| Linda Hernandez | and U.S. Mail |
| 201 S. Madison St. | |
| Rockford, IL 61101 | |

| | |
|---|---|
| Attorney Steve Katz | Via Fax:    815-966-3905 |
| 201 S. Madison St. | and U.S. Mail |
| Rockford, IL 61101 | |

RE:    Request for leave to file an Amended Due Process Request for
       Gillian ——————

Dear Ms. Hernandez:

This letter is to inform you that Charlotte —————— is requesting a Due Process Hearing for her daughter, Gillian ——————, D.O.B. 7/08/90, who is attending Page Park School. Her address is ——————, Rockford, Illinois 61102 . Her telephone number is (815)——————. Their language is English.

Gillian K. is severely and profoundly disabled due to Landau-Kleftner Syndrome and severe mental retardation.

## **COMPLAINT AGAINST ROCKFORD SCHOOL DISTRICT #205**

1.)    For 2008-2009 school year, Gillian —————— will be transferred from a full time special education self contained school namely Page Park unilaterally with out notice and agreement by her parent. The parent was not allowed to participate at all in this decision and in fact only received a generic notice.


PLAINTIFF'S EXHIBIT

Page Two
RE:   Gillian _____
July 7, 2008

2.)    The parent disagrees that Gillian K. will be able to receive a free and appropriate public education at a regular middle/high school in a self contained program.

3.)    Educational services that Gillian K. needs that she has not received since 2006-2007 school year to present because of the District's reduction of all services due to their plans to close the Page Park School and which is a violation of her I.E.P.'s.

         a)    adaptive physical therapy restricted to 60 minutes a month-this is of no use what so ever. Regular education children must have P.E. at least 2 to 3 times a week;

         b)    therapeutic swimming and hydrotherapy in a pool designed for special needs;

         c)    life skills training, particularly with eating/use of kitchen;

         d)    teeth brushing; and

         e)    use of outside activities to reduce aggression, namely walking, riding adaptive bike, throwing balls.

4.)    All of the above were a part of Gillian K.'s I.E.P.'s but were gradually removed by District #205 within the last two school years.

5.)    That without the proper structure and programming available at Page Park School or a similarly designed therapeutic school Gillian will continue to regress and/or not make the progress she is able to do. She will be in a more restrictive environment in a locked down wing of a regular middle/high school. She needs a school that has:

         a)    a program of outside walking trails, a garden, and outside physical activity available;

         b)    a swimming, hydrotherapy program;

         c)    a life skill programming in a kitchen-home atmosphere; and

         d)    a safe environment far from a busy street in that she has a tendency to run away.

6.)    Rockford School District #205 failed to provide evaluation for assistive technology and augmentive devices pursuant to C.F.R. § 300.34.

7.)    Rockford School District #205 failed to provide sufficient occupational and physical therapy.

Page Three
RE:   Gillian ═══════════
July 7, 2008

8.)   Rockford School District #205 failed to provide consistent physical education classes taught weekly by a certified physical education or adaptive P.E. teacher.

9.)   Rockford School District #205 failed to provide specific vocational evaluations and training.

10.)  Rockford School District #205 failed to provide a free and appropriate education based on mental age, not chronological age.

11.)  Rockford School District #205 failed to provide therapeutic recreational services, including but not limited to aquatic, dance and sports pursuant to C.F.R. § 300.39(b)(2)(C).

## REMEDIES REQUESTED

A.    Provide and follow I.E.P. as previously prepared for the 2005-2006 school year.

B.    Placement in a least restrictive environment namely a school where Gillian K. will not be locked down in an unsafe situation.

C.    Stay-put for Gillian K. in the program at Page Park School or a similar self contained school with a therapeutic pool, therapeutic play ground, walking trails, a therapeutic garden, a therapeutic kitchen, appropriate bathroom facilities and a full time nurse because of her life threatening seizures.

D.    Modification of the school facilities the student attends so that it meets the standards of the Americans with Disabilities Act and her disabilities as well.


Very truly yours,



JOYCE O'NEILL AUSTIN,
JOA/mk

c:     Charlotte ═══════════

July 7, 2008

Illinois State Board of Education          Via Fax:      217-782-0372
Attn: Due Process Coordinator             and U.S. Mail
100 North First Street
Springfield, IL 62777-0001

Rockford School District #205
District Superintendent                    Via Fax:      815-966-3193
Linda Hernandez                            and U.S. Mail
201 S. Madison St.
Rockford, IL 61101

Attorney Steve Katz                        Via Fax:      815-966-3905
201 S. Madison St.                         and U.S. Mail
Rockford, IL 61101


RE:    Request for leave to file an Amended Due Process Request for
       William T. ══════════ .

Dear Ms. Hernandez:

This letter is to inform you that Carol ═══════ is requesting a Due Process Hearing for her
son, William T. ═══════, D.O.B. 6/07/91, who is attending Page Park School. Her address is
════════════, Rockford, Illinois 61114 . Her telephone number is (815)════════. Their
language is English.

William K. has severe and profound cognitive delays and severe seizures due to Tuberous
Sclerosis.

## COMPLAINT AGAINST ROCKFORD SCHOOL DISTRICT #205

1.)    Without agreement and consent of the parents, William K. is being moved to a more
       restrictive environment. At his present location, Page Park School, he does not need an
       individual assistant to monitor his safety.


PLAINTIFF'S EXHIBIT

Page Two
RE:    William T. _____
July 7, 2008

2.)    He is being moved from a separate facility for school into a regular educational school. His I.E.P. states that mainstreaming is not an option for safety reasons which will require that he will have a full time individual assistant.

