IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| **CHARLOTTE K.**, as parent and next friend of **GILLIAN K.**, a minor, and **KIMBERLY K.**, as parent and next friend of **MATTHEW K.**, a minor,<br>        Plaintiffs,<br><br>v.<br><br>**ROCKFORD BOARD OF EDUCATION DISTRICT #205**,<br>        Defendant. | Case No.: 08-C-50115 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

NOW COMES the Defendant, THE BOARD OF EDUCATION OF THE ROCKFORD PUBLIC SCHOOLS, DISTRICT NO. 205 ("District"), by and through one of its attorneys, THOMAS J. LESTER of HINSHAW & CULBERTSON LLP, hereby moving to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### INTRODUCTION

GILLIAN K., WILLIAM K.[1] and MATTHEW K. are high school students with severe and profound disabilities. The students have been enrolled in the Rockford Public Schools, District #205 ("District"). The most recent agreed upon Individualized Education Plans ("IEP") which have been implemented for the students indicate that they are to receive special education and related services such as occupational and physical therapy, and adaptive physical education. (Dkt. 12, Plaintiffs' Amended Complaint, hereinafter referred to as "Comp." ¶¶4-6). Prior to the beginning of the 2008 summer session, the students were receiving special education and related services at the District's Page Park facility located at 5949 Safford Road, Rockford, IL 61101. (Comp. ¶¶11-12). At the end of the 2007/2008 school year, the special education program

---

[1] Plaintiffs have filed a motion to add Carol K. and William K. as Plaintiffs to this suit – however, this motion has not been properly noticed before the Court. Notwithstanding, inasmuch as the Amended Complaint includes allegations related to William K., the District addresses these allegations and moves to dismiss the Amended Complaint for the reasons set forth herein.

previously housed at Page Park School was relocated to a different District facility, namely, Wilson School, 520 N. Pierpont Avenue, IL 61101 (hereinafter referred to as "Aspire"). (Comp. Ex. #1, Dkt. 12-2 p. 23 of 61 & Ex. #5, Dkt. 12-2 p. 38 of 61). Although the District is making additional structural improvements, the relocation of Aspire was effectively completed; and, on June 23, 2008, Aspire began providing services to students who qualify for extended school year services ("ESY"). (Comp. Ex. #1, Dkt. 12-2 p. 24 of 61).

Aspire – like the special education program at Page Park – is a separate facility within the statutorily mandated continuum of placement options for eligible students. Aspire has its own principal, secretary, staff, entrances, parking lot, phone service, network server, classrooms, schedule, and calendar of social, family, and community events. (Comp. Ex. #5, Dkt. 12-2 p. 38 of 61). All sensory and vocational equipment and assistive technology and equipment previously located at Page Park have been moved to Aspire. (Comp. Ex. #5, Dkt. 12-2 p. 38 of 61). All programs and services, including ESY, provided to the students who were previously assigned to Page Park are now being provided to the students at Aspire. (Comp. Ex. #5, Dkt. 12-2 p. 38 of 61). Further, Aspire has replicated the life skills apartment previously located at Page Park such that all daily living skills will now be taught in a specially designated area of Aspire. (Comp. Ex. #5, Dkt. 12-2 p. 38 of 61). Inasmuch as all of the essential services and programs which were previously located at Page Park have been relocated to the new Aspire facility and/or are available at the new Aspire facility, all of the services set forth in the IEPs of GILLIAN K., MATTHEW K., and WILLIAM K. can and are being provided at Aspire.

Plaintiffs nevertheless seek an injunction to prevent the District from completing the remaining structural alterations to the Page Park facility[2] with the intent of later seeking an order requiring the District to return the students to the Page Park facility. Plaintiffs allege that the Aspire facility is inadequate in that it does not have a canopy at the entrance, playground or outside activities, bathrooms in each classroom, "handicapped" showers, cafeteria, or a therapeutic pool, and there is no or poor access to gymnasium. (Comp. ¶59). However, the articulated reason that the Plaintiffs seek extraordinary relief is that the students will allegedly suffer irreparable harm if they do not have access to a swimming pool, playground, and bathrooms in each and every classroom. (Comp. ¶67). None of these amenities are identified in

---

[2] The alterations at Page Park are 75% complete.

