IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| **CHARLOTTE K.**, as parent and next friend of **GILLIAN K.**, a minor, and **KIMBERLY K.**, as parent and next friend of **MATTHEW K.**, a minor,<br><br>Plaintiffs,<br><br>v.<br><br>**ROCKFORD BOARD OF EDUCATION DISTRICT #205**,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No.: 08 C 50115<br>)<br>)<br>)<br>)<br>)<br>) |

## RESPONSE TO MEMORANDUM

NOW COMES the Defendant, THE BOARD OF EDUCATION OF THE ROCKFORD PUBLIC SCHOOLS, DISTRICT NO. 205 ("District"), by and through its attorneys, HINSHAW & CULBERTSON LLP, and in response to Plaintiffs' "Memorandum," states as follows:

1. Apparently, in Plaintiffs' Reply Brief, Plaintiffs' counsel cited to an authority which she did not have, had not completely reviewed and was merely lifting the limited quote from other authority. Pursuant to the Court's request, attached hereto as Exhibit A is a copy of a *Letter to Fisher*, 21 IDELR 992 (OSEP July 6, 1994).

2. The said opinion letter actually supports the position of the District when read in its entirety.

3. In Plaintiffs' Amended Complaint, Plaintiffs do <u>not</u> allege that the District has discriminated against the Plaintiff students by reducing "regular" schooling opportunities that are

available to "regular" children in the District." (Plaintiffs' Memorandum at p.2). Furthermore, there was absolutely no evidence presented at the hearing to support such a position[1].

WHEREFORE, the Defendant, THE BOARD OF EDUCATION OF THE ROCKFORD PUBLIC SCHOOLS, DISTRICT NO. 205, respectfully requests pursuant to Federal Rule of Civil Procedure 12(d) that the Court enter judgment in favor of the District finding that the Plaintiffs have failed to exhaust their administrative remedies and dismiss the Complaint in its entirety.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

Thomas J. Lester
Hinshaw & Culbertson LLP
100 Park Avenue
P.O. Box 1389
Rockford, IL 61105-1389
815-490-4900

By: /s/Thomas J. Lester
Thomas J. Lester

---

[1] The only possible evidence that could even be considered close was Plaintiffs' incorrect statement that students in the Aspire Program would receive cold lunches while the students in the Auburn Freshman Campus would receive hot lunches. As the testimony clearly showed, children in the Aspire Program will receive hot lunches during the regular school year which are identical to those received by students at numerous other schools within the school district.

Skip Navigation Links   Need Help? Call 1-800-515-4577, ext. 6303   Log Out



HELP DESK: 1-800-515-4577, ext. 6303

| Home | Section 504 | Early Childhood | Behavior & Discipline | Inclusion | Specific Disabilities | Legal Research Center |

Sample Forms & Tools | SmartStarts | Stats/Regs | Federal Policy & Guidance

**SEARCH**
Search for:
[          ]

Search in:
All Databases
Go!

Advanced Search
Decisions/Rulings Search
Topical Index Search

**FEATURES**
My Special Ed Connection
Special Ed Roundups
What's New
eLearning Courses
Online Store
e-CONNECTIONS sign-up
Funding Finder
Congressional Watch
Story Archive
Special Links
Dictionary
Parents Center
RSS Feeds

**STATE SPECIFIC**
State Stats and Regs Links
For state specific content,
Enter your state:
Search In:
[          ]
Go!

EXHIBIT A

▸ **Main**

Main > Story

| Current Results | | |
|---|---|---|
| 22 LRP 3104 | Letter to Diehl | 01/17/95 |
| **21 LRP 2769** | **Letter to Fisher** | **07/06/94** |
| 211 LRP 8517 | Letter to Fisher | 11/03/86 |

Back to Search Results

Printable Version
PDF Version
First Match

**21 IDELR 992**
21 LRP 2769

*Letter to <Fisher>*

**Office of Special Education Programs**

**July 6, 1994**

**Related Index Numbers**

365.095 Placement, Notice Requirements
365.027 Placement, Change in Facilities/Location
365.028 Placement, Change in Program/Services
390.020 Procedural Safeguards, Notice
365.120 Placement, Placement Procedures Generally
390.017 Procedural Safeguards, In General
265.025 Individualized Education Program (IEP), Participants in/Procedures for IEP Meeting

**Case Summary**

What form of written notice is required when a local educational agency (LEA) is required to close a school site to meet IDEA least restrictive requirements?