3.)    The goal is to have William K. be as independent as possible in his daily living skills which is contrary to his need for an individual assistant to be with him at all times in the new facility he is being moved to at Wilson. i.e. he is able to handle at Page Park School his bathroom/toilet needs by himself, but at the new facility he will have to be escorted to the bathroom and have someone with him at all times.

4.)    Inconsistent amount of services: 1740 per week on page one of I.E.P.; 1770 per week on page twenty of I.E.P.

5.)    Only 60 minutes per month adaptive P.E. when regular education children receive at least 2-3 hours a week.

6.)    Rockford School District #205 failed to provide evaluation for assistive technology and augmentive devices pursuant to C.F.R. § 300.34.

7.)    Rockford School District #205 failed to provide sufficient occupational and physical therapy.

8.)    Rockford School District #205 failed to provide consistent physical education classes taught weekly by a certified physical education or adaptive P.E. teacher.

9.)    Rockford School District #205 failed to provide specific vocational evaluations and training.

10.)    Rockford School District #205 failed to provide a free and appropriate education based on mental age, not chronological age.

11.)    Rockford School District #205 failed to provide therapeutic recreational services, including but not limited to aquatic, dance and sports pursuant to C.F.R. § 300.39(b)(2)(C).

Page Three
RE:    William T. ——————
July 7, 2008

## REMEDIES REQUESTED

A.    William K. to be placed at a facility that meets his physical health and safety needs so that an individual assistant is not necessary at all times.

B.    William K. to stay put in his classroom at Page Park School.

C.    Compensatory education for adaptive P.E.

D.    Modification of the school facilities the student attends so that it meets the standards of the Americans with Disabilities Act and his disabilities as well.

Very truly yours,

JOYCE O'NEILL AUSTIN,
JOA/mk

c:    Carol ——————

## Rockford Board of Education Meeting

June 10, 2000

Information:     Page Park/Skyview/Fresh Start Programs

Submitted By:    Colleen Cyrus
                 Assistant Superintendent of Student Support

### A.    BACKGROUND ANALYSIS

In response to continuing concerns and questions about the movement of the Page Park/Skyview/Fresh Start programs, please see the attached documents which will elaborate on each program and each of their numerous related issues.

### B.    EDUCATIONAL IMPACT STATEMENT

Each program is unique and essential to the students of this district and without question have an enormous impact on their educational and life-long success.

### C.    STRATEGIC PLAN COMPATIBILITY STATEMENT

The recommendation is consistent with:
Strategy 1:  Curriculum - *Effectively implement curriculum standards and assessments throughout the district and increase accountability throughout the system for improving student achievement.*
Strategy 2:  Finance – *Create a sound financial plan that will balance the budget and focus our financial resources on educational priorities.*
Strategy 3:  Partnerships – *Expand partnerships with all aspects of our diverse community, including business, education, service agencies, religious organizations and families.*
Strategy 5:  Staffing – *Attract, retain and develop the staff necessary to achieve our strategic objectives.*

### D.    STATUTE, BOARD POLICY OR RULE STATEMENT

The recommendation is consistent with Board Policy 3.10 – General School Administration – Goals and Objectives.

### E.    FISCAL IMPACT STATEMENT

N/A

*— Despite Numerous requests !*



PLAINTIFF'S EXHIBIT 5

**F.    SUPERINTENDENT GOAL**

     N/A

**G.    IMPLEMENTATION AND ASSESSMENT PLAN**

     Implementation will take place at the onset of the 2008-2009 school year.

**ADMINISTRATION'S RECOMMENDATION**

     N/A

*Frequently Asked Questions*
*Movement of Special Needs Program*
*Page Park to Wilson*

**Q: Who Attends this Special Needs Program?**
A: Students whose IEP requires a separate facility have had their services previously delivered at Page Park School, will now have the services delivered in the renovated wing of the school at 520 North Pierpont.

**Q: What academic services will be provided at Wilson?**
A: All appropriate general and special curriculum areas will continue to be addressed. Illinois Learning Standards and IEP goals drive all instructional decisions. A wide range of support services will continue to be available for the student's unique educational needs. These will include but are not limited to:

*(handwritten: current P.E. levels are inadequate & have been reduced over 2½ yrs.)*

- A Library containing books and educational games appropriate for cognitive levels of the special needs population. (The entire library from Page Park will be moved to Wilson)
- Music, Art, and PE: Students will receive specials at the same level as are currently provided at Page Park. PE will be taught in the auxiliary gym, which is available to Wilson students all day every school day.
- Daily Living Skills: All daily living skills taught in the apartment area will continue to be taught at the new location in specially designated areas.
- There will be a designated area established at Wilson to work on vocational education skill sets.

*(handwritten: (see notes entitled "New Page Park Facility"))*

**Q: How will the therapy needs of students be met in the new location?**
A: All required therapy services will continue to be delivered at the new location. These services are driven by each student's IEP and may change from year to year. The administration will adjust the therapy services as students IEPs change. All current age appropriate equipment and services are moving to Wilson. Current and next year services will include Speech, Occupational and Physical Therapies. *(handwritten: → see notes entitled "New Page Park Facility")*

**Q: What nursing services will be available at Wilson?**
A: There will be a full time nurse on the premises of Wilson/Auburn Freshman Campus. *(handwritten: → shared)*

**Q: How will the student's social and recreational needs be met?**
A: The District is paving an additional area for Wilson students, a 1250 meter long nature trail is available, fields are adjacent to Wilson, a park is located across the street, and the auxiliary gym is continually available to Wilson for Cheerleading, Basketball games, sporting events, parties and Prom. A High School size gym will be available on a limited basis to the students at Wilson. *(handwritten: see notes)*

**Q: What is the interaction between Auburn Freshman Campus and Wilson School?**
A: Wilson, while sharing a roof with Auburn Freshman Campus, will be a separate facility. It will have its own principal, secretary, faculty, staff, entrance, parking lot, phone service, network server, classrooms, schedule, and calendar of social, family, and community events.