2

the Plaintiff students' IEPs as necessary to ensure the students receive a free and appropriate public education ("FAPE") and/or make progress toward their respective educational goals. (Comp. ¶64).

Plaintiffs' suit is brought in the context of the Individuals with Disabilities Education Improvement Act ("the IDEA") of 2004, 20 U.S.C. § 1400 *et seq.* Although the Complaint is organized into separately labeled sections, the only prayer for relief is located at the end of the Complaint, such that it appears that Plaintiffs have filed a single-count Complaint against the District in which they invoke the IDEA as well as the Americans with Disabilities Act of 1990 ("ADA"), §2 *et seq.*; 42 U.S.C. §12101 *et seq.*, and the Rehabilitation Act of 1973, §501 *et seq.*, 29 U.S.C. §791 *et seq.*; and 42 U.S.C. §1983.

## ARGUMENT

The District moves to dismiss the instant lawsuit inasmuch as Plaintiffs' Amended Complaint is defective. It is well-settled that a complaint will be dismissed if – as in this case – it appears beyond a doubt that the Plaintiffs can prove no set of facts in support of their claims entitling them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003). The Court is not obliged to accept, as true, legal conclusions. *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 614 (7th Cir. 2001). Nor is the Court bound by Plaintiffs' legal characterization of the facts. *See, e.g., Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992). Further, as in this case, where Plaintiffs plead particulars which demonstrate that Plaintiffs do not have a claim, then Plaintiffs have pleaded themselves out of court. *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971 (7th Cir. 2004) (plaintiff pleaded himself out of court by alleging facts inconsistent with legal conclusion).

I. **Plaintiffs have pleaded particular facts which demonstrate that Plaintiffs do not have a claim upon which relief can be granted.**

Plaintiffs' Amended Complaint should be dismissed for failure to exhaust administrative remedies and because the District has not effectuated a change in the Plaintiff students' placements. The Amended Complaint of Plaintiffs KIMBERLY K. and MATTHEW K. should be dismissed for the additional reason that the District is not obligated by law to provide MATTHEW K. with any special education and related services inasmuch as he does not reside within the District's boundaries.

70567549v2 890325

### A. *Plaintiffs have failed to exhaust their administrative remedies.*

In the present case, Plaintiffs are seeking relief under the IDEA for alleged violations of the Act. Specifically, the Plaintiffs are asking this Court to prevent the District from removing the playground equipment and permanently closing the swimming pool at the Page Park facility.

According to the Seventh Circuit, the IDEA's exhaustion requirement is triggered when "theory behind the grievance" "deals with acts that have both an educational source and an adverse educational consequence."[3] *Charlie F. v. Board of Educ. of Skokie Sch. Dist. 68,* 98 F.3d 989, 992 (7th Cir. 1996); see also *Bayer v. Duneland Sch. Corp.*, 2006 WL 292 7597, *2 (N.D. Ind. 2006). If there is an adverse educational consequence, the court examines whether the complaint could be remedied by a change in the student's IEP. *McCormick v. Waukegan Sch. Dist. Number 60,* 374 F. 3d 564, 569 (7th Cir. 2004). The IEP, which sets forth a student's educational level, performance, goals and requisite services/amenities, is the governing document for all educational decisions concerning the student. *Board of Educ. of Comm. High Sch. Dist. #218, Cook Cty., Illinois v. Illinois State Board of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996) citing *Rodiriecus L. and Betty H. v. Waukegan Sch. Dist. #60*, 90 F.3d 249, 252 (7th Cir. 1996).