When a change in placement occurs due to a local educational agency's (LEA's) actions in closing a school site in order to meet IDEA least restrictive requirements, the LEA is required to give parents prior written notice of the closing pursuant to the Part B regulations at 34 CFR 300.505 if the IEP team determines that the change involves a substantial or

material alteration in the child's educational program. If it is determined that the change in placement involves only a change in location—for example, the school or facility, and not a corresponding change in program, the formal notice requirements of 34 CFR 300.505 do not apply. However, in the latter case, it is assumed that the LEA would use its normal notification procedures to inform parents of the change in program location.

**Judge / Administrative Officer**

Thomas Hehir, Director

**Full Text**

Mr. Joseph ≤Fisher

Assistant Commissioner

Tennessee State Department of Education

132 Cordell Hull Building

Nashville, Tennessee 37219-5335

### Text of Inquiry

The Tennessee Department of Education, Division of Special Education would appreciate a written response to a question which has been posed by [ ] County Schools. [ ] County has for several years maintained [ ] Learning Center which has been the building where services have been provided for children at the high school age level of various disabilities. Predominantly, the students have been in self-contained classrooms. For the most part, this one learning center has been the only service provided at the secondary level, The Tennessee Department of Education and the Office of Special Education Programs of the United States Department of Education have cited the [ ] County School System for a violation of 34 CFR 300.551 (continuum of services).

[ ] County has responded to the allegation by proposing to provide the exact same services, which have previously been provided at [ ] Learning Center, at each of the [ ] County High Schools. In particular, each student a [ ] Learning Center for the 93-94 school year will for the 94-95 school year attend the high school nearest to their home which would have been the school the student would have attended if the student were not handicapped. The same level and quality of services will be maintained at each high school as was previously maintained at [ ] Learning Center.

This IEP for each student previously assigned to the [ ] Learning Center, will be reviewed and rewritten. If appropriate, in accordance with 300.346, 550, 551, and 552, FAPE will be addressed at Individual M-Team

meetings and will be written into the IEP.

Please address what procedures must be followed when the LEA is required to close a school site to meet IDEA least restrictive requirements because of State and Federal monitoring findings. These procedures would be used to determine appropriate placements for each of the students formally attending the school site which will be closed. Sub-questions would include: (a) What form of written notice is required? (b) Any special considerations the M-Team would consider and, (c) If parents disagree at the M-Team meeting and ask for a due process hearing, stay put provisions would apply. What would be the placement since [ ] Learning Center is closing.

A parallel question which we must have addressed regards change in placement. Does a change in physical location, from one school to another constitute a "change in placement" as contemplated by IDEA when the educational program stated in the IEP remains the same. The only change would be the physical location where the services would be provided. Exactly what is the definition of change of educational placement? Is it the physical location (classroom, building, etc.) of the education and services or is it the education program that is stated in the IEP? If "change of placement" does not include physical location, then does it follow that assignment to a particular classroom or building is an administrative and not an M-Team decision?

Thank you for responding to our two questions. The Tennessee Department of Education, as well as [ ] County Schools, eagerly await your guidance.

**Text of Response**

This is in response to your facsimile transmittal dated April 18, 1994, in which you request guidance in connection with an inquiry made to your Office by the [ ] County School District (District) regarding students with disabilities placed at the [ ] Learning Center during the 1993-1994 school year. It is our understanding that although the [ ] High School will remain open, the [ ] Learning Center, which the District has operated as a separate wing at the [ ] High School, will be discontinued at the conclusion of the current school year. This program discontinuation is occurring because, as a result of State and Federal monitoring of the District's compliance with the least restrictive environment (LRE) requirements of Part B of the Individuals with Disabilities Education Act (Part B), the Tennessee Department of Education (TDE) has advised the District that the separate wing known as the [ ] Learning Center must cease to operate.

It is our understanding that, for the 1994-1995 school year, individual placement determinations will be made for the students involved. According to your letter, it is anticipated that as a result of individualized education program (IEP) reviews by the M-team, which, in Tennessee,

constitutes the IEP team and placement team, most students with disabilities currently attending programs at the [ ] Learning Center during the 1993-1994 school year will likely be determined to need programs for the upcoming school year that offer the same types and quality of services received by the students when they were placed at the [ ] Learning Center. However, the students will be placed in such programs conducted by the District that are located at the school they would attend if not disabled, unless their IEPs require some other arrangement. For the majority of students currently placed at the [ ] Learning Center, [ ] High School is not the school they would attend if not disabled. However, if it is determined that [ ] High School is the school that a particular student would attend if not disabled, program relocation will be at [ ] High School, and not at the [ ] Learning Center, since the [ ] Learning Center will cease to exist at the conclusion of the 1993-1994 school year.