*(handwritten: This negates the purpose of "least restrictive environment.")*

# Page Park Program aka Fresh Start / Skyview ek

The Page Park Program consists of two separate programs housed under one umbrella. Each program is designed to serve the needs of the students assigned to it. One will continue to serve the needs of student's with disabilities and/or students that require a more long term program. The other will serve at-risk students needing a new direction in their academic career.

## The First Program

The first program, will serve the needs of students with disabilities and may also admit students without disabilities that require a more structured, long term learning environment. The program will consist of a disciplined approach to ensure appropriate services for the exigent needs of each student. It will follow a modified middle/high school schedule that allows for individual needs while encouraging student participation within expected behavioral limits. Students, in this program, will use a Student Success Record to analyze and understand personal actions that detract from their ability to succeed in their home school. Classes taken will be in line with expected graduation requirements, but the limited scope of elective possibilities and non-existent extra-curricular programming detracts from the student's overall educational growth. Consequently, the desired outcome is for each student to attain personal growth within the program to achieve a return to his or her home school and engage in a more encompassing learning environment.

Students in the first program will be divided in groups by grade level. Teachers will be assigned to teach students based on appropriate certification and meeting highly qualified status for the content area. The following chart is an abbreviated example of the first program:

| | Period One | Period 2 | Period 3 | Period 4 | Period 5 |
|---|---|---|---|---|---|
| Teacher 1 - Math | 6th grade | 7th grade | 8th grade | 9th grade | 10th grade |
| Teacher 2 - Science | 10th grade | 6th grade | 7th grade | 8th grade | 9th grade |
| Teacher 3 - SS | 9th grade | 10th grade | 6th grade | 7th grade | 8th grade |
| Teacher 4 – LA/Reading | 8th grade | 9th grade | 10th grade | 6th grade | 7th grade |

## The Second Program

The second program, will serve the needs of at-risk students, envelopes a nurturing and disciplined approach toward a more responsible attitude and successful education. It consists of two strands that provide opportunities for student growth and acceptance of personal decision-making. One strand is a demanding and structured program that

encapsulates the necessary steps for student academic success. It covers nine weeks of a school year and involves multiple layers of student guidance to enhance the probability of future success. The other strand is demanding and structured but could cover eighteen weeks of a school year. The following is a summary of each strand:

First strand:

The first strand, encompassing nine weeks of the school year, will continue to use the Student Success Records to document and analyze student progress. Students will make a count day or not depending on their daily point total. If a student earns a no count day, he/she will repeat the missed day. Their goal is to achieve 30 count days in the quarter and remain under 100 accumulated Page Park discipline violation points. If the student achieves this result, they will be returned to their home school at the end of the quarter. If 100+ Page Park discipline violation points are reached, the student will be moved to the 18-week strand at the end of the nine-week strand. A successful completion (minimum of 30 positive count days and 99 or less Page Park discipline violation points) of this nine week strand will also provide the student with re-entry to this strand should they find themselves in discipline difficulty at their home school later.

Second Strand:

,The second strand, encompassing 18 weeks of the school year, will also use the Student Success Record to document and analyze student progress. It will also maintain the current system of count days, which include drops. Students earn placement in this strand for two distinct reasons: 1) non –successful completion of the first strand and 2) a student who has been returned to the home school and earned enough discipline violation points to return to Page Park and they had been unsuccessful in their first attempt at the first strand. A student's continued disruptive behaviors will be further intervened upon by various guidance and counseling elements that will be available to serve those needs not fully addressed in the shorter strand. To successfully complete this strand, the student must have made a minimum of 30 count days and earned less than 200 accumulated Page Park discipline violation points. There are two positive incentives built into this strand. First, for each count day the student has been able to amass beyond the 30 count day minimum, they will have 5 discipline violation points removed from their home school point total. Second, the student can elect to return to their home school upon achieving the 30 count day minimum if it is achieved before the end of the 18 weeks. Should the student be returned to the home school upon an unsuccessful venture of this strand, it will ensure that they will return to this strand and not be eligible for the nine week strand if the student finds his/herself in discipline difficulty at their home school.

The total days at Page Park for these students could be a maximum of approximately 135 total school days. Students return to their home schools with either a Stamp of Program Completion or Incompletion on their disciplinary point record. If any student reaches 200+ Page Park discipline violation points, they will be recommended for expulsion.

### Program Dynamics

Each of the strands in this program will run simultaneously in three teams. The daily Student Success Record sheet will indicate which strand the student is enrolled. This is designed to continue appropriate grade level teams and provide the best possible curriculum delivery.

Classes taught will include mathematics, English and/or language arts, social science, PE, and Character Building.

The following community agencies have relayed verbal commitments to provide various group and individual services throughout the school year: MELD, Rosecrance, and the Winnebago County Juvenile Probation Department. Groups and individual services could include grief management, anger management, self-esteem/personal health issues, and drug/alcohol awareness and intervention.

A pre-program will continue to be used for those students who persist in their disruptive behavior and earn no-count days during the 18 week strand and as a short term/day intervention for students on the nine-week program. The pre-program will be implemented when their disruptive behaviors are so severe and chronic that another intervention is necessary to provide a safer environment for the remaining students of either the nine week or eighteen week programs. Those students placed in the pre-program will need to earn five (5) consecutive days to return to the 18 week strand and move toward a return to their home school.