Under the foregoing principles, the exhaustion requirement clearly applies to Plaintiffs' claims. Simply, whether a FAPE requires the use of a therapeutic pool (or the other amenities at issue) is (1) an educational issue, (2) which requires specialized expertise, and (3) which could be remedied by a change in the Plaintiff students' IEPs.[4] Plaintiffs raise a host of allegations regarding the District's alleged failure to adequately assess or evaluate the Plaintiff students' needs and/or provide sufficient services. However, the Plaintiffs do not allege that they ever

---

[3] The IDEA's exhaustion requirement serves a number of policy objectives: it allows deference to agency expertise in resolving educational matters; it gives the agency a first opportunity to correct errors; it presents courts with a more fully developed record; and it prevents parties from deliberately disregarding the statute's comprehensive procedures and remedies. See, e.g., *Charlie F.*, 98 F.3d at 992-93; *Bills v. Hommer Cons. Sch. Dist. No. 33-C*, 959 F. Supp. 507, 511-13 (N.D. Ill. 1997). As the Seventh Circuit explained, "educational professionals are supposed to have at least first crack at formulating a plan to overcome the consequences of educational shortfalls." *Charlie F.*, 98 F.3d at 992.

[4] Plaintiffs allege that there are certain children at Page Park (but not Plaintiffs' children) whose IEPs required a pool in the 2007-2008 school year. (Comp ¶¶4-6, 56). This, of course, is not relevant because that allegation does not involve any of the Plaintiffs.

4

requested the District to convene an IEP meeting to discuss these concerns or that the District failed and refused to convene an IEP meeting to review these issues. Plaintiffs also do not allege that the requested amenities are necessary for the Plaintiff students to receive a FAPE or that it would be futile to raise such arguments before a state-appointed hearing officer. In fact, they have done just that in their requests for due process hearings. Accordingly, they have failed to exhaust their remedies available in the IEP process. *Bell v. Anderson Comm. Schs.*, 2007 WL 2265067, *8 (S.D. Ind. 2007) (denying relief under IDEA where the Plaintiffs had not gone through the IEP process with respect to the educational needs which they claim were not being addressed).

Plaintiffs also have failed to exhaust their administrative remedies because they filed the instant lawsuit before their due process hearings could proceed. On or about June 24, 2008, the Plaintiffs filed separate administrative due process complaints against the District. (Comp. ¶24; Ex. ##2-4, Dkt. 12-2, pp. 27-35; Ex. A, Dkt. 12-2, pp. 45-47; Ex. B, Dkt. 1202, pp. 59-61). In their administrative due process complaints, Plaintiffs seek an order which requires the District to place Plaintiffs at Page Park or at a facility equivalent to the Page Park facility. *Id.* Yet, they filed their federal court lawsuit on June 24, 2008, before these hearings could be held seeking similar relief.

As in this case, where a plaintiff requests a due process administrative hearing, but then files an action in federal court before the hearing occurs, the case is properly dismissed for failure to exhaust administrative remedies. *J.C. ex rel. Cooper v. North Harrison Cty. Comm. Sch. Corp.*, 2005 WL 280340, *2 (S.D. Ind. 2005) (granting school district's motion to dismiss where plaintiff filed an administrative due process complaint under the IDEA less than a week before filing a federal court complaint and before the due process hearing occurred).

### B.  *Plaintiffs are not excepted from exhausting their administrative remedies.*

Plaintiffs' claims do not satisfy any of the three exceptions to the exhaustion requirement. The three exceptions are when the administrative remedies are futile, inadequate, or when plaintiffs allege "structural or systemic failure and seek systemwide reforms." *Association for Comm. Living in Colorado v. Romer*, 992 F.2d 1040, 1043 (10th Cir.1993). To fall into the third exception, the District must have adopted a policy of general applicability contrary to law which "thereby renders agency expertise and the factual development of an administrative record less

70567549v2 890325

important." *Ass'n for Comm. Living*, 992 F.2d at 1044. In this case, administrative relief would not have been futile or inadequate.[5]