In its final monitoring report issued in December of 1993, the Office of Special Education Programs (OSEP) found that TDE did not fully meet its responsibility under ? 300.550(a) to ensure that public agencies establish and implement procedures that meet the requirements of ?? 300.550(b) and 300.553. Final Monitoring Report at page 20. Based on its review of student records and interviews with administrators and teachers, OSEP concluded that decisions regarding the extent of a child's participation with children without disabilities in regular classes or nonacademic and extracurricular services and activities were not being made on an individual basis.

You have stated that "[ ] County has responded to the allegation by proposing to provide the exact same services, which have previously been provided at the [ ] Learning Center, at each of the [ ] County high schools." This raises serious concerns regarding whether these placement decisions are being made in conformity with the least restrictive environment (LRE) requirements at 34 CFR ?? 300.550-300.554, if opportunities for interaction of these students with their nondisabled peers remains essentially the same. We want to emphasize that in order to implement the corrective action on page B-5 of OSEP's Final Monitoring Report, the District must ensure that individual determinations are made to ensure that, to the maximum extent appropriate to their individual needs, children previously placed at the [ ] Learning Center are provided increased opportunities for interaction with their nondisabled peers, both in academic and nonacademic activities.

In your letter, several related questions are set out regarding this situation. These questions and OSEP's responses follow:

What procedures must be followed when the LEA is required to close a school site to meet IDEA least restrictive requirements because of State and Federal monitoring findings?

(a) What form of written notice is required? (b) [Are there] any special considerations [that] the M-team would consider and (c) If parents

disagree at the M-team meeting and ask for a due process hearing, [how would] the "stay-put" provision apply?

What would be the ["stay-put"] placement since [ ] Learning Center is closing? Does a change in physical location from one school to another constitute a "change in placement" as contemplated by IDEA when the educational program stated in the IEP remains the same?

Exactly what is the definition of change of educational placement? Is it the physical location (classroom, building, etc) of the education and services or is it the education program that is stated in the IEP?

If change of placement does not include physical location, then does it follow that assignment to a particular classroom or building is an administrative, and not an M-team decision?

Under Part B, public agencies must ensure that a free appropriate public education (FAPE) is made available to children with disabilities in mandated age ranges, and that the rights and protections guaranteed by Part B are extended to eligible children and their parents. Consistent with these responsibilities, each child must receive an individualized program of specialized instruction and support services that is appropriate to his or her unique educational and related services needs. 34 CFR ?? 300.121 and 300.8. Further, public agencies must ensure that to the maximum extent appropriate, children with disabilities are educated with children who are not disabled, and that special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily. 34 CFR ?? 300.550(b)(1)-(2). Further, each child's placement must be determined at least annually, must be based on his or her IEP, and must be in the school or facility as close as possible to the child's home. 34 CFR ? 300.552(a)(1)-(3). Unless a child's IEP requires some other arrangement, the child must attend the school that he or she would attend if not disabled. 34 CFR ? 300.552(c). In implementing Part B's LRE requirements, the overriding rule in placement is that each child's placement must be determined on an individual basis, and may not be based on factors such as the category of disability, configuration of the service delivery system, availability of staff, or administrative convenience.

The District must ensure that each student's IEP team (in Tennessee, the M-team) is convened to determine an appropriate program of special education and related services for the child, including annual goals and short-term instructional objectives, the specific special education and related services to be provided to the child, and, if applicable, needed transition services, and the extent that the child will be able to participate in regular educational programs. 34 CFR ? 300.346. The participants on the placement team (in Tennessee, the M-team) must also select the specific option from the continuum of alternative placements in which the

child's IEP can be implemented, i.e., "education in regular classes, special classes, separate schooling, home instruction, and instruction in hospitals and institutions." 34 CFR ? 300.551(b)(1).

The placement team, (the M-team in Tennessee), must select a location, i.e., school or facility that the child would attend if not disabled, if appropriate, or another school as close as possible to the child's home, that is consistent with the student's IEP and the option on the continuum selected to implement the student's IEP. It is these three components—the education program set out in the student's IEP, the option on the continuum in which the student's IEP is to be implemented, and school or facility selected to implement the student's IEP—that comprise a placement decision under Part B. As OSEP has indicated in a prior policy clarification letter, once the placement team's decision, i.e., selection of the option on the continuum and school or facility in which the student's IEP can be implemented, is made, the assignment of a particular classroom or teacher can be an administrative determination, provided that determination is consistent with the placement team's decision. *See* 16 *EHLR* 235 (March 9, 1990).