Students who continue to be disruptive in the 18 week strand and have earned 200 or more discipline violation points while at Page Park, will be recommended for expulsion. They will be placed in the pre-program if their disruptive behaviors continue to create an unsafe learning environment for themselves or the other students attending Page Park.

Page
Park
Program



1st Program

Nine Weeks
-30+ count days
-less than 100 IP
Return to home
school
- 30 or less count
days
-100 or more IP
Enter 18 week
strand

2nd Program
--1st Strand

recommended for

2nd Program
--2nd Strand

## AFFIDAVIT

I, KIMBERLY K., being first duly sworn on oath, states as follows:

1.  My son, MATTHEW K. is 18 years old, DOB: 10/26/89.

2.  He is eligible for special educational services and special accommodations because of his eligibility. He is severely and profoundly disabled and diagnosis is P.D.D., M.I., Autism and A.D.H.D.

3.  He cannot be educated in regular classes of a regular school even with the uses of supplamentary aides and services because his condition is so severe and profound he would disturb greatly regular students and they would agitate him and cause him severe anxiety and he would not be able to learn. He is claustrophobic and must be outdoors as much as possible using the walking trails at Page Park and/or the playground.

4.  The goals and I.E.P. for my child is to teach him essential life skills so that he would be more independent in an adult facility for the severe and profoundly mentally handicapped.

5.  In order to qualify for a good adult facility, he must be toilet trained, able to communicate in some fashion his needs and to be comfortable with others like himself and adults who will care for him, plus show little aggression towards others.

6.  Page Park School has been an ideal facility to meet his educational needs as demonstrated by his I.E.P.'s, but the District #205 has systematically been eroding the specific educational requirements for him since they made the unilateral decision to move the children into a locked down wing of Wilson Middle School and/or placed others at Auburn, where there are limited facilities to move about and he is restricted to a more restrictive environment.

7.  A restrictive environment where they have no contact with other children nor do they have a therapeutic pool, a therapeutic garden, walking trails, or a therapeutic adult playground. There are no private bathrooms. Children are changed in the classroom. There is no privacy or private showers. My son has frequent accidents and it is highly in appropriate for adult children to have their pants changed in public in their classroom and their private pars wiped down with baby wipes instead of soap and water and/or a shower.

8.  This planned discrimination by District #205 has been occurring since at least 2006-2007 school year and even before that in that my son was to have access to the pool at Page Park this past school year and he was denied.

9.    I object to the move of my child, but District #205 will not listen. As a result I
      have filed a Due Process Request and I am invoking the stay-put provisions that
      allows my child to stay at the same placement as last year. See attached Exhibit
      A.

10.   Since District #205's denial of the special educational services he was to receive
      he has gotten more aggressive and his behavior has deteriorated.

11.   He is to have adaptive physical education, but the elevator does not work in the
      "new" facility and it is a long way to the gym.

12.   Upon information and belief there will be one nurse for all of the regular students
      and for the special medical needs children who will need tube-feeding.

13.   Upon information and belief, this move will not save District #205 any money. It
      will actually cost them money to adapt the new facilities for these children when
      they have had a good program and special facility at Page Park for over 35 years.

14.   Without a therapeutic pool, a therapeutic garden, a therapeutic playground and
      walking trails, the new facility will be more restrictive and harm the educational
      progress of my child.

15.   If District #205 is allowed to close Page Park School for my son, he will be
      irreparably harmed in that he will not be able to have the necessary
      accommodations listed in his I.E.P. and educational regression will occur.

16.   Further Affiant saith not.


SUBSCRIBED AND SWORN to before me this
24th day of June, A.D., 2008.


                              Notary Public

THERESA SCHELSTRAETE
NOTARY PUBLIC, Ottawa County, MI.
My Commission Expires Dec. 13, 2013

June 20, 2008

Illinois State Board of Education          Via Fax:      217-782-0372
Attn: Due Process Coordinator             and U.S. Mail
100 North First Street
Springfield, IL 62777-0001

Rockford School District #205
District Superintendent                    Via Fax:      815-966-3193
Linda Hernandez                            and U.S. Mail
201 S. Madison St.
Rockford, IL 61101

Attorney Steve Katz                        Via Fax:      815-966-3905
201 S. Madison St.                         and U.S. Mail
Rockford, IL 61101

Indian Prairie District #204               Via U.S. Mail
District Superintendent
Stephen Daeschner
Crouse Education Center
780 Shoreline Drive
Aurora, IL 60504

RE:    Due Process Request for
       Matthew ————

Dear Ms. Hernandez:

This letter is to inform you that Kimberly ————, as guardian, is requesting a Due Process
Hearing for her son, Matthew ————, D.O.B. 10/26/89, who is attending Page Park School.
Her address is ————, Naperville, IL 60564. Her telephone number is (630) ————.
Their language is English.

Matthew is severely and profoundly disabled due to P.D.D., M.I., Autism and A.D.H.D.



Page Two
RE:    Matthew ⎯⎯⎯⎯⎯⎯
June 20, 2008

## COMPLAINT AGAINST ROCKFORD SCHOOL DISTRICT #205 and INDIAN PRAIRIE DISTRICT #204

1.)    For 2008-2009 school year, Matthew ⎯⎯⎯⎯⎯⎯ will be transferred from a full time special education self contained school namely Page Park unilaterally with out notice and agreement by his guardian.

2.)    The guardian disagrees that Matthew will be able to receive a free and appropriate public education at a regular middle/high school in a self contained program.