Citing to *Honig v. Doe*, 484 U.S. 305 (1988), Plaintiffs acknowledge that they are required to exhaust their administrative remedies, but nevertheless allege that the administrative process would be "futile or inadequate" inasmuch as the District has moved the students to a new facility and plans to "destroy millions of dollars of therapeutic equipment" (i.e., the swimming pool and playground equipment) which is located at Page Park School. (Comp. ¶¶54-55). This argument is unavailing inasmuch as the Plaintiff students' IEPs did not include any reference to the swimming pool and there is no allegation that the "therapeutic equipment" which Plaintiffs allege will be destroyed is otherwise included in the Plaintiff students' IEPs.

Even though it is undisputed that the Plaintiff students' IEPs did not include any reference to the swimming pool, nature trail, garden, or playground, and did not specify that Plaintiffs were to be placed at Page Park, the Plaintiffs nevertheless ask this Court to make a determination without the benefit of an administrative record that these amenities are essential for the Plaintiff students to receive a FAPE. However, this is the issue that is currently before an administrative hearing officer. That is, as indicated in the Plaintiffs' administrative complaints, the Plaintiffs are asking the hearing officer to review whether the Plaintiff students' disabilities required specific services/amenities and, if so, whether such services could be provided at Page Park, Aspire, or another location.

In the effort to avoid the results of this failure to exhaust, Plaintiffs also allege that the District has been "systematically depriving" Page Park students by: (1) removing references to the swimming pool, walking paths, playground, and garden from students' IEPs and otherwise decreasing special education programming and curriculum of the students at the Page Park special education facility; (2) providing the written IEP document to the parent "days after" the

---

[5] In determining whether administrative remedies would be futile, the court must look to the "theory behind the grievance." *McCormick*, 374 F.3d at 568-69. "[I]f the Plaintiff has alleged injuries that cannot 'be redressed to any degree by the IDEA's administrative procedures and remedies,' then it would be futile to exhaust, and the disabled individuals can bring their disputes directly to court." *Id.*, quoting *Padilla v. School District No. 1*, 233 F.3d 1268, 1274-75 (10th Cir. 2000). In the *McCormick* case, for example, exhaustion of remedies was held to be futile because the nature of the injury was a permanent physical injury which was not educational in nature and which accordingly was found to not be subject to the IDEA's exhaustion requirement.

IEP meeting; (3) implementing a computerized IEP program which allows users to select IEP services/goals from a check list and which requires any additional services/goals to typed or handwritten on the form; (4) over the course of three years, gradually moving students from Page Park to other locations and "mainstreaming" these unidentified students, i.e., placing the students in regular classes alongside their non-disabled peers with appropriate aids and supports. (Comp. ¶¶40-46, 56-58). In addition, Plaintiffs allege that the facility to which the Plaintiff students have been moved is "inadequate" in that (1) it does not have a canopy to protect the arriving students during inclement weather, a playground or outside activities, bathrooms in each classroom, a cafeteria, or a therapeutic pool; (2) there is no or poor access to a gymnasium; and, (3) there is a dead bolt on the exit door. (Comp. ¶58).

None of the allegations implicate a systemic violation of the IDEA's mandates. Nor do Plaintiffs identify any district-wide policy of discrimination against disabled students. Indeed, there is nothing in the IDEA that requires school districts to *place* students at locations with swimming pools, gardens, playgrounds, or walking trails. While the IDEA requires school districts to provide a FAPE, there is nothing in the IDEA that prohibits school districts from decreasing or changing services to students with disabilities commensurate with their identified needs. The IDEA does not require school districts to provide a copy of the IEP to the parent at the time that the IEP is reviewed or modified.[6] The IDEA also does not prohibit the use of computer programs which allows users to select goals/services from check lists.