Part B also requires public agencies to afford children with disabilities and their parents specific procedural safeguards, including the right of parents of children with disabilities to be given written prior notice that meets the requirements of 34 CFR ? 300.505 a reasonable time before the agency proposes or refuses to initiate or change the identification, evaluation, or educational placement of the child, or the provision of FAPE to the child. 34 CFR ? 300.504(a)(1)-(2). The term "change" in "educational placement" is not defined either in the Part B statute or regulations. Whether new placements proposed for students as a result of the anticipated discontinuation of the [ ] Learning Center would constitute a "change in educational placement" for the students involved would have to be determined on a case-by-case basis.

In determining whether a "change in educational placement" has occurred, the public agency responsible for educating the child must determine whether the proposed change would substantially or materially alter the child's educational program. In making such a determination, the effect of the change in location on the following factors must be examined: whether the educational program set out in the child's IEP has been revised; whether the child will be able to be educated with nondisabled children to the same extent; whether the child will have the same opportunities to participate in nonacademic and extracurricular services; and whether the new placement option is the same option on the continuum of alternative placements. If this inquiry leads to the conclusion that a substantial or material change in the child's educational program has occurred, the public agency must provide prior written notice that meets the content requirements of 34 CFR ? 300.505, as required by 34 CFR ? 300.504(a).

In certain instances, the question of whether a change in educational placement has occurred is easily answered. For example, if the placement

team, the M-team in Tennessee, determines that a student currently placed in a self-contained class at the [ ] Learning Center should be placed at the school located within the District that the student would attend if not disabled, in a regular class with supplementary aids and services, rather than in a self-contained class, the proposed action would constitute a change in educational placement that would trigger Part B's written prior notice requirements. The inquiry becomes more complex when no changes from the prior year's IEP are proposed, and the option on the continuum remains the same, but the District proposes to change only the location, i.e., the school or facility located within the District in which the student's IEP and option on the continuum will be implemented. If the District determines, based on the student's individual needs, that the student should have the same educational program and opportunities for interaction with his or her nondisabled peers as he or she had during the placement at the [ ] Learning Center, the change in location alone would not constitute a change in educational placement, and Part B's written prior notice requirements would not be triggered. This is because under these circumstances, the change in location alone would not substantially or materially alter the child's educational program.

If a change in educational placement has occurred, Part B's written prior notice requirements are triggered. If it is determined that no change in educational placement has occurred, we assume the District would utilize its normal procedures to notify parents of the proposed change in location of their child's program. In such a communication, the District may wish to provide the parents with an explanation of why in its view the change in location would not substantially or materially alter the student's educational program. In either case, the parent always has an opportunity to initiate a due process hearing regarding any matter relating to the identification, evaluation, or educational placement of their child, or the provision of FAPE to their child. 20 U.S.C. ? 1415(b)(1)(E), 34 CFR ? 300.506(a).

Part B provides that during the pendency of administrative or judicial proceedings brought under Part B, the child involved in the complaint must remain in his or her current educational placement until the completion of authorized review proceedings. 34 CFR ? 300.513(a); see also 20 U.S.C. ? 1415(e)(3). Normally, under this provision, a school district must maintain a child in the current educational placement, unless the parent and school district can agree on an interim placement. Since the [ ] Learning Center will cease to operate at the conclusion of the 1993-1994 school year, the District would not be required to maintain a child with a disability at the [ ] Learning Center during the pendency of authorized review proceedings if the parents and District are unable to agree on an interim placement. However, to satisfy the requirement at 34 CFR ? 300.513(a), the District would be required to maintain the child in an educational program that is substantially and materially the same as the student's placement at [ ] Learning Center during the 1993-1994 school year.

I hope that the above information has been helpful. If we can provide

further assistance, please let me know.

Thomas Hehir

Director

Office of Special Education Programs

**Statutes Cited**

20 USC 1415(b)(1)(E)
20 USC 1415(e)(3)

**Regulations Cited**

34 CFR 300.550
34 CFR 300.551
34 CFR 300.552
34 CFR 300.550(a)
34 CFR 300.550(b)
34 CFR 300.553
34 CFR 300.550-300.554
34 CFR 300.121
34 CFR 300.8
34 CFR 300.550(b)(1)-(2)
34 CFR 300.552(a)(1)-(3)
34 CFR 300.552(c)
34 CFR 300.346
34 CFR 300.551(b)(1)
34 CFR 300.505
34 CFR 300.504(a)(1)-(2)
34 CFR 300.506(a)
34 CFR 300.513(a)