3.)    Educational services that Matthew needs that he has not received since 2006-2007 school year to present because of the District's reduction of all services due to their plans to close the Page Park School and which is a violation of his I.E.P.'s.

   a)    movement in the community with a one-on-one aide;

   b)    therapeutic swimming and hydrotherapy in a pool designed for special needs;

   c)    picture chart PEC program;

   d)    life skills training, particularly with eating/use of kitchen;

   e)    teeth brushing;

   f)    use of outside activities to reduce aggression, namely walking, riding bike, throwing balls.

4.)    As a result of the reduction of services to Matthew and the failure to follow Matthew's I.E.P.'s, his behavior and aggression has increased significantly over the last school year and his medication has had to increase which is a chemical restraint.

5.)    That without the proper structure and programming available at Page Park School or a similarly designed therapeutic school Matthew will continue to regress. He will be in a more restrictive environment in a locked down wing of a regular middle/high school. He needs a school that has:

   a)    a program of outside walking trails, a garden, and outside physical activity available;

   b)    a swimming, hydrotherapy program;

Page Three
RE:   Matthew ===========
June 20, 2008

     c)     a life skill programming in a kitchen-home atmosphere;

     d)     a safe environment far from a busy street.

## REMEDIES REQUESTED

A.     Provide and follow I.E.P. as previously prepared.

B.     Placement in a least restrictive environment namely a school where Matthew will not be locked down.

C.     Retention of the program at Page Park School or a similar self contained school with a therapeutic pool, therapeutic play ground, walking trails, a therapeutic garden and a therapeutic kitchen.

Very truly yours,

JOYCE O'NEILL AUSTIN,
JOA/mk

c:     Kimberly ===========

<u>AFFIDAVIT</u>

I, CHARLOTTE K.,being first duly sworn on oath, states as follows:

1.     My daughter, GILLIAN K. is 18 years old, DOB: 7/08/90.

2.     She is eligible for special educational services and special accommodations because of her eligibility. She is severely mentally impaired and diagnosis is Landau-Kleffner Syndrome (a seizure disorder) with Pervasive Developmental Delays and Sensory Integration Disorder.

3.     She cannot be educated in regular classes of a regular school, even with the use of supplementary aides and services, because her condition is so severe and profound that she would greatly disturb regular students. They would also agitate her, causing her severe anxiety, and she would not be able to learn. She is extremely sensitive to sounds and noises and activity of any kind.

4.     The goals and I.E.P. for my child are to teach her essential life skills so that she would be more independent, making her able to live in an adult facility for the severe and profoundly mentally handicapped, and to teach her to work in a sheltered work shop.

5.     In order to qualify for a good adult facility, she must be toilet trained. She must also be able to communicate her needs in some fashion and to be comfortable with others like herself, as well as with the adults who will care for her. She must also learn to show little aggression towards others.

6.     Page Park School has been an ideal facility to meet her educational needs, as demonstrated by her I.E.P.'s, but the School District #205 has been systematically eroding the specific educational requirements for her since they made the unilateral decision to move the all of the disabled children from Page Park School into a locked-down wing of Wilson Middle School (also know as Auburn Freshman Campus) and/or placed other disabled children at Auburn and Jefferson High Schools, where there are limited facilities to move about. She will be locked in--in a more restrictive environment-- like the children who were previously moved from Page Park School last year.

7.     She will be in a restrictive environment where she will have no contact with other children nor will she have a therapeutic pool, a therapeutic garden, walking trails, or a therapeutic, adaptive, adult playground. There are no private bathrooms. Children are undressed and changed in the classroom. There is no privacy or private shower. See attached observations I prepared on June 23, 2008 regarding the "new" placement.

8.     This planned discrimination by District #205 has been occurring since at least 2006-2007 school-year, and even before that. Children who, upon information and belief, are not disabled, will be attending Page Park School instead of the disabled children for whom the school was designed. See attached Exhibit A.

9.     I objected to the move of my child, but District #205 will not listen. As a result I have filed a Due Process Request and I am invoking the stay-put provisions that allow my child to stay at the same placement as last year. See attached Exhibit B.

10. She specifically had in her I.E.P. (Individual Educational Program) that she was to have the therapy pool, walking path, adaptive playground and the "house" to learn Domestic, Independent Living Skills.

11. She is to have adaptive physical education, but the elevator does not work in the "new" facility and the gym is down 2 flights of stairs. This would make the gym inaccessible to her since her disabilities prevent her from maneuvering down long flights of stairs.

12. My daughter has seizure disorders and other significant medical problems. There will be one nurse for all of the regular students at Wilson, Auburn Freshman Campus, as well as for the special medical needs of the children who will need tube-feeding and/or emergency care. People still die from seizures—especially when immediate medical care is not available. I fear that this practice of a shared nurse could endanger my child as well as the other children in this new facility.

13. Upon information and belief, this move will not save District #205 any money. It will actually cost them money to adapt the new facilities for these children when they have had a good program and special facility at Page Park for over 35 years. It will not give her access to a "mainstream" setting since they have designed it so there is no contact with regular education students.

14. Upon information and belief, without a therapeutic pool, a therapeutic garden, a therapeutic, adaptive playground and walking trails, the new facility will be more restrictive and will harm the educational progress of my child. She will not be receiving a free and *appropriate* education.

15. If District #205 is allowed to close Page Park School for my daughter, she will be irreparably harmed in that she will not be able to have the necessary accommodations listed in her I.E.P. and educational regression will occur.

16. Upon information and belief, unless a TRO is entered, the therapeutic pool that was especially designed for these physically handicapped children will be destroyed within two to three days never to be able to be used again.