In addition, not only does the IDEA not prohibit "mainstreaming," it expresses a strong preference for educating children with disabilities in regular classes alongside their non-disabled peers with appropriate aids and supports. 20 U.S.C. §1412(a)(5). This principle, known as least restrictive environment, requires each public agency to ensure that, to the maximum extent appropriate, children with disabilities, including children in public or private institutions or other

---

[6] In Illinois, when an IEP has been developed or revised, a notice must be provided immediately to the parents, and implementation of the IEP must occur no later than 10 days after the provision of this notice. 23 Ill. Admin. Code 226.200(a). The purpose of notice provisions such as this is to ensure the parent understands the content and terms of the IEP to be implemented. In this case, the Plaintiffs admit that they attended the IEP meetings as demonstrated by their signatures and that they received copies of the IEPs within "days:" of the IEP meetings. (Comp. ¶44). To the extent the Plaintiffs did not believe the typed document accurately reflected the consensus of the IEP team or to the extent the Plaintiffs otherwise disagreed with the IEP, they could have and should have notified the District to request that the District correct the errors, reconvene the IEP team and/or file for due process.

7

care facilities, are educated with children who are not disabled. Special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs *only* if the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. 20 U.S.C. §1412(a)(5); 34 CFR §300.114(a)(2). School districts are therefore required to have available a continuum of alternative placements, ranging from services in regular classes to separate classes, separate schools and even residential programs. 34 C.F.R. §300.115. It is incongruent that Plaintiffs' primary allegation involving systemic violations is that the District is complying with the law by placing students in the least restrictive environment.

Plaintiffs have not cited any statute, regulation, or case law in support their claim that the above allegations were violative of the IDEA. Plaintiffs nevertheless claim that they are not required to exhaust their administrative remedies under the IDEA because such action would be futile. In support of their request Plaintiffs cite to *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 113 (2d Cir.2004). Unlike the instant case, the plaintiffs in *Attica*, alleged that there was a total failure on the part of the school district to prepare and implement IEPs, to provide the parents with student progress reports, as well as the statutorily mandated notifications of meetings and procedural safeguards, and to perform timely evaluations and reevaluations of disabled students. *Id.* In *Attica*, then, there was a total failure to comply with the ***procedural*** mandates of the IDEA, such that the students did not receive a FAPE. In determining whether the *Attica* plaintiffs were required to exhaust administrative remedies, the court reviewed several cases in which plaintiffs were excused from the exhaustion of administrative remedies under the systemic violation exception. Each case, however, involved allegations of systemic violations of the IDEA or structural concerns with the State or school district educational system. This case involves neither.

The factual allegations in this case are solely directed at the District's decision to move the Plaintiff students from one separate special education facility to another and the particularized concerns about the services contained in the Plaintiff students' IEPs, not because of some systemic or structural concern with the education of handicapped children in the State or the District. In fact, Plaintiffs do not seek to remedy any alleged systemic concern. Rather, the requested relief is specific to the Plaintiffs; namely, Plaintiffs seek an order returning the Plaintiff students to the Page Park facility. Thus, although Plaintiffs make the conclusory

allegation that "systemic" violations have occurred, the facts alleged in the Amended Complaint are inconsistent with Plaintiffs' legal conclusion.

The IDEA specifically leaves the initial determinations of such claims of wrong-doing to administrative decision-makers. 20 U.S.C. §§1415(b)-(i). The issue as to whether, given the Plaintiff students' disabilities, their FAPE requires additional services or amenities or requires access to Page Park's therapeutic pool, therapeutic playground, etc., is educational in nature and falls squarely within the purview of the IDEA, its procedures, and remedies. If Plaintiffs wish to challenge the Plaintiff students' educational program and placement, they may do so by requesting an administrative due process hearing. If the Plaintiffs are dissatisfied with the administrative ruling, then they may seek relief from the federal district court. 20 U.S.C. §1415(i)(2). Accordingly, Plaintiffs cannot invoke any exception to the exhaustion doctrine.