17. Further Affiant saith not.

*Charlotte A. Kennon*

SUBSCRIBED AND SWORN to before me this
__24th__ day of June, A.D., 2008.

*Michelle L. Kayser*
Notary Public

OFFICIAL SEAL
MICHELLE L KAYSER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/20/10

# NEW PAGE PARK SCHOOL FACILITY

The following are observations concerning inadequacies with regard to the
new Page Park School facility located at the Auburn Freshman Campus.

Charlotte Bader-Kennou

- **Entrance to Building:**
- **No protection from The Elements for loading and unloading Septran and
  Busses.** When the staff requested that a Pavilion be built for this purpose, the
  school board's response was, "Not Now". Rain and snow and ice will be
  treacherous for children who can barely walk or who are in wheelchairs.

- **Security/Safety:**
  **Locked doors require a Key to open.** Not all staffers have a key. I was
  escorted through the building by a staffer who did not have a key if we were to
  find ourselves locked in a hallway or in the Freshman Campus. If a
  developmentally disabled student gets on the wrong side of a door, he/she will not be
  able to call for help.  **Fire**-The locks are supposed to disengage automatically in
  case of fire. This is not a certainty. And there are many emergency evacuation
  cases that do not involve fire.

- **Bathrooms:**
  **Insufficient and inadequate toileting and bathing facilities.** Most of these
  students wear adult diapers and/or wet or soil themselves and their clothing. They
  are also known to touch inappropriate or unsanitary places—thus spreading
  disease. The old Page Park School has toileting facilities with private, adult-sized
  changing tables in nearly every room—as well as 2-3 sinks in each classroom.
  Students' diapers and clothing must be changed publicly, in the classrooms, in the
  New Facility. The staff has been supplied with liquid hand sanitizer in lieu of
  soap and water. But these are hardly interchangeable items.
  **There is only 1 shower for the entire school.** It is in the boys' bathroom—
  which means that girls will be showered, naked, in the boys' bathroom. This
  shower does not have safety handrails or proper controls for water temperature.
  **There is only 1 handicapped toilet stall in the entire school for boys and one
  handicapped stall for girls.** There are only 3 "regular" stalls in the girls'
  bathroom and 2 "regular" stalls in the boys' bathroom—for the entire student
  population.

- **Physical Education:**
  **No schedule has been made available regarding the availability of the
  auxiliary gym.** These students have the right to expect the same amount of PE
  time as the rest of the student population.

The auxiliary gym is currently inaccessible to these students because the elevator that takes them to the basement-level gym, is broken.

**The Pool:** Before the school district started removing services w/o informing parents, all students received PE 2 days/week. This time was always broken up into *30 minutes of exercise in the pool and 60 minutes of exercise out of the pool. The pool has been denied to the Page Park School students for the past school year—regardless of whether or not it is listed on IEPs. All PE has been denied to the former Page Park students who are currently "mainstreamed".*

**There is no such thing as a PE room.** The "welcome" letter that was sent home with students today (June 23) refers to the Motor Room (physical therapy room) and to the PE Room as separate entities. These rooms are one and the same. There is also reference, in other papers, to the students riding **adapted tricycles.** The only place that they can ride these tricycles is up and down 2 short hallways, because there is not a safe, paved place available outside.

### Rockford Board of Education Meeting

June 10, 2000

Information:        Page Park/Skyview/Fresh Start Programs

Submitted By:       Colleen Cyrus
                    Assistant Superintendent of Student Support

## A.    BACKGROUND ANALYSIS

In response to continuing concerns and questions about the movement of the Page Park/Skyview/Fresh Start programs, please see the attached documents which will elaborate on each program and each of their numerous related issues.

## B.    EDUCATIONAL IMPACT STATEMENT

Each program is unique and essential to the students of this district and without question have an enormous impact on their educational and life-long success.

## C.    STRATEGIC PLAN COMPATIBILITY STATEMENT

The recommendation is consistent with:
Strategy 1:  Curriculum - *Effectively implement curriculum standards and assessments throughout the district and increase accountability throughout the system for improving student achievement.*
Strategy 2:  Finance – *Create a sound financial plan that will balance the budget and focus our financial resources on educational priorities.*
Strategy 3:  Partnerships – *Expand partnerships with all aspects of our diverse community, including business, education, service agencies, religious organizations and families.*
Strategy 5:  Staffing – *Attract, retain and develop the staff necessary to achieve our strategic objectives.*

## D.    STATUTE, BOARD POLICY OR RULE STATEMENT

The recommendation is consistent with Board Policy 3.10 – General School Administration – Goals and Objectives.

## E.    FISCAL IMPACT STATEMENT

N/A

— Despite numerous requests!

PLAINTIFF'S EXHIBIT
A

F.    **SUPERINTENDENT GOAL**

      N/A

G.    **IMPLEMENTATION AND ASSESSMENT PLAN**

      Implementation will take place at the onset of the 2008-2009 school year.

**ADMINISTRATION'S RECOMMENDATION**

      N/A

2

*Frequently Asked Questions*
*Movement of Special Needs Program*
*Page Park to Wilson*

**Q: Who Attends this Special Needs Program?**
A: Students whose IEP requires a separate facility have had their services previously delivered at Page Park School, will now have the services delivered in the renovated wing of the school at 520 North Pierpont.