Therefore, the Court should dismiss Plaintiffs' complaint and require Plaintiffs to exhaust their administrative remedies. To hold otherwise would be contrary to the explicit language of the statute and well-settled case law and would undermine the purposes of the exhaustion requirement.

### C. *Plaintiffs are required to exhaust their administrative remedies prior to bringing suit under the ADA, Section 504 of the Rehabilitation Act, or Section 1983.*

In *Charlie F. v. Board of Educ. of Skokie Sch. Dist. 68*, the Seventh Circuit ruled that when a party seeks in a claim under some other federal statute, including §1983, relief for a state of affairs that is actionable under the IDEA, he must exhaust administrative remedies, consistent with the IDEA's requirements. 98 F.3d 989, 992-93 (7th Cir.1996). "[P]arents [cannot] opt out of the IDEA by proclaiming that it does not offer them anything they value" or by claiming only damages. *Id.* at 993. If "the genesis and the manifestations of the problem are educational" and of the type covered by the IDEA, then the claim amounts to a claim for relief available under the IDEA. *Id.*

As discussed above, the genesis and manifestations of the problem in this case are educational. Indeed, the allegations set forth in the federal complaint are identical to those set forth in the administrative due process complaints. Therefore, Plaintiffs' Amended Complaint should be dismissed.

### D. *The District has not effectuated a change in Plaintiff students' educational placement.*

Plaintiffs are unable to show a violation of stay-put. Section 1415(j) of the IDEA provides that, unless agreed otherwise, students are to remain in their "then current educational program" pending the resolution of the special education disputes with their schools. 20 U.S.C. §1415(j). This is commonly referred to as the "stay-put" placement. The purpose of stay-put is to maintain the status quo pending resolution of the due process hearing. *Board of Educ. of Oak Park and River Forest High Sch. Dist. 200 v. Illinois State Bd. of Educ.*, 79 F.3d 654, 657 (7th Cir 1996).[7]

Courts and hearing officers have consistently determined that the "then current educational placement" for purposes of stay-put is the IEP which has been implemented at the time the due process is received. *See, e.g., Rodiriecus v. Waukegan Sch. Dist. No. 60*, 889 F.Supp. 1045, 1049 (N.D. Ill. 1995), *rev'd on other grounds*, 90 F.3d 249 (7th Cir. 1996) ("If an IEP has been implemented, then that program's placement will be the one subject to the stay put provision."); *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 624-26 (6th Cir. 1990); *Norman v. St. Anne Cmty. H.S. Dist. No. 302*, 2004 WL 3246973 at *3 (C.D. Ill. August 13, 2004); *Hinsdale Comm. Consolidated Sch. Dist. 181*, 103 LRP 14496 (Hearing Officer Smaron, 2002) (adopting the standard that the stay put placement is the IEP placement that was implemented); *Will Cty. Sch. Dist. No. 92*, 35 IDELR 231 (Hearing Officer Cook, 2001) ("Once the IEP is actually implemented, then the IEPs placement becomes the placement for stay put purposes.").

In this case, the current IEPs of the Plaintiff students do not require the special education and related services to be provided at the Page Park facility. Nor do the IEPs require that the District provide the students with a swimming pool, garden, playground, or nature trail. (Comp. ¶64). The District is providing the requisite services as set forth in the Plaintiff students' IEPs. Plaintiffs make no allegation to the contrary.

---

[7] The implementation of stay-put is an "inexact science" that depends on the context and facts of each case. *Board of Educ. of Comm. High School Dist. 218 v. Illinois State Bd. of Educ.*, 103 F.3d 545, 548-49 (7th Cir. 1996). Typically, "then-current educational placement" for disabled students refers to the student's general educational program. *Id.* at 548. Further, "then-current educational placement" has been interpreted in the Seventh Circuit to mean "something more than the actual school attended by the child and something less than the child's ultimate educational goals." *Id.* at 549. In arriving at this definition, the Seventh Circuit relied upon the decision issued by the Second Circuit in *Concerned Parents and Citizens v. New York Board of Educ.*, 629 F.2d 751 (2d Cir. 1980).