**Q: What academic services will be provided at Wilson?**
A: All appropriate general and special curriculum areas will continue to be addressed. Illinois Learning Standards and IEP goals drive all instructional decisions. A wide range of support services will continue to be available for the student's unique educational needs. These will include but are not limited to:

*current*
*P.E. levels*
*are inadequate*
*& have been*
*reduced over*
*2½ yrs.*
*(see notes entitled "New Page Park Facility")*

+ A Library containing books and educational games appropriate for cognitive levels of the special needs population. (The entire library from Page Park will be moved to Wilson)
+ Music, Art, and PE: Students will receive specials at the same level as are currently provided at Page Park. PE will be taught in the auxiliary gym, which is available to Wilson students all day every school day.
+ Daily Living Skills: All daily living skills taught in the apartment area will continue to be taught at the new location in specially designated areas.
+ There will be a designated area established at Wilson to work on vocational education skill sets.

**Q: How will the therapy needs of students be met in the new location?**
A: All required therapy services will continue to be delivered at the new location. These services are driven by each student's IEP and may change from year to year. The administration will adjust the therapy services as students IEPs change. All current age appropriate equipment and services are moving to Wilson. Current and next year services will include Speech, Occupational and Physical Therapies. → *see notes entitled "New Page Park Facility"*

**Q: What nursing services will be available at Wilson?**
A: There will be a full time nurse on the premises of Wilson/Auburn Freshman Campus. → *shared*

**Q: How will the student's social and recreational needs be met?**
A: The District is paving an additional area for Wilson students, a 1260 meter long nature trail is available, fields are adjacent to Wilson, a park is located across the street, and the auxiliary gym is continually available to Wilson for Cheerleading, Basketball games, sporting events, parties and Prom. A High School size gym will be available on a limited basis to the students at Wilson. *↰ see notes*

**Q: What is the interaction between Auburn Freshman Campus and Wilson School?**
A: Wilson, while sharing a roof with Auburn Freshman Campus, will be a separate facility. It will have its own principal, secretary, faculty, staff, entrance, parking lot, phone service, network server, classrooms, schedule, and calendar of social, family, and community events.
*↳ This negates the purpose of "least restrictive environment."*

# Page Park Program aka FreshStart / Skyview ck

The Page Park Program consists of two separate programs housed under one umbrella. Each program is designed to serve the needs of the students assigned to it. One will continue to serve the needs of student's with disabilities and/or students that require a more long term program. The other will serve at-risk students needing a new direction in their academic career.

## The First Program

The first program, will serve the needs of students with disabilities and may also admit students without disabilities that require a more structured, long term learning environment. The program will consist of a disciplined approach to ensure appropriate services for the exigent needs of each student. It will follow a modified middle/high school schedule that allows for individual needs while encouraging student participation within expected behavioral limits. Students, in this program, will use a Student Success Record to analyze and understand personal actions that detract from their ability to succeed in their home school. Classes taken will be in line with expected graduation requirements, but the limited scope of elective possibilities and non-existent extra-curricular programming detracts from the student's overall educational growth. Consequently, the desired outcome is for each student to attain personal growth within the program to achieve a return to his or her home school and engage in a more encompassing learning environment.

Students in the first program will be divided in groups by grade level. Teachers will be assigned to teach students based on appropriate certification and meeting highly qualified status for the content area. The following chart is an abbreviated example of the first program:

|  | Period One | Period 2 | Period 3 | Period 4 | Period 5 |
|---|---|---|---|---|---|
| Teacher 1 - Math | 6th grade | 7th grade | 8th grade | 9th grade | 10th grade |
| Teacher 2 - Science | 10th grade | 6th grade | 7th grade | 8th grade | 9th grade |
| Teacher 3 - SS | 9th grade | 10th grade | 6th grade | 7th grade | 8th grade |
| Teacher 4 – LA/Reading | 8th grade | 9th grade | 10th grade | 6th grade | 7th grade |

## The Second Program

The second program, will serve the needs of at-risk students, envelopes a nurturing and disciplined approach toward a more responsible attitude and successful education. It consists of two strands that provide opportunities for student growth and acceptance of personal decision-making. One strand is a demanding and structured program that

encapsulates the necessary steps for student academic success. It covers nine weeks of a school year and involves multiple layers of student guidance to enhance the probability of future success. The other strand is demanding and structured but could cover eighteen weeks of a school year. The following is a summary of each strand.

First strand:

The first strand, encompassing nine weeks of the school year, will continue to use the Student Success Records to document and analyze student progress. Students will make a count day or not depending on their daily point total. If a student earns a no count day, he/she will repeat the missed day. Their goal is to achieve 30 count days in the quarter and remain under 100 accumulated Page Park discipline violation points. If the student achieves this result, they will be returned to their home school at the end of the quarter. If 100+ Page Park discipline violation points are reached, the student will be moved to the 18-week strand at the end of the nine-week strand. A successful completion (minimum of 30 positive count days and 99 or less Page Park discipline violation points) of this nine week strand will also provide the student with re-entry to this strand should they find themselves in discipline difficulty at their home school later.

Second Strand:

The second strand, encompassing 18 weeks of the school year, will also use the Student Success Record to document and analyze student progress. It will also maintain the current system of count days, which include drops. Students earn placement in this strand for two distinct reasons: 1) non -successful completion of the first strand and 2) a student who has been returned to the home school and earned enough discipline violation points to return to Page Park and they had been unsuccessful in their first attempt at the first strand. A student's continued disruptive behaviors will be further intervened upon by various guidance and counseling elements that will be available to serve those needs not fully addressed in the shorter strand. To successfully complete this strand, the student must have made a minimum of 30 count days and earned less than 200 accumulated Page Park discipline violation points. There are two positive incentives built into this strand. First, for each count day the student has been able to amass beyond the 30 count day minimum, they will have 5 discipline violation points removed from their home school point total. Second, the student can elect to return to their home school upon achieving the 30 count day minimum if it is achieved before the end of the 18 weeks. Should the student be returned to the home school upon an unsuccessful venture of this strand, it will ensure that they will return to this strand and not be eligible for the nine week strand if the student finds his/herself in discipline difficulty at their home school.