The fact that the amenities at issue are not contained in the Plaintiffs' IEPs means that stay put relief is not even contemplated in this situation. *J.C. ex rel. Cooper*, 2005 WL 280340, *2 (stay put relief was not available where Plaintiffs' Complaint sought a new educational program that was not part of their IEP). "The IEP, which sets forth the child's educational level, performance, and goals, is the governing document for all educational decisions concerning the child." *Board of Educ. of Comm. High Sch. Dist. #218, Cook Cty., Illinois v. Illinois State Board of Educ.*, 103 F.3d 545, 546 (7th Cir. 1996), citing *Rodiriecus L. and Betty H. v. Waukegan Sch. Dist. #60*, 90 F.3d 249, 252 (7th Cir. 1996). Accordingly, Plaintiffs have no right to seek stay put relief in the district court because the amenities on which their "change in educational placement" complaint is based were never part of their agreed upon educational program as reflected in the IEP.

Similar to the instant case, in *Concerned Parents and Citizens v. New York Board of Educ.*, 629 F.2d 751 (2d Cir.1980), the school district had transferred special education students from one building, in which the special education students comprised a majority and received an "extremely innovative educational program," to other buildings in the district, in which they were then a minority. Nevertheless, the Second Circuit held that the action of the school district did not constitute a change in "educational placement" which would trigger due process duties, even though the classes in the new schools varied in some respects from the unusual program available at the former school. *Id.* at 756. The Court construed the term "educational placement" to refer "only to the general educational program in which the disabled child is placed and not to all the various adjustments in that program that the educational agency, in the traditional exercise of its discretion, may determine to be necessary." *Id.* In this case, unlike the situation in *Concerned Parents*, there has been no change in any of the students' general educational programs.

In *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 379 (5h Cir. 2003), the Fifth Circuit addressed an analogous case, in which the parents sought to require the school district to place their deaf child in a mainstream classroom in a neighborhood school. The Court held that the parents did not have a right under the IDEA to participate in site selection, because the term "educational placement" referred not to a place, but to a program of services. *Id.*

Here, the record reflects that the District is offering the same program and services albeit in a different facility. All of the services contained in the Plaintiff students' IEPs continue to be

provided on a daily basis. Likewise, all of the sensory and vocational equipment and all of the assistive technology and equipment which was previously located at Page Park has been moved to Aspire. (Comp. Ex. #5, Dkt. 12-2 p. 38 of 61). Any changes resulting from the move to the new facility are inconsequential and far more minimal than those involved in *Concerned Parents* and *White*. Accordingly, Plaintiffs are unable to show that the District has violated stay-put, and their request for injunctive relief should be denied as a result.

II. **Inasmuch as Plaintiffs KIMBERLY K. and MATTHEW K. do not reside in the District's boundaries, the District is not obligated by law to provide special education and related services to MATTHEW K. Therefore, the suit brought by KIMBERLY K. and MATTHEW K. should be dismissed.**

KIMBERLY K. affirmatively represents to the Court that she is the guardian of MATTHEW K. (Comp. ¶5). KIMBERLY K. likewise represents that she resides in Naperville, Illinois. (Comp. ¶8). Under the *Illinois School Code*, the school district of residence is responsible for the delivery of special education services either directly or pursuant to an alternative arrangement, at no cost to the student or parents, absent parents having taken some unilateral action. Because the District is not the resident district for MATTHEW K., it is not obligated by law to provide special education and related services to MATTHEW K. Therefore, inasmuch as the District is not a proper party to this action, the District should be dismissed.