The total days at Page Park for these students could be a maximum of approximately 135 total school days. Students return to their home schools with either a Stamp of Program Completion or Incompletion on their disciplinary point record. If any student reaches 200+ Page Park discipline violation points, they will be recommended for expulsion.

### Program Dynamics

Each of the strands in this program will run simultaneously in three teams. The daily Student Success Record sheet will indicate which strand the student is enrolled. This is designed to continue appropriate grade level teams and provide the best possible curriculum delivery.

Classes taught will include mathematics, English and/or language arts, social science, PE, and Character Building.

The following community agencies have relayed verbal commitments to provide various group and individual services throughout the school year: MELD, Rosecrance, and the Winnebago County Juvenile Probation Department. Groups and individual services could include grief management, anger management, self-esteem/personal health issues, and drug/alcohol awareness and intervention.

A pre-program will continue to be used for those students who persist in their disruptive behavior and earn no-count days during the 18 week strand and as a short term/day intervention for students on the nine-week program. The pre-program will be implemented when their disruptive behaviors are so severe and chronic that another intervention is necessary to provide a safer environment for the remaining students of either the nine week or eighteen week programs. Those students placed in the pre-program will need to earn five (5) consecutive days to return to the 18 week strand and move toward a return to their home school.

Students who continue to be disruptive in the 18 week strand and have earned 200 or more discipline violation points while at Page Park, will be recommended for expulsion. They will be placed in the pre-program if their disruptive behaviors continue to create an unsafe learning environment for themselves or the other students attending Page Park.



Page
Park
Program

June 24, 2008

Illinois State Board of Education          Via Fax:     217-782-0372
Attn: Due Process Coordinator             and U.S. Mail
100 North First Street
Springfield, IL 62777-0001

Rockford School District #205
District Superintendent
Linda Hernandez                           Via Fax:     815-966-3193
201 S. Madison St.                        and U.S. Mail
Rockford, IL 61101

Attorney Steve Katz                       Via Fax:     815-966-3905
201 S. Madison St.                        and U.S. Mail
Rockford, IL 61101

RE:    Due Process Request for
       Gillian ‾‾‾‾‾‾‾‾‾‾

Dear Ms. Hernandez:

This letter is to inform you that Charlotte ‾‾‾‾‾‾‾ is requesting a Due Process Hearing
for her daughter, Gillian ‾‾‾‾‾‾‾, D.O.B. 7/08/90, who is attending Page Park
School. Her address is ‾‾‾‾‾‾‾‾‾‾, Rockford, Illinois 61102 . Her telephone
number is (815)‾‾‾‾‾‾‾. Their language is English.

Gillian ‾‾‾‾‾‾‾‾ is severely and profoundly disabled due to Landau-Kleffner
Syndrome (a seizure disorder), with profound Pervasive developmental Delays, and
Sensory Integration Disorders.

## COMPLAINT AGAINST ROCKFORD SCHOOL DISTRICT #205

1.)    For 2008-2009 school year, Gillian ‾‾‾‾‾‾‾ will be transferred from a
       full-time, special education, self-contained school namely Page Park, unilaterally
       with out notice and agreement by her parent. The parent was not allowed to
       participate at all in this decision and in fact only received a generic notice.



PLAINTIFF'S
EXHIBIT
B

Page Two
RE:    Gillian _____
June 24, 2008

2.)    The parent disagrees that Gillian will be able to receive a free and appropriate
public education at a regular middle/high school in a self contained program.

3.)    Educational services that Gillian needs that she has not received since 2006-2007
school year to present because of the District's reduction of all services due to
their plans to close the Page Park School and which is a violation of her I.E.P.'s.

   a)    adaptive physical therapy restricted to 60 minutes a month-this is of no use
what so ever. Regular education children must have P.E. at least 2 to 3
times a week;

   b)    therapeutic swimming and hydrotherapy in a pool designed for special
needs;

   c)    life skills training, particularly with eating/use of kitchen;

   d)    . teeth brushing; and

   e).    use of outside activities to reduce aggression, and to reduce muscle
atrophy, namely walking, riding adaptive bike, throwing balls.

4.)    All of the above were a part of Gillian's I.E.P.'s but were gradually removed by
District #205 within the last two school years, without the parents agreement or
knowledge.

5.)    That without the proper structure and programming available at Page Park School
or a similarly designed therapeutic school Gillian will continue to regress and/or
not make the progress she is able to do. She will be in a more restrictive
environment in a locked down wing of a regular middle/high school. She needs a
school that has:

   a)    a program of outside walking trails, an adaptive, therapeutic garden, and
outside physical activity available;

   b)    a swimming, hydrotherapy program;

   c)    a life-skills program in a kitchen-home atmosphere; and

   d)    a safe environment far from a busy street in that she has a tendency to run
away.

Page Three
RE:    Gillian ——————
June 24, 2008

**REMEDIES REQUESTED**

A.    Provide and follow I.E.P. as previously prepared for the 2005-2006 school year.

B.    Placement in a least restrictive environment namely a school where Gillian will
       not be locked down in an unsafe situation.

C.    Stay-put for Gillian in the program at Page Park School or a similar self contained
       school with a therapeutic pool, therapeutic play ground, walking trails, a
       therapeutic garden, a therapeutic kitchen, appropriate bathroom facilities and a
       full time nurse because of her life threatening seizures.

Very truly yours,

JOYCE O'NEILL AUSTIN,
JOA/mk

c:    Charlotte ——————