Illinois law assigns responsibility for special education services to the school district where the student resides.[8] 105 ILCS 5/14-1.11, 5/14-6.01 and 14-7.01; 23 Ill.Admin.Code §226.700; *see also*, 23 Ill.Admin.Code §240.25 ("[t]he district of residence shall ensure that the student receives all of the special education and related services listed in his or her IEP . . . [t]he student's district of residence remains responsible for ensuring that the IEP is fulfilled"). In many, if not most circumstances, for special education purpose, the residence of one or both parents determines student residence. 105 ILCS 5/14-1.11 and 14-1.11a. This remains true after a student with disabilities reaches the age of majority if the parents have obtained legal

---

[8] States are required to provide special education and related to services to eligible students residing within their borders. 20 U.S.C. §1412. The IDEA does not dictate how to determine whether a child, parent, or guardian is or is not a "resident" of a state or school district. Rather, the IDEA leaves to the states the assignment and allocation of financial responsibility for special education cost, the definition of "residency" and the choice as to whether to provide a free and appropriate public education to children who may not be considered "residents" under state law, in addition to those whose residency is not an issue.

guardianship of the person, which Plaintiffs admit is the case regarding MATTHEW K. *Id.* at 5/14/1.11(1).

"When a student's resident school district is unable to meet the student's disability needs, the student is eligible to receive educational services elsewhere." *In re D.D.*, 212 Ill.2d 410, 421, 289 Ill.Dec. 143, 819 N.E.2d 300 (Ill. 2004), *citing* 105 ILCS 5/14-7.01, 14-7.02 (West 1998). The obligation of the resident district to ensure a special education eligible student's educational program and services are provided to the parent at no cost remains true for students when they are placed by the resident district in another public education facility, as in this case. 105 ILCS 5/14-7.01. To the extent a parent is unhappy with the special education services received by the student in his or her special education placement or pursuant to his or her IEP, one avenue open to the parent is to file a request for due process against his resident school district. 105 ILCS 5/14-8.02a(f). Section 14-8.02a(f) of the *School Code* provides, in relevant part: "An impartial due process hearing shall be convened upon the request of a parent. . . A request made by the parent or student shall be made in writing to the superintendent ***of the school district where the student resides***." (Emphasis added). There is no legal authority for the parent to file the request against another public school district who is not the resident district, even if the non-resident district has agreed to provide the services because the resident district cannot.

In the present complaint, KIMBERLY K. admits that she is a resident of the City of Naperville. Pursuant to Illinois law, then, the responsible school district is Indian Prairie District #204 – which is the school district in which the guardian of Matthew resides. 105 ILCS 5/14-1.11 and 14-8.02a(f). *See also, e.g., Board of Educ. of Comm. Unit Sch. Dist. No. 428 v. Board of Educ. of High Sch. Dist. No. 214*, 680 N.E.2d 450, 288 Ill.App.3d 382, 223 Ill.Dec. 717 (2nd Dist. 1997). Therefore, the Amended Complaint of KIMBERLY K. and MATTHEW K. should be dismissed with prejudice.

## CONCLUSION

Inasmuch as the District is not a proper party to the action brought by Plaintiffs KIMBERLY K. and MATTHEW K, the District should be dismissed with prejudice. Further, inasmuch as Plaintiffs have pleaded particulars which demonstrate that Plaintiffs do not have a claim, the Amended Complaint should be dismissed, and Plaintiffs should be barred from refiling another complaint until and unless Plaintiffs exhaust their administrative remedies.

70567549v2 890325

WHEREFORE, the Defendant, THE BOARD OF EDUCATION OF THE ROCKFORD PUBLIC SCHOOLS, DISTRICT NO. 205, respectfully requests that this Court dismiss Plaintiffs' Amended Complaint with prejudice, and for such other and further relief as this Court deems just and appropriate.

                                    Respectfully submitted,

                                    HINSHAW & CULBERTSON LLP

Thomas J. Lester　　　　　　　　　　　　By: s/Thomas J. Lester
Hinshaw & Culbertson LLP　　　　　　　　　　Thomas J. Lester
100 Park Avenue
P.O. Box 1389
Rockford, IL 61105-1389
815-490-4900

70567549v2 890325